# EXHIBIT B



# AIA® Document B101™ – 2007

## *Standard Form of Agreement Between Owner and Architect*

**AGREEMENT** made as of the __6th__ day of ____July____ in the year 2016

**BETWEEN** the Architect's client identified as the Owner:

Amy & John Berylson
38 Highgate
Wellesley, MA 02481

and the Architect:

1100 Architect PC
475 Tenth Avenue, 10th Floor
New York, NY 10018
(212) 645-1011

for the following Project:
*(Paragraph deleted)*
Design and construction of the Berylson Residence located at 38 + 44 Highgate, Wellesley, MA.

The Owner and Architect agree as follows.

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

Init.

/

**AIA Document B101™ – 2007 (formerly B151™ – 1997).** Copyright © 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:27:00 on 06/24/2016 under Order No.4075833874_1 which expires on 04/21/2017, and is not for resale.
**User Notes:**                                                                                     (2001039694)

1

**TABLE OF ARTICLES**

1    INITIAL INFORMATION

2    ARCHITECT'S RESPONSIBILITIES

3    SCOPE OF ARCHITECT'S BASIC SERVICES

4    ADDITIONAL SERVICES

5    OWNER'S RESPONSIBILITIES

6    COST OF THE WORK

7    COPYRIGHTS AND LICENSES

8    CLAIMS AND DISPUTES

9    TERMINATION OR SUSPENSION

10   MISCELLANEOUS PROVISIONS

11   COMPENSATION

12   SPECIAL TERMS AND CONDITIONS

13   SCOPE OF THE AGREEMENT

14   COUNTERPARTS/FACSIMILE

**ARTICLE 1    INITIAL INFORMATION**

§ 1.1 This Agreement is based on the Initial Information set forth in
*(Paragraphs deleted)*
the Proposal Letter, dated March 17, 2016, revised April 27, 2016, which is attached hereto as **Exhibit 1.1**.

§ 1.2 The Owner's anticipated dates for commencement of construction and Substantial Completion of the Work are set forth below:
.1    Commencement of Construction date:
      On or about May 2017

.2    Substantial Completion date:
      On or about May 2019

§ 1.3 The Owner and Architect may rely on the Initial Information. Both parties, however, recognize that such information may materially change and, in that event, the Owner and the Architect shall appropriately adjust the schedule, the Architect's services and the Architect's compensation.

§ 1.4 The parties acknowledge that the Owner is presently developing a budget for the Work (the "Budget"). Owner shall provide the Budget to the Architect after the Owner determines the Budget.

**ARTICLE 2    ARCHITECT'S RESPONSIBILITIES**

§ 2.1 The Architect shall provide the professional services as set forth in this Agreement.

§ 2.2 The Architect shall perform its services consistent with the professional skill and care ordinarily provided by architects practicing in the same or similar locality under the same or similar circumstances. The Architect shall perform its services as expeditiously as is consistent with such professional skill and care and the orderly progress of the Project.

**AIA Document B101™ – 2007 (formerly B151™ – 1997).** Copyright © 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:27:00 on 06/24/2016 under Order No.4075833874_1 which expires on 04/21/2017, and is not for resale.
User Notes:                                                                                        (2001039694)

Init.

/

2

**§ 2.3** The Architect shall identify a representative authorized to act on behalf of the Architect with respect to the Project. Further, the Architect will, at all times employ or subcontract with, and be responsible for the actions or omissions of, competent employees working on the Project. The Architect recognizes the critical importance to Owner of having competent supervisory personnel of the Architect devoted to the Project while the services are being performed, and that such personnel shall be deemed to be "key employees" of the Architect ("Key Employees"). A list of the Key Employees is attached hereto as **Exhibit 2.3.**

**§ 2.4** Except with the Owner's knowledge and consent, the Architect shall not engage in any activity, or accept any employment, interest or contribution that would reasonably appear to compromise the Architect's professional judgment with respect to this Project.

**§ 2.5** As part of Basic Services, the Architect shall maintain, for the duration of this Agreement from a reputable, financially sound insurance company or companies lawfully qualified to do business in the Commonwealth of Massachusetts the insurance coverages specified below to protect the Architect and its consultants from claims which may arise out of or result from the Architect's or its consultants' services and operations under this Agreement and for which the Architect or its consultants may be legally liable, whether such services or operations be performed by the Architect, any of its consultants or by anyone directly or indirectly employed by any of them or by anyone for whose acts any of them may be liable, having limits of liability specified below:

.1   General Liability
Commercial General Liability
$1,000,000 each occurrence
$2,000,000 in aggregate

With Excess/Umbrella Package
$5,000,000 each occurrence
$6,000,000 in aggregate

.2   Automobile Liability
Hired and Non-Owned Automobiles
$1,000,000 combined single limit

.3   Workers' Compensation
New York State Worker's Compensation

.4   Professional Liability
$2,000,000 per claim
$4,000,000 in aggregate

Such coverage shall provide that it may not be substantially modified or canceled without thirty (30) days prior written notice to Owner by Architect. Architect shall keep the policy in full force and effect for a period of six (6) years following Substantial Completion of the Project. Architect shall deliver to Owner a Certificate of Insurance evidencing the aforesaid policy requirements prior to commencement of its Services on the Project and at least once each year following the date hereof and for a period of six (6) years following Substantial Completion of the Project.

.5   The Architect shall, as part of Basic Services, cause any consultants it retains for the Project to purchase and maintain insurance coverage that is reasonably acceptable to the Owner from a reputable, financially sound insurance company or companies lawfully qualified to do business in the Commonwealth of Massachusetts.

**§ 2.6** All insurance except Architect's Professional Liability Policy and Workers Compensation Insurance required under this Agreement shall name the Owner and Owner's lender as additional insureds, for claims arising out of, or in connection with, the services to be performed. The Architect's insurance coverage will be primary and non-contributory to any insurance carried by Owner.

**AIA Document B101™ – 2007 (formerly B151™ – 1997).** Copyright © 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:27:00 on 06/24/2016 under Order No.4075833874_1 which expires on 04/21/2017, and is not for resale.
User Notes:                                                                                                                     (2001039694)

**§ 2.7** To the fullest extent permitted by law, Architect shall indemnify and hold harmless Owner and its successors, assigns and heirs from and against all claims, damages, losses and expenses, arising out of or resulting from Architect's (i) negligent acts or omissions, (ii) willful misconduct, or (iii) performance of, or failure to perform, in accordance with this Agreement.

## ARTICLE 3   SCOPE OF ARCHITECT'S BASIC SERVICES

**§ 3.1** The Architect's Basic Services consist of those described in Article 3 and in the Architect's Proposal. In the event of any conflict or inconsistency between the terms of this Agreement and the Proposal, the terms of the Agreement shall control. Services not set forth in this Article 3 are Additional Services.

**§ 3.1.1** The Architect shall manage the Architect's services, consult with the Owner, research applicable design criteria, attend Project meetings, communicate with members of the Project team and report progress to the Owner.

**§ 3.1.2** The Architect shall coordinate its services with those services provided by the Owner's consultants. The Architect shall be entitled to rely on the accuracy and completeness of services and information furnished by any consultants. The Architect shall provide prompt written notice to the Owner if the Architect becomes aware of any error, omission or inconsistency in such services or information.

**§ 3.1.3** As soon as practicable after the date of this Agreement, but no more than thirty (30) days, the Architect shall submit for the Owner's approval a schedule for the performance of the Architect's services. The schedule initially shall include anticipated dates for the commencement of construction and for Substantial Completion of the Work as set forth in the Initial Information. The schedule shall include allowances for periods of time required for the Owner's review, for the performance of any consultants, and for approval of submissions by authorities having jurisdiction over the Project. Once approved by the Owner, time limits established by the schedule shall not, except for reasonable cause and agreed to by the other party, be exceeded by the Architect or Owner. With the Owner's approval, the design schedule shall be made apart hereof and attached hereto as **Exhibit 3.1.3**. With the Owner's written approval, the Architect shall adjust the schedule as the Project progresses, allowing for changes in scope, character or size of the Project requested by the Owner, or for delays or other causes beyond the Architect's reasonable control up to the time in which construction commences.

**§ 3.1.4** The Architect shall not be responsible for an Owner's directive or substitution made without the Architect's approval.

**§ 3.1.5** The Architect shall, at appropriate times, contact the governmental authorities required to approve the Construction Documents and the entities providing utility services to the Project. In designing the Project, the Architect shall respond to applicable design requirements imposed by such governmental authorities and by such entities providing utility services. The Architect acknowledges and agrees that all services performed by the Architect pursuant to this Agreement shall be in compliance with all applicable laws, rules, codes and regulations.

**§ 3.1.6** The Architect shall assist the Owner in connection with the Owner's responsibility for filing documents required for the approval of governmental authorities having jurisdiction over the Project. This assistance shall consist of completing and submitting forms to the appropriate regulatory agencies having jurisdiction over the Construction Documents, and other services normally provided by the Architect and included in the scope of Basic Services of this Agreement. This assistance does not include, however, special studies, special research, special testing or special documentation not normally required for this type of project. The Architect will provide such special services as Additional Services as authorized by the Owner in accordance with the compensation provisions of this Agreement.

**§ 3.1.7** Notwithstanding any other provisions of this Agreement to the contrary, in addition to the Basic Services as defined in Article 3, the following shall also be considered Basic Services: the Architect shall be available to attend meetings and/or participate in telephone calls with the Owner, the Contractor and/or their agents and representatives as required to facilitate the successful design and construction of the Project.

## § 3.2 SCHEMATIC DESIGN PHASE SERVICES

**§ 3.2.1** The Architect shall review the program and other information furnished by the Owner, and shall review laws, codes, and regulations applicable to the Architect's services.

**AIA Document B101™ – 2007 (formerly B151™ – 1997).** Copyright © 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:27:00 on 06/24/2016 under Order No.4075833874_1 which expires on 04/21/2017, and is not for resale.
User Notes:                                                                                                              (2001039694)

Init.

/

**§ 3.2.2** The Architect shall prepare a preliminary evaluation of the Owner's program, schedule, budget for the Cost of the Work, Project site, and the proposed procurement or delivery method and other Initial Information, each in terms of the other, to ascertain the requirements of the Project. The Architect shall notify the Owner of (1) any inconsistencies discovered in the information, and (2) other information or consulting services that may be reasonably needed for the Project.

