## THE UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| John G. Berylson and Amy Smith Berylson,  ) <br>     Plaintiffs,  ) <br> ) <br> v.  ) <br> ) <br> 1100 Architect, P.C. and David Piscuskas,  ) <br>     Defendants.  ) | Civil Action No. 1:21-CV-10527 |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR EMERGENCY MOTION TO STAY ARBITRATION AND COMPEL MEDIATION PRIOR TO THIS LITIGATION

Plaintiffs John G. Berylson and Amy Smith Berylson ("Plaintiffs") hereby submit this Memorandum of Law in Support of their Emergency Motion to Stay Arbitration and Compel Mediation Prior to this Litigation ("Motion to Stay") because the defendants, 1100 Architect, P.C. ("1100") and its principal, David Piscuskas ("Mr. Piscuskas") (collectively, "Defendants"), seek to apply an inapplicable and narrow expedited fee arbitration provision of an architectural services agreement between the parties to the instant dispute. For the reasons set forth below, Plaintiffs request that the expedited fee arbitration which Defendants have demanded and initiated be stayed indefinitely pending mediation and, if necessary, this litigation, pursuant to the broad mediation and litigation provisions of the parties' agreement. Plaintiffs request that their Motion be heard on an emergency basis because the American Arbitration Association ("AAA") has commenced the expedited fee arbitration on March 11, 2021 at the behest of the Defendants, over Plaintiffs' objections, required Plaintiffs' counsel on three-day's notice to participate in scheduling the first administrative call on an expedited basis by March 22, 2021, and the AAA has arbitrator selection administration now set to commence by telephone

1

conference at 2 p.m. on April 2, 2021. Standard motion practice will not permit a hearing and decision on this Motion to Stay before the arbitration administration of arbitrator selection process begins on April 2, 2021, which would be prejudicial to the Plaintiffs' contractual and legal rights.

## BACKGROUND

This Motion to Stay concerns a dispute between the parties regarding the proper dispute resolution mechanisms to be applied to this case. Defendants contracted to provide design, architectural, and project management services for the design, renovation, and construction of structures located on Plaintiffs' property (the "Project") at 38 and 44 Highgate, Wellesley, MA (the "Town"). The Parties entered a Standard Form of Agreement Between Owner and Architect AIA Document B101™ − 2007, as modified by the parties (the "Agreement") on July 6, 2016. A true and accurate copy of the Agreement is attached hereto as **Exhibit A**. Compl. ¶ 22. Under the Agreement, 1100 was to serve as the architect of record for the Project, and provide certain Instruments of Service (drawings, architectural plans, and specifications for the Project) to Plaintiffs, obtain and maintain all necessary permits and approvals from the Town, and facilitate and oversee the construction of the Project. Compl. ¶ 11. Mr. Piscuskas served as the "Project Executive" for the Project. Compl. ¶ 13; Affidavit of Plaintiff, Amy Smith Berylson ("A. Berylson Aff."), ¶ 8.

A myriad of issues caused by Defendants have plagued the Project from the beginning and caused significant delays in the Project timeline.[1] The term of the Agreement was 39 months, unless 1100 was responsible for any delay to the Project. Ex. A, Agreement § 4.3.3;

---

[1] An account of these delays is included in the Complaint (¶¶ 35-100, and in Plaintiffs' Memorandum of Law in Support of Their Ex Parte Application for Temporary Restraining Order and Preliminary Injunction ("Motion for TRO/PI").

Compl. ¶ 33. If the Defendants' services were not complete on the Project after the 39-month

term and no delay was caused by Defendants, then Defendants could request written

authorization for hourly-rate compensation for continued work as Additional Services. Compl. ¶

33. However, Defendants were required to provide notice and also obtain prior written

authorization from Plaintiffs to be able to charge for *any* Additional Services; any Additional

Services provided without notice and written authorization constitutes a waiver of Defendants'

right to claim additional payment for those services. Ex. A, Agreement § 4.1. Compl. ¶ 194.

