**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

_____
)
JOHN G. BERYLSON and                                    )                    **NO. 21-CV-10527-RGS**
AMY SMITH BERYLSON,                                 )
)
            Plaintiffs,                                              )
)
v.                                                                       )
)
1100 ARCHITECT, P.C., and                             )
DAVID PISCUSKAS,                                        )
)
            Defendants.                                           )
_____ )

### STATUS MEMORANDUM OF THE DEFENDANTS, 1100 ARCHITECT, P.C. AND DAVID PISCUSKAS

The Defendants, 1100 Architect, P.C. and David Piscuskas, FAIA (collectively, the "Defendants" or "1100") submit this Status Memorandum to update the Court as to recent developments, and the Defendants' position on several issues.

### I.        Factual and Procedural Background

On April 2, 2021, the Court issued an Order granting the Plaintiffs' Emergency Motion to Stay Arbitration and Compel Mediation Prior to this Litigation ("Motion"). John G. Berylson and Amy Smith Berylson (collectively, the "Berylsons" or "Plaintiffs") filed their Motion on an emergency, ex parte basis, prior to the service of the Complaint or the appearance of counsel for the Defendants, and with no notice to the Defendants despite being in contact with counsel for the Defendants in the related fee dispute. The Berylsons then leveraged this unilateral, ex parte filing to spin a narrative about the agreement and the dispute which is unsupported by, and contrary to, the facts. This Memorandum seeks, in part, to respond to some of this unchallenged narrative, and to update the Court on current developments.

Plaintiffs have not been forthright with the Court. At its heart, this is a fee dispute. The Defendants went unpaid for undisputed services rendered for over a year before they finally exercised their contractual right to stop working. 1100 last received a payment in February 2020. At that time, 1100 began to invoice on an hourly basis per Section 4.3.3 of the Agreement, which provides that 1100's "services beyond [November 16, 2019] shall be compensated as Additional Services." The Berylsons saw these invoices based on hourly services and balked at these charges, initially blaming the COVID-19 pandemic, among other things. The Defendants were willing to work with the Berylsons, notwithstanding the fact that the delays were due to *the Berylsons' delays* in decision making and changing the plans. Still, the Defendants were initially willing to move out the trigger date for hourly billing from November 2019 to a 2020 date and continued to work during this time without being paid.

The parties were discussing a resolution in the early fall of 2020, when the Berylsons failed to pay or dispute invoices dated August 31, 2020 and September 30, 2020. On October 19, 2020, 1100 sent a Demand Letter giving the Berylsons notice that 1100's license for the Instruments of Service would be rescinded for noncompliance with the terms of the Agreement, unless the outstanding invoices were paid, or that any dispute over the invoices was to be articulated and the funds for the disputed fees placed into their lawyers' trust account. The Berylsons never complied or articulated a basis to dispute the invoices. Therefore, Plaintiffs' contention that "all of [Plaintiff's claims] precede in time, and therefore should supersede, Defendants' subsequent potential claims for payment" is simply not accurate. See, Plaintiff's Brief in Support of their Emergency Motion to Stay Arbitration and Compel Mediation ("Pls.' Brief") at 11. The Defendants made their first Demand for their unpaid fees on October 19, 2020. The Defendants also made a Demand for Arbitration regarding the fee dispute on February 17,

2021. dkt. no. 3-2. _Both_ fee-related demands precede Plaintiffs' Complaint, filed March 26, 2021. In short, the Plaintiffs' affirmative claims before this Court never were raised previously as a defense to 1100's unpaid fee claim.

## II.     The Parties Are Complying with the Court's Order to Mediate.

The Defendants have agreed to submit this matter to mediation using a mediator proposed by the Plaintiffs in accordance with the Court's Order and Section 8.2 of the July 6, 2016 Standard Form of Agreement Between the Owner and Architect ("Agreement") (attached for the Court's convenience as Exhibit A). That mediator is Dean Timothy Fisher, Professor and Dean Emeritus of UConn School of Law. The Parties are working to schedule a mediation as expeditiously as possible, but may need to seek a modest extension of the Court's stay to accommodate Dean Fisher's availability.

## III.    The Berylsons Continue to Renovate the Property using the Defendants' Proprietary Instruments of Service, Despite the Berylsons' Continued Non-Payment in Violation of the Agreement.

Per the parties' Agreement, the Defendants have proprietary and contractual rights to the Instruments of Service currently being used by the Berylsons, in breach of that Agreement, to continue the renovations to their Wellesley home. Per Section 7.2 of the Agreement:

> Plans, drawings, specifications, reports, documents and related materials prepared by the Architect and any other products of the Architect's work (collectively, "Instruments of Service") are Instruments of Service for use solely with respect to the Project. Upon execution of this Agreement, the Architect grants to the Owner a nonexclusive, perpetual and irrevocable license to use the Architect's Instruments of Service solely and exclusively for purposes of constructing, using, maintaining, altering and adding to the Project, _provided that the Owner substantially performs its obligations_, . . . The license afforded by this Section 7.2 shall continue and remain in full force and effect pending all hearings and decisions in connection with such expedited arbitration, _provided the Owner continues to make timely payments of fees and reimbursements in accordance with this Agreement_ . . . _If the Architect rightfully terminates this Agreement for cause as provided in Sections 9.1 and 9.5, the license granted in this Section 7.2 shall terminate_.