**§ 3.2.3** The Architect shall present its preliminary evaluation to the Owner and shall discuss with the Owner alternative approaches to design and construction of the Project, including the feasibility of incorporating environmentally responsible design approaches. The Architect shall reach an understanding with the Owner regarding the requirements of the Project.

**§ 3.2.4** Based on the Project's requirements agreed upon with the Owner, the Architect shall prepare and present for the Owner's approval a preliminary design illustrating the scale and relationship of the Project components.

**§ 3.2.5** Based on the Owner's written approval of the preliminary design (email communication shall be acceptable), the Architect shall prepare Schematic Design Documents for the Owner's approval. The Schematic Design Documents shall consist of drawings and other documents including a site plan, if appropriate, and preliminary building plans, sections and elevations; and may include some combination of study models, perspective sketches, or digital modeling. Preliminary selections of major building systems and construction materials shall be noted on the drawings or described in writing.

**§ 3.2.5.1** The Architect shall consider environmentally responsible design alternatives, such as material choices and building orientation, together with other considerations based on program and aesthetics, in developing a design that is consistent with the Owner's program, schedule and budget for the Cost of the Work. The Owner may obtain other environmentally responsible design services under Article 4.

**§ 3.2.5.2** The Architect shall consider the value of alternative materials, building systems and equipment, together with other considerations based on program and aesthetics, in developing a design for the Project that is consistent with the Owner's program, schedule and budget for the Cost of the Work.

**§ 3.2.6** The Architect shall provide to the Owner an estimate range of the Cost of the Work prepared in accordance with Section 6.3.

**§ 3.2.7** The Architect shall submit the Schematic Design Documents to the Owner, and request the Owner's approval. Subject to Article 4.1.1, at any time prior to the written approval of Owner of the Schematic Design Documents, upon request by Owner, the Architect shall, without additional compensation or reimbursement for cost therefor and consistent with the Proposal, revise any portion of the Schematic Design Documents, provided such revisions are consistent with Owner's prior instructions and do not apply to previously approved services. Without limiting the foregoing, this Section 3.2.7 shall not apply to any revisions resulting from any errors or omissions in the Schematic Design Documents, it being understood and agreed by the Architect that any revisions required to be performed as a result of errors or omissions in the Schematic Design Documents shall be performed at Architect's sole cost until accepted by the Owner.

**§ 3.2.8** Based upon the review of the initial Schematic Design Documents by the Owner's cost estimator's ("Cost Estimator"), the Cost Estimator shall provide to the Owner an estimate of the Cost of the Work. Once approved by the Owner, the Cost estimator's estimate shall be the then current Budget. Based on the then current Budget, the Architect shall, as an Additional Service, modify the Schematic Design Documents as directed by the Owner and issue revised Schematic Design Documents to the Owner for its approval.

## § 3.3 DESIGN DEVELOPMENT PHASE SERVICES

**§ 3.3.1** Based on the Owner's written approval of the Schematic Design Documents (email communication shall be acceptable), and on the Owner's authorization of any adjustments in the Project requirements and the budget for the Cost of the Work, the Architect shall prepare Design Development Documents for the Owner's approval. The Design Development Documents shall illustrate and describe the development of the approved Schematic Design Documents and shall consist of drawings and other documents including plans, sections, elevations, typical construction details, and diagrammatic layouts of building systems to fix and describe the size and character of the Project as to architectural, structural, mechanical and electrical systems, and such other elements as may be

**AIA Document B101™ – 2007** (formerly B151™ – 1997). Copyright © 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:27:00 on 06/24/2016 under Order No.4075833874_1 which expires on 04/21/2017, and is not for resale.
**User Notes:**                                                                                          (2001039694)

Init.

/

5

appropriate. The Design Development Documents shall also include outline specifications that identify major materials and systems and establish in general their quality levels.

**§ 3.3.2** The Architect shall provide an estimate of the Cost of the Work.

**§ 3.3.3** The Architect shall submit the Design Development Documents to the Owner and request the Owner's approval. At any time prior to the written approval of Owner of the Design Development Documents, upon request by Owner, the Architect shall, without additional compensation or reimbursement for cost therefor and consistent with the Proposal, revise any portion of the Design Development Documents, provided such revisions are consistent with Owner's prior instructions and do not apply to previously approved services. Without limiting the foregoing, this Section 3.3.3 shall not apply to any revisions resulting from any errors or omissions in the Design Development Documents, it being understood and agreed by the Architect that any revisions required to be performed as a result of errors or omissions in the Design Development Documents shall be performed at Architect's sole cost until accepted by the Owner.

**§ 3.3.4** At the conclusion of the Design Development Phase, the Cost Estimator shall deliver to the Owner an estimate of the Cost of the Work. Once approved by the Owner, the Cost Estimator's estimate shall be the then current Budget. Based on the then current Budget, the Architect shall, if directed by the Owner, modify the Design Development Documents in accordance with Article 6.

## § 3.4 CONSTRUCTION DOCUMENTS PHASE SERVICES

**§ 3.4.1** Based on the Owner's written approval of the Design Development Documents (email communication shall be acceptable), and on the Owner's authorization of any adjustments in the Project requirements and the budget for the Cost of the Work, the Architect shall prepare Construction Documents for the Owner's approval. The Construction Documents shall illustrate and describe the further development of the approved Design Development Documents and shall consist of Drawings and Specifications setting forth in detail the quality levels of materials and systems and other requirements for the construction of the Work. The Owner and Architect acknowledge that in order to construct the Work the Contractor will provide additional information, including Shop Drawings, Product Data, Samples and other similar submittals, which the Architect shall review in accordance with Section 3.6.4.

**§ 3.4.2** The Architect shall incorporate into the Construction Documents the design requirements of governmental authorities having jurisdiction over the Project.

**§ 3.4.3** During the development of the Construction Documents, the Architect shall assist the Owner in the development and preparation of (1) bidding and procurement information that describes the time, place and conditions of bidding, including bidding or proposal forms; (2) the form of agreement between the Owner and Contractor; and (3) the Conditions of the Contract for Construction (General, Supplementary and other Conditions). The Architect shall also compile a project manual that includes the Conditions of the Contract for Construction and Specifications and may include bidding requirements and sample forms.

**§ 3.4.4** The Architect shall update the estimate for the Cost of the Work.

**§ 3.4.5** The Architect shall submit the Construction Documents to the Owner, advise the Owner of any adjustments to the estimate of the Cost of the Work, take any action required under Section 6.5, and request the Owner's approval. Subject to Article 4.1.3, upon the request of the Owner, the Architect shall meet with the Owner, the Contractor and any other parties designated by the Owner in order to discuss and develop value engineering and other suggestions, comments, requests or preferences which any such party may have with respect to the details, instructions and other information contained in the Construction Documents. Upon the direction of the Owner, the Architect shall modify the Construction Documents to reflect such value engineering and other suggestions, comments, requests or preferences as the Owner may specify, provided that the same are consistent with generally accepted standards of professional practice and consistent with the Proposal as well as any Owner-approved changes made to the Project during Schematic Design and Design development. Any changes to the Construction Documents required to make such modifications or to modify discretionary choices made by the Architect and not approved by the Owner, or to make the Construction Documents consistent with the Design Development Documents or that are reasonably inferable from the Design Development Documents shall be made by the Architect as part of the Architect's Basic Services. In the event that the Architect has advised the Owner that a particular preference, choice, request or suggestion will bring the Project over the Owner's established budget but is instructed by the Owner to

**AIA Document B101™ – 2007 (formerly B151™ – 1997).** Copyright © 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:27:00 on 06/24/2016 under Order No.4075833874_1 which expires on 04/21/2017, and is not for resale.
User Notes:                                                                                                              (2001039694)

proceed with said direction, and this preference, choice, request or suggestion is later eliminated by the Owner to bring the Project to the established budget; the Architect will then modify the Construction Documents and be compensated as per Article 11.2.

### § 3.5 BIDDING OR NEGOTIATION PHASE SERVICES
### § 3.5.1 GENERAL
The Architect shall assist the Owner in establishing a list of prospective contractors. Following the Owner's approval of the Construction Documents, the Architect shall assist the Owner in (1) obtaining either competitive bids or negotiated proposals; (2) confirming responsiveness of bids or proposals; (3) determining the successful bid or proposal, if any; and, (4) awarding and preparing contracts for construction.

### § 3.5.2 COMPETITIVE BIDDING
§ 3.5.2.1 Bidding Documents shall consist of bidding requirements and proposed Contract Documents.

§ 3.5.2.2 The Architect shall assist the Owner in bidding the Project by:
.1 procuring the reproduction of Bidding Documents for distribution to prospective bidders;
.2 distributing the Bidding Documents to prospective bidders, requesting their return upon completion of the bidding process, and maintaining a log of distribution and retrieval and of the amounts of deposits, if any, received from and returned to prospective bidders;
.3 organizing and conducting a pre-bid conference for prospective bidders;
.4 preparing responses to questions from prospective bidders and providing clarifications and interpretations of the Bidding Documents to all prospective bidders in the form of addenda; and
.5 organizing and conducting the opening of the bids, and subsequently documenting and distributing the bidding results, as directed by the Owner.

§ 3.5.2.3 The Architect shall consider requests for substitutions, if the Bidding Documents permit substitutions, and shall prepare and distribute addenda identifying Owner-approved substitutions to all prospective bidders.

### § 3.5.3 NEGOTIATED PROPOSALS
§ 3.5.3.1 Proposal Documents shall consist of proposal requirements and proposed Contract Documents.

§ 3.5.3.2 The Architect shall assist the Owner in obtaining proposals by:
.1 procuring the reproduction of Proposal Documents for distribution to prospective contractors, and requesting their return upon completion of the negotiation process;
.2 organizing and participating in selection interviews with prospective contractors; and
.3 participating in negotiations with prospective contractors, and subsequently preparing a summary report of the negotiation results, as directed by the Owner.

§ 3.5.3.3 The Architect shall consider requests for substitutions, if the Proposal Documents permit substitutions, and shall prepare and distribute addenda identifying Owner-approved substitutions to all prospective contractors.

### § 3.6 CONSTRUCTION PHASE SERVICES
### § 3.6.1 GENERAL
§ 3.6.1.1 The Architect shall provide administration of the Contract between the Owner and the Contractor as set forth below and in AIA Document A201™–2007, General Conditions of the Contract for Construction. If the Owner and Contractor modify AIA Document A201–2007, expanding the Architect's services or obligations thereunder, those modifications shall not affect the Architect's services under this Agreement unless the Owner and the Architect amend this Agreement.