Defendants committed numerous breaches of the Agreement between July 6, 2016 and

the present, including by failing to perform their obligations competently and timely,

recommending an unqualified general contractor who set the Project back, and failing to manage

Project costs. Compl. ¶¶ 35-172; A. Berylson Aff. ¶¶ 176-77, 194, 209.  At the time the

Agreement was executed, Defendants, who are experienced professionals in this area, estimated

the cost of the Project to be between $10,575,000 and $12,740,000 (the "Cost of Work"). Compl.

¶ 22; A. Berylson Aff. ¶ 17. Plaintiffs have since come to learn that the Cost of Work was

grossly inaccurate, despite Defendants' representations to the contrary. Once work had

commenced, Defendants informed Plaintiffs in the spring of 2018 that the Cost of Work had

risen to $16,100,000, then to $19,000,000 in December 2019, until finally the Cost of Work

reached $28,000,000 in April 2020. Compl. ¶¶ 124, 144, 223; A. Berylson Aff. ¶¶ 198, 200, 203.

This is a more than a 133% increase from the Cost of Work that Plaintiffs relied upon in entering

the Agreement. Compl. ¶ 233; A. Berylson Aff. ¶ 211. Defendants' compensation for Basic

Services under the Agreement is 18.5% of the Cost of Work, so as the cost sharply increased, so

did 1100's fee. Compl. ¶ 201; A. Berylson Aff. ¶ 189. The Plaintiffs paid every single invoice

1100 submitted based on its percentage-rate fee totaling approximately $3.5 million in fees and $500,000 in expenses. Compl. ¶ 218; A. Berylson Aff. ¶ 206.

The delays caused by Defendants' actions left the Project incomplete 39 months after the Agreement was executed. Compl. ¶¶ 57-59; A. Berylson Aff. ¶ 179. As such, the Agreement and provision of Basic Services should have been extended for Defendants to complete the scope of work required of them. Defendants proceeded to perform work as Basic Services as required, until they stopped submitting monthly invoices to Plaintiffs as required under the Agreement in March 2020. Compl. ¶ 196; A. Berylson Aff. ¶ 184. In September 2020, after not submitting an invoice for five months in violation of the monthly billing requirements of the Agreement, Defendants presented Plaintiffs with an invoice for over $700,000, claiming that they had been performing and billing hourly for Additional Services since November 2019. Compl. ¶ 197; A. Berylson Aff. ¶ 185. Defendants never provided notice or obtained prior written authorization from Plaintiffs, and they were not notified of the purported change to hourly-rate charges until the next invoice was presented in September 2020, which purported to charge the Plaintiffs for hour-rate services dating back to November, 2019. Compl. ¶¶ 197-98, 234; A. Berylson Aff. ¶ 186.

Section 9.1 of the Agreement allows 1100 to terminate the Agreement if Plaintiffs fail to make *undisputed* payments to 1100 after a notice period. Defendants purported to suspend and then terminate the Agreement under Section 9.1 when Plaintiffs refused to pay for the improper and unauthorized Additional Services reflected in the hourly-rate invoices, notwithstanding that these were not compensable services under the Agreement (no notice or authorization), the invoice charges were disputed by Plaintiffs (not "undisputed" as required by Section 9.1), and that Defendants failed to present proper notice or any authorized invoice for payment in the

months before purportedly terminating the Agreement. Compl. ¶¶ 194-95, 198, 244; A. Berylson Aff. ¶¶ 182-83.

On February 17, 2021, 1100 filed a Demand for Arbitration (the "Arbitration Demand") with the American Arbitration Association (the "AAA"), demanding expedited arbitration of its claim for one million three hundred thousand dollars ($1,300,000) for its hourly services. A true and accurate copy of the Arbitration Demand is attached hereto as **Exhibit B**. Compl. ¶ 251, Exhibit P. For the reasons set forth below, the arbitration provisions upon which Defendants rely in making this demand, are inapplicable to the instant dispute. Plaintiffs' counsel has disputed AAA's substantive jurisdiction over this dispute and asserted the inapplicability of expedited fee arbitration, but the AAA has stubbornly proceeded to administer the fee arbitration on an expedited basis. See the Counsel Arbitration Communications in chronological order, true and accurate copies of which are attached hereto as **Exhibit C**. Compl. ¶ 256, Exhibit R. The AAA docketed and commenced the expedited fee arbitration on March 11, 2021, at the behest of the Defendants, over Plaintiffs' objections. A true and accurate copy of the AAA ruling on commencement is attached as **Exhibit D**. Compl. ¶ 257, Exhibit S. On March 19, 2021, Plaintiffs received confirmation from the AAA that Defendants have paid the AAA Proceed Fee, and that the AAA is proceeding with arbitrator selection administration on an expedited basis. By March 22, 2021, counsel had to provide the AAA with availability on dates listed over the next two weeks for the initial Administrative call on only three calendar days' notice (including a weekend). A true and accurate copy of the AAA scheduling demand on administrative commencement is attached as **Exhibit E**. On March 23, 2021, the AAA confirmed that administration for arbitrator selection will commence on a call scheduled for April 2, 2021 at 2 p.m. A true and accurate copy of the AAA call scheduling notice for the arbitrator selection