Section 9.1 provides that non-payment of undisputed invoices may be "considered substantial nonperformance and cause for termination or…suspension of performance of services under this Agreement." Section 9.5 provides that "Either party may terminate this Agreement upon not less than seven (7) days' written notice should the other party fail substantially to perform in accordance with the terms of this Agreement through no fault of the party initiating the termination." Here, the Defendants have not been paid for their services under the contract since February 2020. They are owed more than $1.3 million dollars in outstanding invoices under the explicit terms of the Contract. The Berylsons did not dispute these invoices until the instant matter, and moreover, the Agreement has a provision governing payment of *both* disputed and undisputed fees.

> The Architect shall continue to perform its services hereunder during any claim, dispute or proceeding between the parties hereto as if such a claim, dispute or preceding had not been instituted; *provided that Owner continues to make payments to Architect for those items not in dispute. Any amounts in dispute shall be held by the Owner's counsel in a non-interest bearing commercial bank account and shall be deposited upon the written notice of dispute by Owner*. Notwithstanding the foregoing, in the event such claim, dispute, or preceding arises during the course of the Architect's performance hereunder and cumulatively totals fifteen percent (15) or more of the Architects fee ("Withheld Amount"), *the parties agree that*, in a good faith effort to avoid the risk of delay to the Project, *such dispute shall be subject to expedited arbitration in accordance with the Construction industry Arbitration Rules of the American Arbitration Association currently in effect and the Owner shall continue to make payment of any disputed amounts in excess of the Withheld Amount under a reservation of rights and without prejudice to Owner rights and defenses hereunder or at law*. The Architect shall continue to fully perform under this Agreement pending all hearing and decisions in connection with such expedited arbitration, provided the Owner makes timely payment of fees and reimbursements in accordance with this Agreement.

Agreement, § 8.1.4 (emphasis added).

Not only have the Berylsons not paid any undisputed fees, they have not placed payment for the disputed fees into escrow. Therefore, Plaintiffs have breached the payment requirements of the Claims and Disputes provisions of the Agreement. Had the Berylsons paid any disputed

payments into their own attorneys' trust account, the Defendants would have continued to provide their services under the Agreement, as they indicated in writing to the Plaintiffs, in October 2020.

    **IV.**    **The Expedited Arbitration Provision Is Applicable and Not Moot.**

While the purposes of Section 8.1.4 include keeping the Project moving forward in the event of a fee dispute, advancing the Project is not the _sole_ reason for the provision, or even the main reason for it. Section 8.1.4 principally ensures that 1100 is _paid_ in a timely manner for services rendered, or at least protected by escrowed sums in the face of a dispute. This is why the provision explicitly conditions 1100's continued performance during a dispute on continued payment, both of undisputed fees to the Defendants and even of disputed fees into escrow. If the Plaintiffs' interpretation of this clause was correct, the Defendants, unpaid for over a year, could be forced to quit by the Berylsons' nonperformance and nonpayment.  Though well justified and precipated by the plaintiffs' material breaches, these actions would rob the Defendants of the benefits of an expedited proceeding clearly bargained for, and specifically anticipated by, the Agreement.

Unfortunately, that is how this dispute has unfolded. Meanwhile, the Project continues, the Defendants have not been paid for services rendered, nor have the funds for late disputed fees been placed into escrow per the Agreement. Moreover, continued work has been facilitated by the violation of 1100's rights regarding the Instruments of Service. This situation is exactly the type Section 8.1.4 seeks to remedy by providing for expedited arbitration of outstanding fee disputes, and this provision should be applied by the Court if mediation cannot resolve the dispute.

**V.**     **Should Mediation Fail, the Defendants Reserve all of their Rights pursuant to the Agreement, including the Right to an Expedited Arbitration Hearing on the Fee Dispute.**

The Court's April 2, 2021 Order appears to have had the unfortunate effect of encouraging the Berylsons' bad-faith use of the Instruments of Service. With the stay of arbitration, the Berylsons have less incentive to approach the Mediation with genuine good faith to attempt to resolve the parties' disputes. Therefore, if Mediation fails, the Defendants intend to move immediately for relief from the ex parte Temporary Restraining Order, and for the Court to:

1) Dissolve the Temporary Restraining Order;

2) Expedite a hearing on the fee dispute to proceed before the American Arbitration Association[1];

3) Direct the Berylsons to cease and desist from violating the proprietary rights of 1100 and 1100's rights under the terms of the Agreement.

The Defendants note that the Berylsons could still proceed with their claims in this case or possibly assert those claims in an expanded Arbitration, with the Defendants' consent.

---

[1] The Arbitration has been commenced but interrupted by the ex parte Order.

Respectfully Submitted,

The Defendants,
1100 ARCHITECT, P.C., and
DAVID PISCUSKAS,


 */s/ Paul T. Muniz*
Paul T. Muniz
pmuniz@donovanhatem.com
Thomas D. Duquette, Jr.
tduquette@donovanhatem.com
DONOVAN HATEM, LLP
53 State Street, 8th Floor
Boston, MA  02109
Tel: 617-406-4500
Fax: 617-406-4501




<u>**CERTIFICATE OF SERVICE**</u>

I, Paul T. Muniz, hereby certify that, on this 19th day of May, 2021, I caused a true and correct copy of the foregoing document to be served upon counsel of record herein via the Court's electronic filing system in accordance with the applicable rules of the Court.

 */s/ Paul T. Muniz*
Paul T. Muniz