§ 3.6.1.2 The Architect shall advise and consult with the Owner during the Construction Phase Services. The Architect shall have authority to act on behalf of the Owner only to the extent provided in this Agreement. The Architect shall not have control over, charge of, or responsibility for the construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, nor shall the Architect be responsible for the Contractor's failure to perform the Work in accordance with the requirements of the Contract Documents, provided nothing herein shall relieve the Architect of its responsibility under Section 3.6.2. The Architect shall be responsible for the Architect's negligent acts or omissions, but shall not have control over or

**AIA Document B101™ – 2007 (formerly B151™ – 1997).** Copyright © 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:27:00 on 06/24/2016 under Order No.4075833874_1 which expires on 04/21/2017, and is not for resale.
User Notes:                                                                                          (2001039694)

charge of, and shall not be responsible for, acts or omissions of the Contractor or of any other persons or entities performing portions of the Work.

**§ 3.6.1.3** Subject to Section 4.3, the Architect's responsibility to provide Construction Phase Services commences with the award of the Contract for Construction and terminates on the date the Architect issues the final Certificate for Payment.

**§ 3.6.2 EVALUATIONS OF THE WORK**
**§ 3.6.2.1** The Architect shall visit the site at intervals appropriate to the stage of construction, or as otherwise required in Section 4.3.2 (i), to become generally familiar with and keep the Owner informed about the progress and quality of the portion of the Work completed, and (ii) to determine, in general, if the Work observed is being performed in a manner indicating that the Work, when fully completed, will be in accordance with the Contract Documents. However, the Architect shall not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. The Architect shall keep the Owner reasonably informed about the progress and quality of the portion of the Work completed, and report to the Owner (1) known deviations from the Contract Documents and from the most recent construction schedule submitted by the Contractor, and (2) defects and deficiencies observed in the Work.

**§ 3.6.2.2** The Architect has the authority to reject Work that does not conform to the Contract Documents. Whenever the Architect considers it necessary or advisable, the Architect shall have the authority to require inspection or testing of the Work in accordance with the provisions of the Contract Documents, whether or not such Work is fabricated, installed or completed. However, neither this authority of the Architect nor a decision made in good faith either to exercise or not to exercise such authority shall give rise to a duty or responsibility of the Architect to the Contractor, Subcontractors, material and equipment suppliers, their agents or employees or other persons or entities performing portions of the Work.

**§ 3.6.2.3** The Architect shall interpret and decide matters concerning performance under, and requirements of, the Contract Documents on written request of either the Owner or Contractor. The Architect's response to such requests shall be made in writing within any time limits agreed upon or otherwise with reasonable promptness.

**§ 3.6.2.4** Interpretations and decisions of the Architect shall be consistent with the intent of and reasonably inferable from the Contract Documents and shall be in writing or in the form of drawings. When making such interpretations and decisions, the Architect shall endeavor to secure faithful performance by both Owner and Contractor, shall not show partiality to either, and shall not be liable for results of interpretations or decisions rendered in good faith and in accordance with the standard of care set forth in Section 2.2.

*(Paragraph deleted)*
**§ 3.6.3 CERTIFICATES FOR PAYMENT TO CONTRACTOR**
**§ 3.6.3.1** The Architect shall review and certify the amounts due the Contractor and shall issue certificates in such amounts. The Architect's certification for payment shall constitute a representation to the Owner, based on the Architect's evaluation of the Work as provided in Section 3.6.2 and on the data comprising the Contractor's Application for Payment, that, to the best of the Architect's knowledge, information and belief, the Work has progressed to the point indicated and that the quality of the Work is in accordance with the Contract Documents. The foregoing representations are subject (1) to an evaluation of the Work for conformance with the Contract Documents upon Substantial Completion, (2) to results of subsequent tests and inspections, (3) to correction of minor deviations from the Contract Documents prior to completion, and (4) to specific qualifications expressed by the Architect.

**§ 3.6.3.2** The issuance of a Certificate for Payment shall not be a representation that the Architect has (1) made exhaustive or continuous on-site inspections to check the quality or quantity of the Work, (2) reviewed construction means, methods, techniques, sequences or procedures, or (3) ascertained how or for what purpose the Contractor has used money previously paid on account of the Contract Sum.

**§ 3.6.3.3** The Architect shall maintain a record of the Applications and Certificates for Payment.

**§ 3.6.4 SUBMITTALS**
**§ 3.6.4.1** The Architect shall review the Contractor's submittal schedule and shall not unreasonably delay or

**AIA Document B101™ – 2007 (formerly B151™ – 1997).** Copyright © 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:27:00 on 06/24/2016 under Order No.4075833874_1 which expires on 04/21/2017, and is not for resale.
**User Notes:** (2001039694)

withhold approval. The Architect's action in reviewing submittals shall be taken in accordance with the approved submittal schedule or, in the absence of an approved submittal schedule, with reasonable promptness while allowing sufficient time in the Architect's professional judgment to permit adequate review, but in no event more than ten (10) business days from receipt. The Architect shall not be required to review partial submissions or those for which submissions of correlated items have not been received.

§ 3.6.4.2 In accordance with the Architect-approved submittal schedule, the Architect shall review and approve or take other appropriate action upon the Contractor's submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. Review of such submittals is not for the purpose of determining the accuracy and completeness of other information such as dimensions, quantities, and installation or performance of equipment or systems, which are the Contractor's responsibility. The Architect's review shall not constitute approval of safety precautions or, unless otherwise specifically stated by the Architect, of any construction means, methods, techniques, sequences or procedures. The Architect's approval of a specific item shall not indicate approval of an assembly of which the item is a component.

§ 3.6.4.3 If the Contract Documents specifically require the Contractor to provide professional design services or certifications by a design professional related to systems, materials or equipment, the Architect shall specify the appropriate performance and design criteria that such services must satisfy. The Architect shall review Shop Drawings and other submittals related to the Work designed or certified by the design professional retained by the Contractor that bear such professional's seal and signature when submitted to the Architect. The Architect shall be entitled to rely upon the adequacy, accuracy and completeness of the services, certifications and approvals performed or provided by such design professionals.

§ 3.6.4.4 Subject to the provisions of Section 4.3, the Architect shall review and respond to requests for information about the Contract Documents. The Architect shall set forth in the Contract Documents the requirements for requests for information. Requests for information shall include, at a minimum, a detailed written statement that indicates the specific Drawings or Specifications in need of clarification and the nature of the clarification requested. The Architect's response to such requests shall be made in writing within any time limits agreed upon, or otherwise with reasonable promptness. If appropriate, the Architect shall prepare and issue supplemental Drawings and Specifications in response to requests for information.

§ 3.6.4.5 The Architect shall maintain a record of submittals and copies of submittals supplied by the Contractor in accordance with the requirements of the Contract Documents.

§ 3.6.5 CHANGES IN THE WORK
§ 3.6.5.1 The Architect may authorize minor changes in the Work that are consistent with the intent of the Contract Documents and do not involve an adjustment in the Contract Sum or an extension of the Contract Time. Subject to the provisions of Section 4.3, the Architect shall prepare, evaluate and analyze Change Orders and Construction Change Directives for the Owner's approval and execution in accordance with the Contract Documents.

§ 3.6.5.2 Upon request by the Owner, the Architect shall evaluate and make recommendations regarding substitutions of materials, products or equipment proposed by the Contractor. If the requested substitution requires significant services performed on a prior completed phase of the Project, the Architect shall be compensated for these services, as well as any services required to modify and coordinate the Construction Documents prepared by the Architect with those of the Architect's consultants and the Owner's consultants, as Additional Services. The Architect also shall be entitled to an adjustment in schedule caused by this additional effort, provided such Additional Services results in an actual increase in the Contract Time.

§ 3.6.5.3 The Architect shall maintain records relative to changes in the Work.

§ 3.6.6 PROJECT COMPLETION
§ 3.6.6.1 The Architect shall conduct inspections to determine the date or dates of Substantial Completion and the date of final completion; assist the Contractor in the preparation and review of a punch-list and conduct inspections relative thereto, provided such inspections are not extensive in nature; issue Certificates of Substantial Completion; receive from the Contractor and forward to the Owner, for the Owner's review and records, written warranties and related documents required by the Contract Documents and assembled by the Contractor; and issue a final

**Init.**

**/**

AIA Document B101™ – 2007 (formerly B151™ – 1997). Copyright © 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:27:00 on 06/24/2016 under Order No.4075833874_1 which expires on 04/21/2017, and is not for resale.
User Notes:                                                                                                    (2001039694)

9

Certificate for Payment based upon a final inspection indicating the Work complies with the requirements of the Contract Documents.

**§ 3.6.6.2** The Architect's inspections shall be conducted with the Owner to check conformance of the Work with the requirements of the Contract Documents and to verify the accuracy and completeness of the list submitted by the Contractor of Work to be completed or corrected.

**§ 3.6.6.3** When the Work is found to be substantially complete, the Architect shall inform the Owner about the balance of the Contract Sum remaining to be paid the Contractor, including the amount to be retained from the Contract Sum, if any, for final completion or correction of the Work.

**§ 3.6.6.4** The Architect shall forward to the Owner the following information received from the Contractor: (1) consent of surety or sureties, if any, to reduction in or partial release of retainage or the making of final payment; (2) affidavits, receipts, releases and waivers of liens or bonds indemnifying the Owner against liens; and (3) any other documentation required of the Contractor under the Contract Documents.

**§ 3.6.6.5** Upon request of the Owner, and prior to the expiration of one year from the date of Substantial Completion, the Architect shall, without additional compensation, conduct a meeting with the Owner to review the facility operations and performance.

## ARTICLE 4   ADDITIONAL SERVICES

**§ 4.1** Additional Services listed below are not included in Basic Services but may be required and/or requested for the Project. The Architect shall provide the listed Additional Services and the Owner shall compensate the Architect as provided

*(Paragraphs deleted)*

in 11.2, only if the Owner authorizes such Additional Services in writing prior to the Architect performing such Additional Services. If the Architect determines that any Additional Services are required, the Architect shall notify the Owner in writing and shall specify which Additional Services are so required and shall provide in such notice the Architect's best estimate of the cost of such Additional Services and a description and scope of such Additional Services. Failure to so notify and obtain the approval of the Owner prior to commencing such Additional Services shall constitute an irrevocable and conclusive waiver of any claim of the Architect for additional compensation on account of such Additional Services. Notwithstanding the foregoing, the Owner may waive the requirement to obtain the Owner's prior written consent for the performance of Additional Services, but only if such waiver is contained in a writing signed by the Owner (email notification is acceptable). Any and all costs for Additional Services performed without obtaining the prior written approval of the Owner shall be borne solely by the Architect. If the Owner indicates in writing that all or part of any such Additional Services are not required or if the Owner fails to authorize or confirm in writing that any such Additional Services are to be performed by the Architect, the Architect shall have no obligation to provide those services.