109089\000005\3674932.v1

administration is attached as **Exhibit F.** Plaintiffs now seek this Court's emergency intervention and order of an indefinite stay of the fee arbitration pending a determination regarding the substantive arbitrability of this matter, and then compel the parties through the required mediation as a contractual condition precedent to binding dispute resolution through litigation in this court as the agreed-upon and proper resolution procedures for this dispute in the Agreement. Compl. ¶ 266.

## ARGUMENT

### A.  This Court Should Determine Whether the Parties Agreed to Arbitrate This Dispute.

Under the Federal Arbitration Act ("FAA"), this Court has the authority to decide whether there is an arbitration agreement between the parties which governs the instant dispute. Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 638 F.3d 367, 375 (1st Cir. 2011); see also Massachusetts Highway Dep't v. Perini Corp., 444 Mass. 366, 374 (2005)) [2]. At issue here is a question of "substantive arbitrability," or in other words, whether the parties agreed to submit the particular subject matter of the dispute to arbitration; this is a determination left to the Court, not an arbitrator. Sheriff of Suffolk Cty. v. AFSCME Council 93, 75 Mass. App. Ct. 340 at 341 (citing Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002)).[3] Arbitration is a matter contract, and a party cannot be required to arbitrate any dispute without agreeing to do so. Grand Wireless, Inc. v. Verizon Wireless, Inc., 748 F.3d 1, 7 (1st Cir. 2014) ("court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute.*") (emphasis in original) (quoting Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 297 (2010)); see also Massachusetts Highway Dep't, 444 Mass. at 374.

---

[2] Section 2(b) of the Massachusetts Arbitration Act for Commercial Disputes, G.L. c. 251 § 2, also provides that the court may stay arbitration upon a finding that the dispute at issue is not governed by a valid arbitration agreement.
[3] The AAA has erroneously suggested that its arbitrator can rule on arbitration jurisdiction as one pretense for proceeding with the arbitration demand over Plaintiffs' objections. See, **Exhibit D**. Compl. ¶ 257, Exhibit S.

As a result, whether an agreement provides for arbitration of a particular dispute is a matter of contract interpretation for the Courts. Id.

Where an arbitration provision is "broad in its reach, there is a rebuttable presumption that a contract dispute is covered by the provision." Pazol v. Tough Mudder Inc., 93 Mass. App. Ct. 1109 (2018); First Sealord Sur., Inc. v. TLT Const. Corp., 765 F. Supp. 2d 66, 72 (D. Mass. 2010). However, "where the arbitration clause is not broad, courts must be sure that the parties contracted to arbitrate the issue at hand." Loc. Union No. 1710, Int'l Ass'n of Fire Fighters, AFL-CIO v. City of Chicopee, 430 Mass. 417, 422 (1999) (abrogated on other grounds by Massachusetts Highway Dep't, 444 Mass. 366). While there is a general favorability towards arbitration, that principle does not apply to the narrow and limited fee arbitration provisions of this Agreement. Id. (discussing AT&T Techs., Inc. v. Communications Workers, 475 U.S. 643 (1986), United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593 (1960) and others). "The purpose of the FAA is to make arbitration agreements as enforceable as other contracts, but not more so." Paul Revere Variable Annuity Ins. Co. v. Kirschhofer, 226 F.3d 15, 25 (1st Cir. 2000) (internal quotation omitted). Arbitration agreements are entitled to deference, but not at the expense of a party's contractual rights. Interpretation of the Agreement as a whole leads to the inescapable conclusion that the parties did not contract to arbitrate the particular issues at hand here. It is not for an arbitrator to decide issues of substantive arbitrability. Arbitration is created by contract, and a party cannot be forced to arbitrate a dispute when it did not agree to do so. Paul Revere Variable Annuity Ins. Co., 226 F.3d at 25. This Court should stay the fee arbitration pending a determination of the arbitrability of the claims.