*(Table deleted)*
*(Paragraphs deleted)*

**§ 4.1.1** Without limiting Sections 3.2.7, 3.3.3 or 3.4.5, additional designs, beyond three (3) included in Basic Services.

**§ 4.1.2** Measured drawings, if surveying consultants are required and approved by the Owner, in writing, in addition to the Architect's survey.

**§ 4.1.3** Value Analysis (B204™–2007), beyond one included in Basic Services.

**§ 4.1.4** *Intentionally Omitted.*

**§ 4.1.5** As-designed record drawings, original design drawings revised to reflect on-site changes the contractor noted in the as-built record drawings.

**§ 4.1.6** *Intentionally Omitted.*

**§ 4.1.7** Without limiting the Architect's Basic Services required under this Agreement and the Proposal, renderings and presentation models, as requested by Owner.

**AIA Document B101™ – 2007 (formerly B151™ – 1997).** Copyright © 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:27:00 on 06/24/2016 under Order No.4075833874_1 which expires on 04/21/2017, and is not for resale.
User Notes:                                                                                                       (2001039694)

**§ 4.1.8** Custom design of furniture, furnishings and equipment that are not part of the built-in fixtures of the Project and drawings related interior design conceived, initiated or prepared by others.

**§ 4.1.9** Post-Construction Services, services related to but not limited to project maintenance, maintenance scheduling, warranty review, renovations, energy analysis and modeling, and disaster planning.

**§ 4.1.10** Landscape Design

**§ 4.1.11** Without limiting the Architect's Basic Services required under this Agreement and the Proposal, architectural interior design services, including Services related to assistance with items furnished by Owner, FBO.

**§ 4.1.12** Coordination of Interior Designer and Landscape Designer.

**§ 4.1.13** Services related to the drawing and documentation of existing conditions.

**§ 4.1.14** Services related to regulatory approvals, including but not limited to Design Review Board, Large House Review, building permits in excess of fifty (50) hours.

Note: The following services are customarily billed as Additional Services, but are included as part of Basic Services for this Project:

**§ 4.1.15** Programming (B202 – 2009), services related to a series of iterative steps, from a broad identification of priorities, values and goals of the programming participants to working with the Owner to confirm the Owner's objectives for the Project.

**§ 4.1.16** Site Evaluation and Planning (B203™–2007)

**§ 4.1.17** One Value Analysis

**§ 4.1.18** Coordination of all consultants providing services for the Project (other than interior designer and landscape designer).

**§ 4.2** *Intentionally Omitted.*

**§ 4.3.1 CHANGES, REVISIONS AND REQUESTS**
The following items are not part of Basic Services and, as such, require additional compensation. The Architect shall not proceed to provide the following services until the Architect receives the Owner's prior written authorization:

 .1
*(Paragraphs deleted)*
  Providing services related to neighbor or tenant claims and disputes, unless such claims or disputes arises from the Architect's or its consultants' willful misconduct or negligent performance of the services;
*(Paragraphs deleted)*

 .2 Preparation for, and attendance at a dispute resolution proceeding or legal proceeding, except (i) where the Architect is party thereto; or (ii) the proceeding substantially concerns the Architect's services;

 .3 Extensive evaluation of the qualifications of bidders or persons providing proposals;

 .4 Consultation concerning replacement of Work resulting from fire or other cause during construction;

 .5 Providing professional services made necessary by the default of a Contractor or by major defects in the Work of a Contractor in the performance of a Construction Contract;

 .6 Services related to a change in the Designated Representative;

 .7 Services related to assistance in Owner Moving.

**§ 4.3.2** The Architect shall provide Construction Phase Services exceeding the limits set forth below as Additional Services. When the limits below are reached, the Architect shall notify the Owner prior to proceeding in order to be considered as Additional Services:

**AIA Document B101™ – 2007 (formerly B151™ – 1997).** Copyright © 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:27:00 on 06/24/2016 under Order No.4075833874_1 which expires on 04/21/2017, and is not for resale.
User Notes: (2001039694)

Init.

/

.1   Two (2) reviews of each Shop Drawing, Product Data item, sample and similar submittal of the Contractor.
.2   One (1) weekly visits to the site by the Architect over the duration of the Project during construction.
.3
*(Paragraphs deleted)*
Two (2) inspections for any portion of the Work to determine whether such portion of the Work is substantially complete in accordance with the requirements of the Contract Documents.
.4   Two (2) inspections for any portion of the Work to determine final completion.

**§ 4.3.3**
*(Paragraphs deleted)*
If the services covered by this Agreement have not been completed within thirty-nine (39) months of the date of this Agreement, through no fault of the Architect, extension of the Architect's services beyond that time shall be compensated as Additional Services.

*(Paragraph deleted)*
**ARTICLE 5   OWNER'S RESPONSIBILITIES**
**§ 5.1** Unless otherwise provided for under this Agreement, the Owner shall provide information in a timely manner regarding requirements for and limitations on the Project, including a written program which shall set forth the Owner's objectives, schedule, constraints and criteria, including space requirements and relationships, flexibility, expandability, special equipment, systems and site requirements. Within fifteen (15) days after receipt of a written request from the Architect, the Owner shall furnish the requested information as necessary and relevant for the Architect to evaluate, give notice of or enforce lien rights.

**§ 5.2** The Owner shall establish and periodically update the Owner's budget for the Project, including (1) the budget for the Cost of the Work as defined in Section 6.1; (2) the Owner's other costs; and, (3) reasonable contingencies related to all of these costs. If the Owner significantly increases or decreases the Owner's budget for the Cost of the Work, the Owner shall notify the Architect. The Owner and the Architect shall thereafter agree to a corresponding change in the Project's scope and quality.

**§ 5.3** The Owner shall render decisions and approve the Architect's submittals in a timely manner in order to avoid unreasonable delay in the orderly and sequential progress of the Architect's services.

**§ 5.4** If required for the Project as reasonably determined by the Owner, the Owner shall direct the Architect to furnish surveys to describe physical characteristics, legal limitations and utility locations for the site of the Project, and a written legal description of the site. The surveys and legal information shall include, as applicable, grades and lines of streets, alleys, pavements and adjoining property and structures; designated wetlands; adjacent drainage; rights-of-way, restrictions, easements, encroachments, zoning, deed restrictions, boundaries and contours of the site; locations, dimensions and necessary data with respect to existing buildings, other improvements and trees; and information concerning available utility services and lines, both public and private, above and below grade, including inverts and depths. All the information on the survey shall be referenced to a Project benchmark. Survey services are billed as a reimbursable expense.

**§ 5.5** If required by the Project, as reasonably determined by the Owner, Owner shall furnish services of geotechnical engineers, which may include but are not limited to test borings, test pits, determinations of soil bearing values, percolation tests, evaluations of hazardous materials, seismic evaluation, ground corrosion tests and resistivity tests, including necessary operations for anticipating subsoil conditions, with written reports and appropriate recommendations.

**§ 5.6** As part of the Basic Services, the Owner has charged the Architect with the coordination of services of its selected consultants with those services provided by the Architect. If the Owner elects to hire a consultant directly, the Owner shall furnish copies of the scope of services in the contracts between the Owner and the Owner's consultants. The Owner shall, at the Owner's election, furnish the services of consultants other than those designated in this Agreement, or authorize the Architect to furnish them as an Additional Service, when the Architect requests such services and demonstrates that they are reasonably required by the scope of the Project. The Owner shall require that its consultants maintain professional liability insurance as appropriate to the services provided.

**AIA Document B101™ – 2007 (formerly B151™ – 1997).** Copyright © 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:27:00 on 06/24/2016 under Order No.4075833874_1 which expires on 04/21/2017, and is not for resale.
User Notes:                                                                            (2001039694)

Init.

/

**§ 5.7** The Owner shall furnish tests, inspections and reports required by law or the Contract Documents, such as structural, mechanical, and chemical tests, tests for air and water pollution, and tests for hazardous materials.

**§ 5.8** The Owner shall furnish all legal, insurance (except as required to be maintained by the Architect and its consultants pursuant to this Agreement) and accounting services, including auditing services, that may be reasonably necessary at any time for the Project to meet the Owner's needs and interests.

**§ 5.9** The Owner shall provide prompt written notice to the Architect if the Owner becomes aware of any fault or defect in the Project, including errors, omissions or inconsistencies in the Architect's Instruments of Service. Notwithstanding the foregoing, this Section 5.9 shall not relieve Architect from performing its services in accordance with this Agreement. Failure by the Owner to notify Architect of any defects in the Project or of any errors or omissions in the Instruments of Service shall not constitute a waiver by the Owner of any claims nor shall it release the Architect of its requirements or obligations set forth in this Agreement.

**§ 5.10** Except as otherwise provided in this Agreement, or when direct communications have been specially authorized, the Owner shall endeavor to communicate with the Contractor and the Architect's consultants through the Architect about matters arising out of or relating to the Contract Documents. The Owner shall promptly notify the Architect of any direct communications that may affect the Architect's services.

**§ 5.11** Upon request, the Owner shall provide the Architect a redacted copy of the executed agreement between the Owner and Contractor.

**§ 5.12** The Owner shall provide the Architect access to the Project site prior to commencement of the Work and shall obligate the Contractor to provide the Architect access to the Work wherever it is in preparation or progress.

## ARTICLE 6   COST OF THE WORK

**§ 6.1** For purposes of this Agreement, the Cost of the Work shall be the total cost to the Owner to construct all elements of the Project designed or specified by the Architect, which includes all built-in surface finishes, fixtures and hardware, and shall include contractors' general conditions costs and overhead as approved by the Owner in writing. The Cost of the Work does not include the compensation of the Architect, any consultants and Interior Designer, any other "soft" costs nor the costs of the land, rights-of-way, financing, contingencies for changes in the Work or other costs that are the responsibility of the Owner. In the event that the Owner's Interior Designer specifies built-in finishes, fixtures and hardware, the Cost of the Work, for the purpose of calculating the Architect's compensation, shall include the fair market value of those items.