The Court should hear this Motion on an emergency basis before the April 2, 2021 administrative call to begin arbitrator selection takes place, in order to avoid needless time,

expense and prejudice to Plaintiffs. The AAA is moving quickly and expediting all events. Plaintiffs should not have to participate in arbitrator selection if the AAA lacks substantive arbitrability over the issues in this case. Once the arbitrator is appointed, further time and expense will be incurred. Moreover, the parties run the risk that the arbitrator could quickly substitute their judgment on the issue substantive arbitrability, and accept jurisdiction over the entire case, unless the Court rules first right now. Substantive arbitrability is the purview of this Court. Dialysis Access Ctr., LLC, 638 F.3d at 375. Plaintiffs may also suffer prejudice if they are forced to oppose the arbitration on jurisdictional grounds once an arbitrator has been appointed and once proceedings commence. It is the best interests of all parties, and in the interests of judicial economy, for the Court to determine substantive arbitrability on an emergency basis.

  B.  **The Arbitration Provisions of the Agreement Are Not Applicable to This Dispute.**

Defendants seek to force this dispute into expedited fee arbitration, thus denying Plaintiffs their contractual right to both mediation and litigation. While Plaintiffs do not deny that the Agreement provides for arbitration under certain narrow and limited circumstances, "the fact that the parties have agreed to arbitrate some disputes does not necessarily manifest an intent to arbitrate every dispute that might arise between the parties." United States ex rel. Hagerty v. Cyberonics, Inc., 146 F. Supp. 3d 337, 347 (D. Mass. 2015), *aff'd sub nom.* Hagerty ex rel. United States v. Cyberonics, Inc., 844 F.3d 26 (1st Cir. 2016) (quoting CardioNet, Inc. v. Cigna Health Corp., 751 F.3d 165, 172 (3d Cir.2014)). The unambiguous terms and clear intent of the Agreement evidence that nearly all disputes requiring binding dispute resolution, other than a narrow subset of fee disputes which is inapplicable here, are to be resolved first by mediation, and failing that, by litigation. The simplest, most-direct, ordinary, plain-meaning, logical and rational interpretation of the Agreement's dispute resolution provisions makes it clear that the

8

narrow fee arbitration provisions do not apply to Plaintiffs' claims, and should not yet apply to Defendant's fee claims. This is the proper interpretation that should control. See e.g. Grand Wireless, Inc., 748 F.3d 1, 7 (1st Cir. 2014) (ordinary principles of contract law apply to determination of whether agreement calls for arbitration of certain dispute).

       i.      The Arbitration Provisions are Narrow and Inapplicable

The Agreement clearly states that "[*a]ny* claim, dispute, or other matter in question arising under [the] Agreement shall be subject to mediation as a *"condition precedent"* to binding dispute resolution." Ex. A, Agreement § 8.2.1. The parties expressly agreed that "Litigation in a court of competent jurisdiction," and *not* arbitration was the chosen means of binding broad dispute resolution if mediation did not resolve the dispute.  Ex. A, Agreement § 8.2.4.  The two provisions cited by Defendants in an attempt to justify their actions do not apply to this dispute. Sections 7.2 and 8.1.4 are extremely limited and narrow in scope, and neither encompasses the circumstances of Plaintiffs' claims alleged here in this case. These provisions apply to payment disputes of *undisputed* bills during the course of performance, which can be resolved by expedited fee arbitration under AAA Construction Industry Arbitration Rules in order to avoid delay to the Project.