**§ 6.2** The Owner's Budget for the Cost of the Work may be adjusted throughout the Project as required under Sections 3.2.8, 3.3.4, 5.2, 6.4 and 6.5. Evaluations of the Owner's Budget for the Cost of the Work, the preliminary estimate of the Cost of the Work and updated estimates of the Cost of the Work prepared by the Architect, represent the Architect's judgment as a design professional.

**§ 6.3** In preparing estimates of the Cost of Work, the Architect shall be permitted to include contingencies for design, bidding and price escalation; to determine what materials, equipment, component systems and types of construction are to be included in the Contract Documents; to make reasonable adjustments in the program and scope of the Project; and to include in the Contract Documents alternate bids as may be necessary to adjust the estimated Cost of the Work to meet the Owner's budget for the Cost of the Work and further provided that the Owner approves such estimates in writing Subject to Section 6.5, any estimates of the Cost of the Work not approved in writing by the Owner shall be rejected by the Owner. The Architect's estimate of the Cost of the Work shall be based on current area, volume or similar conceptual estimating techniques. If the Owner requests detailed cost estimating services, the Architect shall provide such services as an Additional Service under Article 4.

**§ 6.4** If the Bidding or Negotiation Phase has not commenced within ninety (90) days after the Architect submits the Construction Documents to the Owner, through no fault of the Architect, the Owner's Budget for the Cost of the Work shall be adjusted to reflect changes in the general level of prices in the applicable construction market.

**§ 6.5** If at any time the Architect's estimate of the Cost of the Work exceeds the Owner's Budget for the Cost of the Work, the Architect shall make appropriate recommendations to the Owner to adjust the Project's size, quality or budget for the Cost of the Work, and the Owner shall cooperate with the Architect in making such adjustments.

**AIA Document B101™ – 2007 (formerly B151™ – 1997).** Copyright © 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:27:00 on 06/24/2016 under Order No.4075833874_1 which expires on 04/21/2017, and is not for resale.
User Notes:                                                                                        (2001039694)

Init.

/

13

**§ 6.6** If the Owner's Budget for the Cost of the Work at the conclusion of (i) the Design Development Phase is exceed by the Cost Estimator's estimate of the Cost of the Work pursuant to Section 3.3.4, or (ii) the Construction Documents Phase Services is exceeded by the lowest bona fide bid or negotiated proposal, the Owner shall:

.1     give written approval of an increase in the budget for the Cost of the Work;

.2     authorize rebidding or renegotiating of the Project within a reasonable time;

.3     terminate in accordance with Section 9.6;

.4     in consultation with the Architect, revise the Project program, scope, or quality as required to reduce the Cost of the Work; or

.5     implement any other mutually acceptable alternative.

**§ 6.7** If the Owner chooses to proceed under Section 6.6.4, the Architect, without additional compensation (except as provided in this Section 6.7), shall modify the Design Development Documents and/or the Construction Documents as necessary to comply with the Owner's Budget for the Cost of the Work at the conclusion of the Design Development Phase Services or the Construction Documents Phase Services, as the case may be, or the Budget as adjusted under Section 6.6.1. The Architect's modification of the Design Development Documents and/or the Construction Documents shall be the limit of the Architect's responsibility under this Article 6. Notwithstanding the foregoing, the Architect's modification of the Design Development Documents and/or the Construction Documents shall be compensated as an Additional Service if: (i) the Cost of the Work as estimated by the Cost Estimator at the conclusion of the Design Development Phase exceeds one hundred five percent (105%) of the then current Budget; (ii) at the conclusion of the Construction Documents Phase, the lowest bona fide bid or negotiated proposal exceeds one hundred five percent (105%) of the then current Budget; or (iii) such modifications are required due to causes beyond the Architect's control. "Causes Beyond the Architect's Control" shall be defined as changes arising from any of the following: (x) changes authorized by the Owner in writing, (y) increases in the cost of materials or labor beyond that which were contemplated to be included in the Owner's Budget but which are the basis of a change because of the further development of the Construction Documents and which are unusual and not reasonably anticipated due to materials shortage, price inflation or other economic impacts out of the Architect's reasonable control, (z) war or force majeure, or (aa) clerical errors by the Cost Estimator.

**§ 6.8** In providing opinions of probable Cost of Work, the Owner understands that the Architect has no control over the cost or availability of labor, equipment or materials, or over market conditions or the Contractor's method of pricing, and that the Architect's opinions of probable construction costs are made on the basis of the Architect's professional judgment and experience. The Architect makes no warranty, express or implied, that the bids or the negotiated cost of the Work will not vary from the Architect's opinion of probable construction cost.

## ARTICLE 7  COPYRIGHTS AND LICENSES

**§ 7.1** If the Owner and Architect intend to transmit Instruments of Service or any other information or documentation in digital form, they shall endeavor to establish necessary protocols governing such transmissions.

**§ 7.2** Plans, drawings, specifications, reports, documents and related materials prepared by the Architect and any other products of the Architect's work (collectively, "Instruments of Service") are Instruments of Service for use solely with respect to the Project. Upon execution of this Agreement, the Architect grants to the Owner a nonexclusive, perpetual and irrevocable license to use the Architect's Instruments of Service solely and exclusively for purposes of constructing, using, maintaining, altering and adding to the Project, provided that the Owner substantially performs its obligations, including payment of all undisputed sums when due, under this Agreement, provided however, in the event Owner disputes more than twenty percent (20%) of an invoice submitted by the Architect, the parties agree that, in a good faith effort to avoid the risk of delay to the Project, such dispute shall be subject to expedited arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. The license afforded by this Section 7.2 shall continue and remain in full force and effect pending all hearings and decisions in connection with such expedited arbitration, provided the Owner continues to make timely payments of fees and reimbursements in accordance with this Agreement. The Architect shall obtain similar nonexclusive licenses from the Architect's consultants consistent with this Agreement. The license granted under this section permits the Owner to authorize the Contractor, Subcontractors, Sub-subcontractors, and material or equipment suppliers, as well as the Owner's consultants and separate contractors, to reproduce applicable portions of the Instruments of Service solely and exclusively for use in performing services or construction for the Project. If the Architect rightfully terminates this Agreement for cause as provided in Sections 9.1 and 9.5, the license granted in this Section 7.2 shall terminate.

**AIA Document B101™ – 2007 (formerly B151™ – 1997).** Copyright © 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:27:00 on 06/24/2016 under Order No.4075833874_1 which expires on 04/21/2017, and is not for resale.
User Notes: (2001039694)

**§ 7.3** In the event the Owner modifies the Instruments of Service without retaining the author of the Instruments of Service, the Owner releases the Architect and Architect's consultant(s) from all claims and causes of action arising from such uses. The Owner, to the extent permitted by law, further agrees to indemnify and hold harmless the Architect and its consultants from all costs and expenses, including the cost of defense, related to claims and causes of action asserted by any third person or entity to the extent such costs and expenses arise from the Owner's modification of the Instruments of Service under this Section 7.3. The terms of this Section 7.3 shall not apply if the Owner rightfully terminates this Agreement for cause under Section 9.4.

*(Paragraph deleted)*
**§ 7.4** Notwithstanding the license afforded by the Architect pursuant to Section 7.2, the Architect shall be entitled to use individual components or individual features of the Project's design on other projects. However, if Architect designs a project that is substantially similar to the Project in overall scope and design and which uses any unique and personally distinctive architectural components or designs of this Project, it shall be subject to Owner's prior written approval, which shall not be unreasonably delayed, conditioned or withheld. Notwithstanding the aforesaid, the Architect shall be required to obtain such approval of the Owner prior to the design phase of any other project within a twenty-five (25) mile radius of the Project. Such approval shall not be unreasonably delayed, conditioned or withheld.

## ARTICLE 8    CLAIMS AND DISPUTES
### § 8.1 GENERAL
**§ 8.1.1** The Owner and Architect shall commence all claims and causes of action, whether in contract, tort, or otherwise, against the other arising out of or related to this Agreement in accordance with the requirements of the method of binding dispute resolution selected in this Agreement within the period specified by applicable law.

**§ 8.1.2** To the extent damages are covered by property insurance, the Owner and Architect waive all rights against each other and against the contractors, consultants, agents and employees of the other for damages, except such rights as they may have to the proceeds of such insurance as set forth in AIA Document A201–2007, General Conditions of the Contract for Construction. The Owner or the Architect, as appropriate, shall require of the contractors, consultants, agents and employees of any of them similar waivers in favor of the other parties enumerated herein.

**§ 8.1.3** The Architect and Owner waive consequential damages for claims, disputes or other matters in question arising out of or relating to this Agreement. This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination of this Agreement, except as specifically provided in Section 9.8 and 11.9.5.

**§ 8.1.4** The Architect shall continue to perform its services hereunder during any claim, dispute or proceeding between the parties hereto as if such claim, dispute or proceeding had not been instituted; provided that Owner continues to make payments to Architect for those items not in dispute. Any amounts in dispute shall be held by the Owner's counsel in a non-interest bearing commercial bank account and shall be deposited upon written notice of dispute by Owner. Notwithstanding the foregoing, in the event such claim, dispute or proceeding arises during the course of the Architect's performance hereunder and cumulatively totals fifteen percent (15%) or more of the Architect's fee ("Withheld Amount"), the parties agree that, in a good faith effort to avoid the risk of delay to the Project, such dispute shall be subject to expedited arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect and the Owner shall continue to make payment of any disputed amounts in excess of the Withheld Amount under a reservation of rights and without prejudice to Owner rights and defenses hereunder or at law. The Architect shall continue to fully perform under this Agreement pending all hearings and decisions in connection with such expedited arbitration, provided the Owner makes timely payment of fees and reimbursements in accordance with this Agreement.

### § 8.2 MEDIATION
**§ 8.2.1** Any claim, dispute or other matter in question arising out of or related to this Agreement shall be subject to mediation as a condition precedent to binding dispute resolution. If such matter relates to or is the subject of a lien arising out of the Architect's services, the Architect may proceed in accordance with applicable law to comply with the lien notice or filing deadlines prior to resolution of the matter by mediation or by binding dispute resolution.