First, this narrow arbitration provision is not entitled to the deference applied to broad provisions. Grand Wireless, Inc., 748 F.3d at 8; Loc. Union No. 1710, Int'l Ass'n of Fire Fighters, AFL-CIO, 430 Mass. at 422 (an arbitration clause containing limiting language is not broad and therefore not entitled to deference as to scope). The breadth of the mediation provision, which explicitly states that it applies to "[a]ny claim, dispute, or other matter" under the Agreement, highlights the narrowness of the arbitration provision, which is limited to a very specific set of narrow circumstances (undisputed bill payment disputes during performance). Ex. A, Agreement

§§ 8.2 and 8.1.4. Sections 8.1.4 and 7.2 are not dispute resolution measures intended to encompass broad non-fee related disputes under the Agreement. An arbitration provision that calls for parties to arbitrate only certain performance issues under the agreement is generally narrow in scope. United States ex rel. Hagerty, 146 F. Supp. 3d at 347. The language of the Agreement makes the parties' intent clear. By its own terms, the fee arbitration provisions are meant to facilitate "a good faith effort to avoid the risk of delay to the Project".  Ex. A, Agreement § 8.1.4. The dispute that Defendants attempt to submit to expedited fee arbitration is neither advanced in good faith nor advanced to avoid any risk of delay. In fact, Defendants have suspended work and subsequently purported to terminate the Agreement. The intent of the provision is clear by its terms, and Defendants' asserted overly-broad application of the provision does not comport with that agreed-upon intent. The AAA does not have substantive arbitrability over the Plaintiffs' common law and statutory law claims under the fee arbitration provisions, which must be mediated and litigated first, in order to determine whether there is any factual and legal basis for Defendants' disputed fee claims, or if they are in fact a nullity.  The AAA also does not have substantive arbitrability over the Defendants' claims now that the Defendants have terminated the Agreement.  Plaintiffs should not be forced to arbitrate their claims, which they specifically did not agree to submit to arbitration.

     ii.    The AAA Fast Track Procedures Do Not Apply to This Dispute.

In addition to the limiting language of the Agreement itself, the parties' intent is made even clearer by the fact that the AAA's Fast Track arbitration procedures, the only mechanism for expedited arbitration proceedings by the AAA, and which arguably are applicable to disputes under Sections 8.1.4 and 7.2, only apply to disputes of less than $100,000. See AAA Construction Industry Arbitration Rules and Mediation Procedures § F-1. Here, Defendants seek

over $1.3 million in their Arbitration Demand.  The alleged magnitude of the Defendants' claim all by itself militates against expedited procedures, shortened time periods for discovery, use of fewer discovery tools, etc., which were intended to keep proceedings moving quickly and efficiently in proportion to smaller amounts in controversy. This dispute cannot reasonably be submitted to expedited arbitration procedures and minimalist discovery under the AAA's Fast Tract rules or under the express terms of the Agreement alike. The parties intended for expedited arbitration to resolve only relatively minor payment disputes in order to avoid delaying the Project. This is neither a minor payment dispute, nor is it the Defendants' goal to continue work and avoid delay to the Project. The Defendants gave notice of their intent to suspend work and then terminate the Agreement *at the same time* they filed their fee arbitration demand with the AAA.  The only logical, fair and reasonable reading of the Agreement as a whole requires that the broad and binding dispute resolution procedures (mediation, followed by litigation) set forth in Sections 8.2.1-8.2.4 apply, and as such, this is the interpretation that should control.

C. **Defendants' Prior Breaches of Agreement, Bad Faith, and Fraud, Supersede any Payment Dispute, and Arbitration Must be Stayed Pending Mediation and Litigation of Plaintiffs' Claims.**

Even if this dispute fell within the realm of substantive arbitrability, which it does not, the stay of arbitration should still be granted. Plaintiffs have rightfully brought claims for declaratory judgment, breaches of the Agreement, bad faith, fraud in the inducement, fraud in performance, and M.G.L. c. 93 claims in seven counts, all of which precede in time, and therefore should supersede, Defendants' subsequent potential claims for payment. Plaintiffs' claims are undeniably subject to the mediation and litigation dispute resolution procedures of the Agreement, not the narrow fee arbitration provisions. The resolution of Plaintiffs' claims will at a minimum substantially change, if not eliminate the scope of any later arbitration of