**AIA Document B101™ – 2007 (formerly B151™ – 1997).** Copyright © 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:27:00 on 06/24/2016 under Order No.4075833874_1 which expires on 04/21/2017, and is not for resale.
**User Notes:**                                                                                                 (2001039694)

**§ 8.2.2** The Owner and Architect shall endeavor to resolve claims, disputes and other matters in question between them by mediation which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Mediation Procedures in effect on the date of the Agreement. A request for mediation shall be made in writing, delivered to the other party to the Agreement, and filed with the person or entity administering the mediation. The request may be made concurrently with the filing of a complaint or other appropriate demand for binding dispute resolution but, in such event, mediation shall proceed in advance of binding dispute resolution proceedings, which shall be stayed pending mediation for a period of sixty (60) days from the date of filing, unless stayed for a longer period by agreement of the parties or court order. If an arbitration proceeding is stayed pursuant to this section, the parties may nonetheless proceed to the selection of the arbitrator(s) and agree upon a schedule for later proceedings.

**§ 8.2.3** The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

**§ 8.2.4** If the parties do not resolve a dispute through mediation pursuant to this Section 8.2, the method of binding dispute resolution shall be the following:

[   ]     Arbitration pursuant to Section 8.3 of this Agreement

[X]     Litigation in a court of competent jurisdiction
*(Paragraphs deleted)*

## ARTICLE 9   TERMINATION OR SUSPENSION

**§ 9.1** If the Owner fails to make undisputed payments to the Architect in accordance with this Agreement, after the Architect provides the Owner with written notice of such failure and the Owner fails to make payment within fifteen (15) days of such notice, such failure shall be considered substantial nonperformance and cause for termination or, at the Architect's option, cause for suspension of performance of services under this Agreement. If the Architect elects to suspend services, the Architect shall give seven (7) days' written notice to the Owner before suspending services. In the event of a suspension of services, the Architect shall have no liability to the Owner for delay or damage caused the Owner because of such suspension of services. Before resuming services, the Architect shall be paid all sums due prior to suspension and any expenses directly, reasonably and necessarily incurred in the interruption and resumption of the Architect's services. The Architect's fees for the remaining services and the time schedules shall be equitably adjusted.

**§ 9.2** If the Owner suspends the Project for more than sixty (60) consecutive days, through no fault of the Architect, its consultants or anyone under their control, the Architect shall be compensated for undisputed services performed prior to notice of such suspension. When the Project is resumed, the Architect shall be compensated for expenses directly, reasonably and necessarily incurred in the interruption and resumption of the Architect's services. The Architect's fees for the remaining services and the time schedules shall be equitably adjusted.

**§ 9.3** If the Owner suspends the Project for more than ninety (90) cumulative days for reasons other than the fault of the Architect, the Architect may terminate this Agreement by giving not less than seven (7) days' written notice.

**§ 9.4** *Intentionally Omitted.*

**§ 9.5** Either party may terminate this Agreement upon not less than seven (7) days' written notice should the other party fail substantially to perform in accordance with the terms of this Agreement through no fault of the party initiating the termination.

**§ 9.6** The Owner may terminate this Agreement upon not less than seven (7) days' written notice to the Architect for the Owner's convenience and without cause.

**§ 9.7** In the event of termination not the fault of the Architect, the Architect shall be compensated for services performed prior to termination, together with Reimbursable Expenses then due and all Termination Expenses as defined in Section 9.8.

**AIA Document B101™ – 2007 (formerly B151™ – 1997).** Copyright © 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:27:00 on 06/24/2016 under Order No.4075833874_1 which expires on 04/21/2017, and is not for resale.
**User Notes:** (2001039694)

**§ 9.8** Termination Expenses are in addition to compensation for the Architect's services and include expenses directly and necessarily attributable to termination for which the Architect is not otherwise compensated.

**§ 9.9** The Owner's rights to use the Architect's Instruments of Service in the event of a termination of this Agreement are set forth in Article 7.

## ARTICLE 10    MISCELLANEOUS PROVISIONS

**§ 10.1** This Agreement shall be governed by the law of the place where the Project is located.

**§ 10.2** Terms in this Agreement shall have the same meaning as those in AIA Document A201–2007, General Conditions of the Contract for Construction.

**§ 10.3** The Owner and Architect, respectively, bind themselves, their agents, successors, assigns and legal representatives to this Agreement. Neither the Owner nor the Architect shall assign this Agreement without the written consent of the other, except that the Owner may assign this Agreement to a lender providing financing for the Project if the lender agrees to assume the Owner's rights and obligations under this Agreement.

**§ 10.4** If the Owner requests the Architect to execute certificates, the proposed language of such certificates shall be submitted to the Architect for review at least fourteen (14) days prior to the requested dates of execution. If the Owner requests the Architect to execute consents reasonably required to facilitate assignment to a lender, the Architect shall execute all such consents that are consistent with this Agreement, provided the proposed consent is submitted to the Architect for review at least fourteen (14) days prior to execution. The Architect shall not be required to execute certificates or consents that would require knowledge, services or responsibilities beyond the scope of this Agreement.

**§ 10.5** Nothing contained in this Agreement shall create a contractual relationship with or a cause of action in favor of a third party against either the Owner or Architect.

**§ 10.6** *Intentionally Omitted.*

**§ 10.7** The Architect shall have the right to include photographic or artistic representations of the design of the Project among the Architect's promotional and professional materials. The Architect shall be given reasonable access to the completed Project to make such representations. However, the Architect's materials shall not include the Owner's confidential or proprietary information if the Owner has previously advised the Architect in writing of the specific information considered by the Owner to be confidential or proprietary. The Owner shall endeavor to provide professional credit for the Architect in any publication listed by the Owner.

**§ 10.8** If the Architect or Owner receives information specifically designated by the other party as "confidential" or "business proprietary," the receiving party shall keep such information strictly confidential and shall not disclose it to any other person except to (1) its employees, (2) those who need to know the content of such information in order to perform services or construction solely and exclusively for the Project, or (3) its consultants and contractors whose contracts include similar restrictions on the use of confidential information.

**§10.9** In the event that any provision of this Agreement is declared by a court of competent jurisdiction, arbitration tribunal, governmental or administrative body or other entity having jurisdiction to be invalid or unenforceable, the validity and enforceability of the remaining provisions of this Agreement shall remain in full force and effect to the extent consistent with the parties' original intent, and such invalid or unenforceable term or provision shall be modified automatically to the least extent possible in order to render the term or provision valid and enforceable, but only if the term or provision as so modified remains consistent with the parties' original intent.

**§10.10** Any failure of any of the parties to comply with any obligation, covenant, agreement or condition herein may be waived by the party or parties entitled to the benefits thereof only by a written instrument signed by the party granting such waiver, but such waiver or failure to insist upon strict compliance with such obligation, covenant, agreement or condition shall not operate as a waiver of, or estoppel with respect to, any subsequent or other failure of the same or any other obligation, covenant, agreement or condition.

Init.

/

**AIA Document B101™ – 2007 (formerly B151™ – 1997).** Copyright © 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:27:00 on 06/24/2016 under Order No.4075833874_1 which expires on 04/21/2017, and is not for resale.
User Notes:                                                                                                                      (2001039694)

**ARTICLE 11    COMPENSATION**

**§ 11.1** For the Architect's Basic Services described under Article 3, the Owner shall compensate the Architect as follows:

For Basic Services as defined in the Proposal Letter, dated March 17, 2016 and revised April 27, 2016, the fee is eighteen and one half percent (18.5%) of the Cost of the Work.

**§ 11.2** For Additional Services designated in Article 4, the Owner shall compensate the Architect as follows:
*(Paragraph deleted)*
Architect shall be compensated on an hourly rate basis in accordance with the hourly billing rates set forth in the Section 11.5, which rates shall include the base hourly pay and all fringe benefits, profit, and overhead with respect to all of Architect's personnel.

**§ 11.3**
*(Paragraphs deleted)*
*Intentionally Omitted.*

**§ 11.4** Where compensation for Basic Services is based on a stipulated sum or percentage of the Cost of the Work, the compensation for each phase of services shall be as follows:

| | | | | | |
|---|---|---|---|---|---|
| Schematic Design Phase | Twenty-Two | percent | ( | 22 | %) |
| Design Development Phase | Twenty-Two | percent | ( | 22 | %) |
| Construction Documents Phase | Twenty-Three | percent | ( | 23 | %) |
| Bidding or Negotiation Phase | Three | percent | ( | 3 | %) |
| Construction Phase | Thirty | percent | ( | 30 | %) |
| Total Basic Compensation | One Hundred | percent | ( | 100 | %) |

**§ 11.5** The hourly billing rates for services of the Architect are set forth below. The rates shall be adjusted in accordance with the Architect's normal review practices, but no more than once per year commencing on the annual anniversary of the date of this Agreement.

| Employee or Category | Rate |
|---|---|
| Founding Principal | $ 325.00 |
| Principal | $ 225.00 |
| Associate | $ 175.00 |
| Project Architect | $ 150.00 |
| Project Manager | $ 150.00 |
| Project Captain | $ 140.00 |
| Designer III | $ 130.00 |
| Designer II | $ 120.00 |
| Designer I | $ 110.00 |
| Design Assistant | $   85.00 |

**§ 11.6** When compensation is based on a percentage of the Cost of the Work and any portions of the Project are deleted or otherwise not constructed, compensation for those portions of the Project shall be payable to the extent services are performed on those portions, in accordance with the schedule set forth in Section 11.5 based on (1) the lowest bona fide bid or negotiated proposal, or (2) if no such bid or proposal is received, the most recent estimate of the Cost of the Work for such portions of the Project. The Architect shall be entitled to compensation in accordance with this Agreement for all services performed whether or not the Construction Phase is commenced.

**§ 11.7**
*(Paragraphs deleted)*
**COMPENSATION FOR REIMBURSABLE EXPENSES**
**§ 11.7.1** Reimbursable Expenses are in addition to compensation for Basic and Additional Services and include expenses incurred by the Architect and the Architect's consultants directly related to the Project, and approved in

**AIA Document B101™ – 2007 (formerly B151™ – 1997).** Copyright © 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:27:00 on 06/24/2016 under Order No.4075833874_1 which expires on 04/21/2017, and is not for resale.
User Notes:                                                                                                                                                          (2001039694)

writing by the Owner, provided however, Owner-approval shall not be required for the Reimbursable Expenses identified in Sections 11.7.1.3, 11.7.1.4 and 11.7.1.7, as follows:

.1   Travel and accommodations in and to Boston in connection with the project;
.2   Fees paid for securing approval of authorities having jurisdiction over the Project;
.3   Printing, reproductions, plots, standard form documents;
.4   Postage, handling and delivery;
.5   Renderings prepared by consultant, model materials, mock-ups, professional photography, and presentation materials requested by the Owner;
.6   Architect's Consultant's expense of professional liability insurance dedicated exclusively to this Project, or the expense of additional insurance coverage or limits if the Owner requests such insurance in excess of that normally carried by the Architect's consultants;
.7   All taxes levied on interior design services performed by the Architect and reimbursable expenses;
.8   Other similar Project-related expenditures.