Defendants' alleged fee claims. If Plaintiffs are successful in their common law and statutory claims, then Defendants' claims for fee payment will be summarily resolved as well. However, if expedited fee arbitration is permitted to proceed, there is a substantial risk of inconsistent judgments, prejudice and harm to judicial economy.

i.   Defendants' Prior Breaches of the Agreement, Bad Faith and Fraud Would Moot
     Their Claims for Payment

Defendants have breached the Agreement in numerous ways, engaged in bad faith misconduct and have perpetrated fraud as described in the Complaint and in Plaintiffs' Memorandum of Law in Support of Their Ex Parte Application for Temporary Restraining Order and Preliminary Injunction. From the beginning of the relationship, Defendants caused significant delays on the Project, did not perform their supervisory and cost-estimating obligations competently, misled the Plaintiffs on initial estimates and the true Cost of Work for the Project on multiple occasions, and failed to be transparent and keep Plaintiffs informed of pertinent Project information. Each of these breaches or acts of misconduct predated the grounds for Defendants' claims in the Arbitration Demand. However, most relevant here is Defendants' total breach by failing to submit timely monthly invoices, and billing Plaintiffs for hourly-rate Additional Services without first providing notice or obtaining authorization as required by the Agreement. Compl. ¶¶ 198-99, 243-44.

The Agreement provides that after the initial 39-month term of the Agreement has expired, 1100 may begin billing Plaintiffs at an hourly rate for Additional Services, only if 1100 is not responsible (bears no fault whatsoever) for any delay. Ex. A, Agreement § 4.3.3. The Agreement also plainly requires that Defendants must obtain written authorization from Plaintiffs prior to commencing any Additional Services. Ex. A, Agreement § 4.1. Further, 1100's failure to obtain prior written authorization "shall constitute an irrevocable and conclusive

waiver of any claim of [1100] for any additional compensation on account of such Additional Services." Id.

Defendants never provided notice or ever obtained prior written authorization to perform Basic Services as hourly-rate Additional Services, and in fact never even notified Plaintiffs that they began billing them for hourly-rate Additional Services for ten months. Compl. ¶ 229, 233-34. Defendants lack these required pre-requisites to make an hourly-rate claim for payment for Additional Services, and thus there is no viable claim to be made under the expedited fee arbitration provisions, even if those narrow provisions were applicable, which is not the case. Compl. ¶ 31.

Defendants have attempted to underhandedly trigger the expedited fee arbitration provisions and then sweep this entire dispute into expedited fee arbitration by failing to notify Plaintiffs that they were even being billed for hourly-rate Additional Services until the alleged amount in controversy exceeded 15% of 1100's total fee, a pre-requisite to invoking the expedited fee arbitration provisions. Compl. ¶¶ 236, 239.  Defendants sought to deny Plaintiffs the ability to challenge regular required monthly invoices for Additional Services, until they knew the amount in controversy enabled them to submit an Arbitration Demand. Compl. ¶ 236, 240. In doing do, Defendants breached their obligations to present Plaintiffs with monthly invoices and to obtain prior written authorization for Additional Services. Compl. ¶ 198, 230-231.

ii.    Judicial Economy and Risk of Inconsistent Judgments Require Stay of Arbitration

The Defendants prior breaches, bad faith misconduct and fraud invalidate the foundation of Defendants' fee arbitration claims, and present further justification why they cannot be submitted to expedited fee arbitration. Even if the Court concludes that Defendants' fee claims

13

are ultimately arbitrable under the Agreement, which Plaintiffs maintain they are not, the fee arbitration should still be stayed until Plaintiffs have been permitted to litigate all their prior common law and statutory claims in this Action.