**§ 11.7.2** For Reimbursable Expenses the compensation shall be the expenses incurred by the Architect and the Architect's consultants billed at direct cost.

### § 11.8 COMPENSATION FOR USE OF ARCHITECT'S INSTRUMENTS OF SERVICE
If the Owner terminates the Architect for its convenience under Section 9.6, or the Architect terminates this Agreement under Section 9.3, the Owner shall pay a licensing fee as compensation for the Owner's continued use of the Architect's Instruments of Service follows:

Sixty Thousand Dollars ($60,000) during Schematic Design Phase; Fifty Thousand Dollars ($50,000) during Design Development Phase; Forty Thousand Dollars ($40,000) during Construction Documents Phase, provided however, in no event shall the Architect claim that the Owner constructively terminated the Agreement in order to recover the amounts in this Section 11.8.

*(Paragraphs deleted)*
**§ 11.9**
*(Paragraphs deleted)*
**BILLING AND PAYMENT**
*(Paragraphs deleted)*
**§ 11.9.1** An initial payment of One Hundred Twenty-Five Thousand Dollars ($125,000) shall be made upon execution of this Agreement and is the minimum payment under this Agreement. One Hundred Twenty-Five Thousand and Dollars ($125,000) will be credited against the services currently being performed as of this date.

**§ 11.9.2** Invoices shall be submitted by the Architect to the Owner on a monthly basis. Invoices for services are tendered for work completed during the prior 30-day period, and reference the pro-rata portion of services performed during this period in any given phase as determined by calendar days.

**§ 11.9.3** Payments for services shall be made monthly. Payments are due and payable upon thirty (30) days from the Owner's receipt of the Architect's invoice. Invoices for fees and Reimbursable Expenses shall be submitted with appropriate supporting documentation as reasonably required by the Owner showing the Architect's right to payment including, without limitation, lien waivers and releases in a form reasonably acceptable to the Owner. Amounts unpaid for more than forty-five (45) days' from Owner's receipt of such invoice, shall bear interest at the rate entered below:

One half percent (0.50%) monthly.

**§ 11.9.4** Records of Reimbursable Expenses, expenses pertaining to Additional Services, and services performed on the basis of hourly rates shall be available to the Owner for review and audit at mutually convenient times.

**§ 11.9.5** Unless the Architect agrees, payments to the Architect shall not be withheld, postponed or made contingent on the construction, completion or success of the Project or upon receipt by the Owner of offsetting reimbursement or credit from other parties who may have caused Additional Services or expenses, unless the Architect or its consultants caused.

Init.

/

**AIA Document B101™ – 2007 (formerly B151™ – 1997).** Copyright © 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:27:00 on 06/24/2016 under Order No.4075833874_1 which expires on 04/21/2017, and is not for resale.
User Notes:                                                                                                              (2001039694)

**19**

**§ 11.9.6** Subject to Section 8.1.4, if Owner is permitted under the provisions of this Agreement to disapprove an invoice, in whole or in part, or withhold or nullify any payment to Architect, and Owner does in fact do so, the Architect shall continue to perform its services despite such action by Owner. Any stoppage of the services by Architect due to such action by Owner shall be a material breach of this Agreement. Owner shall not be deemed to be in breach of this Agreement by reason of any such disapproval, withholding or nullification, provided the Owner complies with Section 8.1.4. In the event that Architect breaches this Section 11.9.5 by suspension or otherwise withholding of performance of the services, in whole or in part, it is understood, acknowledged and agreed that Owner may recover from Architect all direct and consequential damages as a result of any breach of this Agreement (including such breach by suspension or withholding of performance), notwithstanding anything to the contrary in this Agreement, including without limitation Sections 8.1.3.

## ARTICLE 12    SPECIAL TERMS AND CONDITIONS
Special terms and conditions that modify this Agreement are as follows:

**§ 12.1** *Intentionally Omitted.*

**§ 12.2** The Owner understands and agrees that products or building materials that are permissible under current building codes and ordinances may, at some future date, be banned or limited in use in the construction industry because of presently unknown hazardous and/or defective characteristics. The Owner agrees that if any product or material specified for this Project by the Architect shall, at any future date be suspected or discovered to be defective or a health or safety hazard, then the Owner shall waive all claims as a result thereof against the Architect., unless the Architect acted with in selecting such materials or if the Architect reasonably should have known that such products or materials were, or contained, hazardous materials or defective characteristics. The Owner further agrees that if the Owner directs the Architect to specify any product or material after the Architect has informed the Owner that such product or material may not be suitable or may embody characteristics that are suspected of causing or may cause the product or material to be considered a hazardous substance in the future, the Owner waives all claims as a result thereof against the Architect.

**§ 12.3** The Owner agrees that the technical methods, design details, techniques and pricing data contained in any material submitted by the Architect pertaining to this Project or this Agreement shall be considered confidential and proprietary, and shall not be released or otherwise made available to any third party without the express written consent of the Architect.

**§ 12.4** Prevailing Party. The prevailing party in any dispute arising out of, with respect to or connected with this Agreement shall recover, in addition to costs and all other relief entitled to under law, its costs and reasonable attorneys' fees, including, but not limited to, fees and costs incurred at the start of the dispute even if such fees and costs are incurred prior to the filing of any suit.

## ARTICLE 13    SCOPE OF THE AGREEMENT
**§ 13.1** This Agreement represents the entire and integrated agreement between the Owner and the Architect and supersedes all prior negotiations, representations or agreements, either written or oral. This Agreement may be amended only by written instrument signed by both Owner and Architect.

**§ 13.2** This Agreement is comprised of the following documents listed below:
.1     AIA Document B101™–2007, Standard Form Agreement Between Owner and Architect
.2     The Proposal Letter, dated March 17, 2016 and revised April 27, 2016 attached hereto as **Exhibit 1.1**;
.3     Other documents:

|            |                            |
|------------|----------------------------|
| Exhibit 1.1 | Proposal/Scope of Services |
| Exhibit 2.3 | List of Key Employees      |
| Exhibit 3.1.3 | Design Schedule          |

## ARTICLE 14  COUNTERPARTS/FACSIMILE
This Agreement may be executed in any number of counterparts and via facsimile or .pdf signatures, and all such counterparts taken together shall be deemed to constitute one and the same original instrument. Signature pages may be detached from counterpart documents and reassembled to form duplicate executed originals.

Init.

/

**AIA Document B101™ – 2007 (formerly B151™ – 1997).** Copyright © 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:27:00 on 06/24/2016 under Order No.4075833874_1 which expires on 04/21/2017, and is not for resale.

**20**

User Notes:                                                                                                                    (2001039694)

This Agreement entered into as of the day and year first written above.

OWNER

_Amy Beryson_ _John Beryson_
(Signature)

_By Mark D. Balk, under Power_
(Printed name and title)
_of Attorney_

ARCHITECT

(Signature)

David Piscuskas FAIA LEED AP
Founding Principal
(Printed name and title)

AIA Document B101™ – 2007 (formerly B151™ – 1997). Copyright © 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:27:00 on 08/24/2016 under Order No.4075833574_1 which expires on 04/21/2017, and is not for resale.
User Notes:                                                                                                     (2001038694)

Init.

/

21



**Exhibit 1.1**

**Proposal/Scope of Services**

Init.

/

**AIA Document B101™ – 2007 (formerly B151™ – 1997).** Copyright © 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:27:00 on 06/24/2016 under Order No.4075833874_1 which expires on 04/21/2017, and is not for resale.
User Notes:                                                                                                                (2001039694)

**II00:** ARCHITECT • DAVID PISCUSKAS • JUERGEN RIEHM
475 TENTH AVENUE **NEW YORK** NY I00I8 USA
T 2I2 645 I0II • F 2I2 645 4670
INFO@II00ARCHITECT.COM • WWW.II00ARCHITECT.COM

~~March 17, 2016~~ April 27th, 2016
John and Amy Berylson
38 Highgate
Wellesley, MA 02481

RE: The Berylson Residence / 38 + 44 Highgate **REVISED PROPOSAL** ~~April 12th 2016~~ **April 27th, 2016**

Dear Amy and John,

This letter serves as our summary understanding of our conversations of the project to date. Pursuant to our conversations and mutual understanding regarding a basic fee for services, this letter also outlines the services we propose to perform in the months ahead.

**Program:**
Renovation of, and addition to, the existing residence at 38 Highgate. Program contemplates the substantial renovation to 38 Highgate including a total of Six bedrooms [Four in renovated 38, Two in new addition]; connection to new addition; a new Living Room/Library and Seating Area; Dining Room for 24-30 persons; Support Kitchen; future guest suite (one of six bedrooms); future staff accommodations (one of six bedrooms); Office; Garage (6 car capacity); Storage and Infrastructure as appropriate.

**Project Complexities**
A significant renovation of your existing home is an integral component of the project scope.
It is anticipated that you will remain in occupancy during the renovation and expansion work on and to your home, an intention that will necessitate the careful conception and execution of a phased work plan.

**Construction Budget – Preliminary Appraisal:**
The following statement outlines a general approximation of scope in terms of total square footage and construction costs per current market factors. A brief statement of the program spaces for the Addition is as follows:

**Existing House**

| | |
|---|---|
| Renovation impact area | Approx. 5,500 SF |
| Cost Range for renovation, reconstruction, selected exterior modifications | $850 - $1,000/SF |
| Subtotal Existing House | $4,675,000 – 5,500,000 |

**Addition**

| | |
|---|---|
| Approximate area of new building | Approx. 3,500 SF |
| Cost range for pre-construction, new construction, site work | $1,000 – 1,200/SF |
| (NIC finished landscaping by Reed Hilderbrand) | |
| Subtotal Addition | $3,500,000 - $4,200,000 |

**Staff Quarters /Garage/ Storage/ Mechanical**

| | |
|---|---|
| Approximate area of new building | Approx. 3,200 SF |
| Cost range for pre-construction, new construction, and associated site work | $800 – 950/SF |
| (NIC finished landscaping by Reed Hilderbrand) | |
| Subtotal Garage/Carriage House | $2,400,000 - $3,040,000 |

| | |
|---|---|
| **Preliminary Appraised Range of Project Construction Cost** | $10,575,000 - $12,740,000 |

**IIOO:** ARCHITECT • DAVID PISCUSKAS • JUERGEN RIEHM
475 TENTH AVENUE **NEW YORK** NY IOOI8 USA
T 2I2 645 IOII • F 2I2 645 4670
INFO@IIOOARCHITECT.COM • WWW.IIOOARCHITECT.COM

**Attachment A**

**Architectural Services Compensation**:
~~$2,600,000.00 [Two Million Six Hundred Thousand Dollars].~~
Basic services compensation of 18.5% of Total Construction Costs.