The public policy which encourages courts to favor arbitration is based on the principle that arbitration is "an expeditious alternative to litigation". DiMercurio v. Sphere Drake Ins., PLC, 202 F.3d 71, 80 (1st Cir. 2000) (quoting Home Gas Corp. of Massachusetts v. Walter's of Hadley, Inc., 403 Mass. 772, 774 (1989)). While arbitration may generally be a more efficient manner of dispute resolution, this logic is wholly inapplicable in this case where the arbitration provision is limited and narrow, and the parties' express choice of broad mediation and broad litigation dispute resolution mechanisms are the designated means for broad binding dispute resolution.  General public policy pronouncements must give way to the express terms of the parties' Agreement. Otherwise the narrow and limited expedited fee arbitration provisions would swallow whole the much broader scope of potential claims (i.e. any potential claim not consisting of non-payment, like the Plaintiffs' claims) that the parties agreed at the outset should be mediated as a condition precedent to binding dispute resolution by litigation. Plaintiffs' common law and statutory claims should only be subject to resolution through mediation, and then litigation. The outcome of those proceedings have a strong likelihood of reducing if not eliminating Defendants' claims for payment asserted in the Demand for Arbitration.

To allow the expedited fee arbitration to go forward and force Plaintiffs to try to arbitrate their broad common law and statutory claims in defense of Defendants' fee claims would be severely prejudicial. Plaintiffs cannot legitimately oppose the fee claims without presenting their entire case spanning five years of events and alleged misconduct in an expedited arbitration proceeding only intended to deal with smaller fee disputes in a minimalist proceeding to be

completed in a short time. Plaintiffs are essentially the customer/client, and the architect is the party responsible for all design, supervision and construction administration on the Project. The Defendants have most of the information and records for the Project from all the participants. The balance of the records lie mostly with third-party contractors, sub-contractors, consultants and engineers. The Plaintiffs require extensive discovery and sufficient time to adequately prepare to prosecute their claims and defend the Defendants' claims. Requiring them to try their case twice, once in arbitration and then in litigation, makes no sense and flies in the face of the judicial economy justification that ordinarily makes arbitration favorable. A stay is appropriate when it will avoid the risk of inconsistent rulings and conserves judicial resources. Plaintiffs' claims cannot justly be resolved through expedited arbitration with reduced discovery and shorter time periods. Further, it is conceivable that two parallel dispute resolution proceedings could produce inconsistent results, not merely based on differing scopes of discovery and stream-lined procedures, but because two ultimate fact-finders would be confronted with similar (thought doubtfully the same) evidence on the same issues and could rule differently. This is not what was intended by the division of narrow and expedited fee disputes and broad mediation procedures, and possibly subsequent litigation procedures in the parties' Agreement, which were intended to be mutually exclusive. It is contrary to the parties' intent and good reason to allow multiple forums to resolve unnecessarily overlapping disputes. Arbitration at the appropriate time will either be much narrower in scope, or potentially unlikely after the resolution of Plaintiffs' prior-in-time broad claims and Defendants' defenses to those claims through mediation, and then litigation. Mediation and litigation of this matter will at a minimum substantially narrow, if not completely moot, any arbitrable issues. Further, even if the Court determines that the Defendants' fee claims are arbitrable, the interests of justice and judicial

economy require that the expedited fee arbitration be stayed pending the resolution of Plaintiffs' prior, broad, superseding claims.

<u>**CONCLUSION**</u>

For all of the foregoing reasons, the dispute at issue here is not properly subject to arbitration at this time. The Plaintiff's Emergency Motion to Stay Arbitration and Compel Mediation Prior to this Litigation should be granted. This Motion should be heard and a ruling made on an emergency basis in order to obtain a decision prior to commencement of arbitrator selection administration by the AAA on April 2, 2021.  Plaintiffs request that the Court issue an immediate stay in order to avoid commencement of these arbitration procedures.

WHEREFORE, Plaintiffs hereby request that this Honorable Court ALLOW Plaintiffs' Emergency Motion and Stay Arbitration and Compel Mediation Prior to this Litigation forthwith in accord with the parties' Agreement.

Respectfully Submitted,

John G. Berylson and Amy Berylson,

By their Attorneys,

/s/ William S. Rogers, Jr.
William S. Rogers, Jr., BBO No.549487
wsrogers@princelobel.com
Christopher Miller, BBO No. 685219
cmiller@princelobel.com
Matthew Madden, BBO No. 685738
cmiller@princelobel.com
Prince Lobel Tye LLP
One International Place
Boston, MA  02110
617-456-8000

Dated: March 26, 2021

109089\000005\3674932.v1