Basic Services include selected additional services above Basic Services: Consultant coordination; site master planning (additions and provision for potential future additions); project management (in tandem with Bob Carlson).

The fee contemplates a project duration of 30 – 36 months. The more expeditious the completion of the project, the sooner the owners can enjoy its benefits. The Architect is prepared to commit the resources in time and personnel appropriate to completing a quality outcome, thoroughly executed, according to these objectives.

A significant component of the project involves the substantial renovation of your existing residence at 38 Highgate, and your occupancy of this residence throughout the project, inclusive of all renovation work (and notwithstanding the construction of a new addition to the residence).

Respectfully, we forecast several complex conditions will arise from this aspect of the project, many of which cannot be fully assessed and quantified at this time. We agree that 1100 will keep you regularly advised of the scope of the work, and the cost and issues related to same.

Based upon numerous discussions with Amy, (including an overall review today), these components of the renovation include but are not limited to:
- New updated plumbing, radiant heating and air conditioning systems and integration with the existing and new parts of the house;
- New lighting and electrical circuiting into and integration with the existing and new parts of the house;
- The likelihood of selected structural modifications to the existing house to enhance the flow and spatial proportions of the building and connection to the new addition;
- The likelihood that sub-par quality of many interior partitions will need to be reconstructed;
- The potential transition to well water from town water supply;
- The replacement of the majority of the windows and doors;
- Selected modifications to the exterior and the roof;
- The possibility that the renovation work may occur in stages and phases, which must be integrated with the certainty of your occupancy in 38 Highgate throughout the duration of the project.

**II00:** ARCHITECT • DAVID PISCUSKAS • JUERGEN RIEHM
475 TENTH AVENUE **NEW YORK** NY I0018 USA
T 2I2 645 I0II • F 2I2 645 4670
INFO@II00ARCHITECT.COM • WWW.II00ARCHITECT.COM

Hourly Billing Rates:

| | | | |
|---|---|---|---|
| Founding Principal | $325.00 | Project Captain | $140.00 |
| Principal | $225.00 | Designer III | $130.00 |
| Associate | $175.00 | Designer II | $120.00 |
| Project Architect | $150.00 | Designer I | $110.00 |
| Project Manager | $150.00 | Design Assistant | $ 85.00 |

**Consulting Engineers, Design Professionals, Architectural Consultant:**
The following estimates may be used for reference and order of magnitude for the following engineering and consulting professional disciplines:

- Structural Engineer [Silman]                    $ 40,000 – $  80,000
- MEP Engineer, TBD                               $ 75,000 – $ 110,000
- Controlled Inspection (as required)             $  3,500 – $  10,000
- Lighting Design consultant, TBD                 $  5,000 – $  40,000
- Landscape Designer [Reed Hildebrand]                   TBD

Note: The foregoing fee estimates of consulting engineers are approximations. The respective service providers will view the project conditions first-hand in order to confirm and formally submit their proposals.

**Interior Design Services:**
If the Owner elects to request interior design services, in part or in whole, services for the design and specification of interior design elements are provided on an hourly rate basis in accordance with a forthcoming rate and personnel time expenditure forecast approved by the Owner.

Services related to procurement, fabrication, tracking, delivery and installation of the approved schedule of interior furniture non-built-in elements will be invoiced on an hourly basis.  As a design professional, we are usually able to procure discounts on purchases; we are pleased to pass this discount to you.

**1100:** ARCHITECT · DAVID PISCUSKAS · JUERGEN RIEHM
475 TENTH AVENUE **NEW YORK** NY 10018 USA
T 212 645 1011 · F 212 645 4670
INFO@1100ARCHITECT.COM · WWW.1100ARCHITECT.COM

**Attachment B**

**Architectural Services:**
Architectural Services to include Basic Services (as noted below) plus the following unique characteristics: Renovation of existing residence; New Addition to existing residence; Master Planning of potential development of site including new addition, and future construction; Design Services Management of selected Structural and Mechanical Engineers; Phased Construction of project; Owner Occupancy throughout the duration of construction phase; Procurement of Town Approvals; Project Management (in coordination with Bob Carlson) of construction trades, bidding, and negotiation.

The following statement, on page 4 and 5, provides an overview description of the basic services proposed by 1100 Architect PC. References in this section apply to AIA Document B101 – 2007 Standard Form of Agreement Between Owner and Architect.

Phase:  Schematic Design / detailed in Article 3.1, 3.2 of B101-2007/ 22% of fee
- Review, and development as necessary, of Owner's program and requirements; including budget and schedule
- Review of site, code requirements; building permit requirements;
- Preparation and presentation of the schematic design for the house;
- Develop a cohesive schematic design for both a new addition and the existing house
- Design review meetings with Owner, on a regular interval appropriate to the project schedule, as required.
- Establishment of project budget/probable construction cost on the basis of schematic design documents. Review of probable construction costs with Owner; per evaluation with Owner, establishment of document modifications with commensurate cost adjustments to be developed in Design Development phase in accordance with Owner's budget.
- The time schedule and extent of this phase will be impacted by various factors with implications on time and cost, foremost of which are:
  - Construction phasing for a house being continually occupied
  - Strategies for regulatory approvals
- The base fee includes time expended in the service of regulatory approval.
- Per proposed schedule, phase estimated to complete in fourteen to seventeen weeks.

Phase:  Design Development / detailed in Article 3.1, 3.3 of B101-2007/ 22% of fee
- Development of the approved schematic design including material and finishes;
- Direction and Coordination of Consultants for structural, mechanical, electrical, and plumbing engineering services as required by project and authorized by Owner;
- Design review meetings with Owner, on a regular interval appropriate to the project schedule, as required.
- Per proposed schedule, phase estimated to complete in twelve to fourteen weeks.

**II00:** ARCHITECT • DAVID PISCUSKAS • JUERGEN RIEHM
475 TENTH AVENUE **NEW YORK** NY I0018 USA
T 2I2 645 I0II • F 2I2 645 4670
INFO@II00ARCHITECT.COM • WWW.II00ARCHITECT.COM

Phase:  Construction Documents / detailed in Article 3.1, 3.4 of B101-2007/ 23% of fee
- Preparation of construction documents including complete construction drawings and construction specifications suitable for the construction of the project as per the approved design;
- Coordination of the services of engineering and other consultants related and necessary for the completion of the construction documents and specifications;
- Design and drawing review meetings with Owner, on a regular interval appropriate to the project schedule, as required;
- Negotiation of project construction cost on the basis of construction documents at intervals appropriate to the execution of the work. Review of negotiated construction costs with Owner; evaluation of scope and content appropriate to Owner needs and requirements; establishment of document modifications with commensurate cost adjustments to be executed in Construction Document phase in accordance with Owner's budget. This process to occur in two iterations in advance of and commensurate with the construction, fabrication, and material procurement schedule established by the General Contractor.
- Per proposed schedule, phase estimated to complete in sixteen to nineteen weeks.

Phase:  Bidding and Negotiation / detailed in Article 3.1, 3.5 of B101-2007/ 3% of fee
- Solicitation of complete proposals for the construction of the project.
- Per proposed schedule phase, estimated to complete in six to eight weeks.

Phase:  Construction Administration / detailed in Article 3.1,3.6 of B101-2007/ 30% of fee
- Construction observation during construction at regular intervals appropriate to the work;
- Construction and contract administration including review of shop drawings, (material samples, etc.) and the provision of answers to requests for information made by contractor;
- On-going review of status of work fabricated and prepared off-site in advance of preparation for on-site installation;
- Review of activity and projection reports prepared by General Contractor of two weeks and six weeks look ahead schedules.
- Tri-monthly reporting to the Owner of project progress and compliance with the project schedule;
- Preparation and administration of punch list upon substantial completion of the work and project close-out.

**Exhibit 2.3**

**List of Key Employees**

David Piskuskas – Principal in Charge

Susanne Milne – Project Manager

Jason O'Koren – Project Architect

Betty Gonzalez – Procurement Coordinator

Init.

/

**AIA Document B101™ – 2007 (formerly B151™ – 1997).** Copyright © 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:27:00 on 06/24/2016 under Order No.4075833874_1 which expires on 04/21/2017, and is not for resale.
**User Notes:**                                                                                                                 (2001039694)

**23**



**Exhibit 3.1.3**

**Design Schedule**

Init.

/

**AIA Document B101™ – 2007 (formerly B151™ – 1997).** Copyright © 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:27:00 on 06/24/2016 under Order No.4075833874_1 which expires on 04/21/2017, and is not for resale.
**User Notes:**                                                                                                                    (2001039694)

**24**

**Highgate**
**Project Schedule**
**6/15/2016**



| Phase | Duration |
|---|---|
| **Schematic Design** | |
| Schematic Design | 5 Months |
| Lot Consolidation (survey, land use, etc) | 5 Months |
| Schematic Pricing | 1 Month |
| **Approvals** | |
| 1100 Large House  Package | 2 Months |
| Board Review of Large House Application (including 2 Hearings) | 5.5 Months |
| 1100 Building Permit Package / Waiting Period | 6 Weeks |
| DOB Review for New Building Permit | 6 Weeks |
| **Design Development** | |
| Design Development Renovation Package | 3 Months |
| DD Pricing - Renovation Package | 1 Month |
| Design Development New Construction | 4 Months |
| DD Pricing - New Construction | 1 Month |
| **Construction Documents** | |
| Construction Documents Renovation Package | 4 Months |
| Buy CD Renovation Package | 1 Month |
| Construction Documents Complete Design | 8 Months |
| Buy CD New Construction | 1 Month |
| **Construction Administration** | |
| Contractor Selection | 6 Weeks |
| Contractor Mobilization | 6 Weeks |
| Construction Administration | 20 Months |