# Exhibit 1

## Barry Rothschild

| | |
|---|---|
| **From:** | Paul Muniz |
| **Sent:** | Friday, March 4, 2022 3:23 PM |
| **To:** | Rogers, William S., Jr. |
| **Cc:** | Thomas D. Duquette; Barry Rothschild; Christopher Redd; Miller, Christopher C.; Madden, Matthew; Koslowsky, Lauren; jgrippo@goodwinlaw.com; Gayle-Luz, Keisha |
| **Subject:** | RE: Berylson/1100 Meet and Confer under ESI Protocol; Questions for 1100 IT Dept.; Search Term issues with 1100's Search Terms |

Bill,

The following constitutes 1100's responses to the addition questions posed below. In responding, 1100 notes the following objections and reserves the right to supplement these responses with any new or additional information revealed in the course of discovery. 1100 objects to these "Question for 1100's IT Department" to the extent they amount to discovery inquiries over and above seeking cooperation under the ESI Protocol on the grounds that they are vague, ambiguous, overly broad, unduly burdensome, unreasonably require 1100 to speculate as to the nature and scope of the information sought and constitute a thinly veiled attempt to impose an obligation on 1100 to respond to interrogatories without complying with the applicable rules of Civil Procedure, including Rule 33, the applicable Local Rules, and the September 30, 2021 Scheduling Order issued by the Court, including: 1) seeking to interpose more interrogatories than allowed under Rule 33(a)(1) and the 75+ interrogatories (including subpart) to which the defendants have responded, propounding interrogatories more than three months beyond the November 29, 2021 deadline imposed by the Court in its Scheduling Order for service of Requests and/or Interrogatories, and without seeking leave of the Court. Any responses shall in no way constitute an admission or acknowledgment of your characterization of statements made and actions taken or not taken by 1100. In addition, nothing in these responses or objections should be construed as waiving rights or objections that might otherwise be available to 1100, nor should responding to any of these questions be deemed an admission of relevancy, materiality or admissibility in evidence of the discovery requests or the responses thereto.

Notwithstanding the General Objection above, and without waiving any other general or specific objections which may be available or arise in the future, and in an effort to advance electronic discovery which is both in its infancy and substantial, 1100 and I have made our best efforts to inquire about and answer your questions as follows, in the interest of resolving the current dispute.

1. **How do you currently monitor employee devices that are firm owned?**

*On information and belief, 1100's IT Department uses Avast Business Anti-Virus, Splunk, and Windows Event Viewer software to monitor event logs and report certain event on firm owned devices, but does not directly continually monitor employee use of firm owned devices unless and until a problem is suspected or reported. In the event an employee was discovered to be using a device inappropriately, the IT department would take steps to instruct said employee about appropriate action and/or notify management of the matter. The IT Department may also suspend any employee's use of company devices immediately if necessary, until satisfactory remedial measures have been taken. Additionally, if the inappropriate use was suspected or believed to be criminal in nature, the IT Department and/or management would notify the appropriate authorities. However, 1100 has never had reason to take steps beyond minimal additional training with an employee and has no record of any employee data breaches or criminal use of a company device.*

2. **How do you currently monitor employee devices that are personally owned?**

1

*On information and belief, 1100's IT Department does not currently, and has not in the past, monitored the personal devices of 1100's employees.*

3. Do you utilize any Mobile Device Management (MDM) software?

*Neither 1100's IT Department nor I understand what you are asking in that term, "Mobile Device Management (MDM) software." That description is vague and ambiguous. On information and belief, 1100's IT Department does not use any MDM software or other software that would allow it to access data on a mobile device.*

   i. When was it purchased and when was it implemented?
      *Not applicable.*
      1. Have you used any others in the past?
         *No.*
      2. If so, please provide the dates the MDM software was utilized.
         *Not applicable.*
   ii. Are there different profiles for employee owned Vs Company owned devices?
       *Not applicable.*
       1. Can you provide the profile configurations for review?
          *Not applicable.*

   *Further responding, on information and belief, the laptops 1100 currently uses to remotely access classified projects utilizes a software program called PREY, which allows 1100's IT Department to remotely sound an alarm, track location, lock devices, retrieve files from devices, encrypt hard drives in real time remotely, factory reset, remotely wipe all information, or remotely wipe only selected information on those devices only.*

4. Has there ever been a breach of the User Policy?

   *On information and belief, 1100's IT Department has reviewed the company's records and contacted previous IT managers and consultants and is not aware of any breach of the User Policy.*

   a. Is this documented anywhere with dates and times, as well as the resolution?

   *Not applicable.*

5. The policy states that personal devices must be allowed to be tracked, with the ability to be wiped if lost.

   *No question to answer. The User Policy speaks for itself.*

   a. Depending on whether 1100 utilizes profiles for personnel and/or for personal devices, we'd need to see and review the configuration to see how it's set up by 1100.

   *Neither 1100's IT Department nor I understand what you are asking/suggesting here. Regardless, 1100's IT security methods are proprietary and unless and until you can provide a demonstrable need for this information, we will not allow you to review the configuration.*

6. Are any of these personal devices used to directly or indirectly support the business of 1100 Architect;

   *Neither 1100's IT Department nor I understand the scope of this question. If you are asking if 1100 employees use their personal devices to save and store work product, the answer is that 1100's IT Department does not know because (1) it is not aware of any particular incidents of this and (2) does not monitor the*

*personal devices of employees. If and when 1100 employees work remotely, they may use a personal device to connect to their work computer, which they must do through a virtual private network (VPN) whereby any work performed is not on the personal device but on the company device. In other words, a personal device used for remote work does not store any work product on the device itself.*

*If you are asking if 1100's employees use their personal devices to communicate with others on work related matters, the answer is that it is each employee's option to use or not use their personal devices for emailing, calling, and text messaging. For employees who choose to access their company email from their personal devices, they must use an Internet Message Access Protocol (IMAP) whereby the device accesses the email through the company controlled server and the message, sent or received, is not downloaded or stored on the device. For employees who choose to call or text message about work matters utilizing their own devices, 1100's IT Department does not know about such use because 1100's IT Department does not monitor the personal devices of employees. Furthermore, the User Policy does not prohibit employees from using personal devices to call or text message other people.*

7. **Have you ever used a non-corporate email system, instant messaging system, team messaging system or other non-corporate system to communicate with individuals related to 1100?**

    *On information and belief, 1100 employees are currently able to use Microsoft Teams. Also, on information and belief, 1100 used Skype for Business until 6/6/2019.*

8. **Were any of the communications systems identified in response to No. 7, used to directly or indirectly support the business of 1100?**

    *On information and belief, 1100 employees have used Microsoft Teams for work related matters. Because these accounts are company owned/licensed, 1100 is currently looking into the process for reviewing messages sent and received by the 13 identified custodians and, if not unduly burdensome, will apply your search terms to those messages and produce responsive threads in accordance with the ESI Protocol.*

9. **Regarding Text/Chat Communications:**

    i. **Does 1100, including current or former employees, utilize text, SMS/MMS messaging, to communicate re: any work-related matters?**

        *On information and belief, only two company owned devices use text messaging. Those devices store text messages locally and on the iCloud database and will be imaged and your search terms will be applied to those text messages for production in accordance with the ESI Protocol. For any other devices, please see my responses to question 6 above.*

    ii. **If you answer 9i in the affirmative, are the devices used for text, SMS/MMS messaging, company-owned or personally-owned devices? How are text messages stored and preserved as between company-owned devices and personally-owned devices?**

        *Please see my responses to questions 6 and 9(i) above.*

    iii. **Does 1100, including its current or former employees, utilize any "chat" platform outside of email to communicate re any work-related matters? Examples of "chat" platforms include, but are not limited to, Slack, Microsoft Teams, Google Chat, Google Hangouts, Twilio, etc.**

        *I am not sure I understand the difference between this question and question 7 above other than this appears to be more specific than question 7. Therefore, please refer to my answer above.*

3

iv. **If the answer to question 9iii. is yes, please answer the following questions:**
   - **Does 1100 maintain a firm account?**

   *On information and belief, 1100 does not have a firm account, but uses a shared domain under Office365.*

   - **Do employees utilize 1100 credentials to log into the platform? i.e. do employees use their firm-issued email address?**

   *Yes. These are all tied together under Office365.*

   - **With regards to each such platform for which you answered yes, is the data associated with the platform monitored, stored, collected or preserved by the firm in any way?**

   *On information and belief, 1100's IT Department is currently in the process of reviewing and searching Microsoft Teams accounts of 13 custodians. 1100's license for Skype for Business ceased in 2019 and no archives have been found.*

   - **Has this data been reviewed or searched for information relating to Berylson Project as the subject of this litigation?**

   *On information and belief, 1100's IT Department is currently in the process of reviewing and searching Microsoft Teams accounts of 13 custodians. 1100's license for Skype for Business ceased in 2019 and no archives have been found.*

v. **Does 1100, including its current and former employees, utilize any project management software with or without integrated email management and/or other forms of communications or "chat" capabilities? Examples include, but are not limited to, Tonic DM, Fieldlens, Newforma, etc.**

   *On information and belief, 1100 uses various software programs associated with its business, however, none have integrated communications or "chat" capabilities.*

vi. **If the answer to question 9v. is yes, please answer the following questions:**

   *I understand a yes answer to mean that the software programs 1100 uses would have integrated communication or "chat" capabilities and because they do not, I do not believe answers to the questions below are applicable.*

   - **Does 1100 maintain a firm account?**
   - **Do employees utilize 1100 credentials to log into the platform? i.e. do employees use their firm-issued email address?**
   - **With regards to each such platform for which you answered yes, is the data associated with the platform monitored, stored, collected or preserved by the firm in any way?**
   - **Has this data been reviewed or searched for information relating to the project at the subject of this litigation?**

vii. **Please identify all the data sources from which 1100 collected and searched for information relating to the Project as the subject of this litigation.**

   On information and belief, 1100 gathered data from the following sources:

4

- The company held files and email accounts of the 13 custodians previously identified;
- The company's Project Files and Folders for the Berylson Project; and
- A Structured Query Language (SQL) search of 1100's public (internal to the company) email folders for the following terms:

Search conditions

"Berylson" OR "Rich Roberts" OR "Bob Carlson" OR "Paul Reiss" OR "Jean Abouhamed" OR "John Kruse 38-44" OR "Highgate" OR "Wellesley" OR "Elizabeth Katz" OR "Rob Katz" OR "esbk" OR "Silman" OR "Robert Smith" OR "Dana Smith" OR "CB 33" OR "CB 35" OR "33 Carisbrooke" OR "35 Carisbrooke" OR "SeaDar" OR "Sea Dar" OR "Tru-Est" OR "BWP" OR "Eric Schaefer" OR "Jon Makir" OR "Ethan Platt" OR "Marc Newman" OR "Spencer Leaf" OR "Fani Christina" OR "Andrew Schalk" OR "D'Antonio" OR "Doyle" "James Meehan" OR "Sean O'Connor" OR "Certified Energy" OR "A.S. Elliot" OR "MetroWest Engineerin" "Sanborn Head" OR "Frener + Reifer" OR "Steven Winters" OR "Thorton Thomasetti" OR "Ben Houghto" Hilderbrand" OR "Robert Lipson" NOT "OBO" NOT "Paul McCartney" NOT "P&N" NOT "Maseru" NOT "I NOT .gov NOT "Tara Mulrooney" NOT "Lee Eastman" NOT "DCSA" (cic)(date=2015-01-01..2020-11-15)

Also,

1. 1100 is currently scheduling the imaging of the two company-owned iPhones used by David Piscuskas and Betty Gonzalez; and
2. 1100 is currently looking into the process for reviewing Microsoft Teams and Skype for Business messages sent and received by the 13 identified custodians.

Finally, I have asked and believe that the sources listed above represent all "reasonably-accessible locations likely to contain responsive Documents, including, at a minimum, all reasonably-accessible Documents (i) identified in, or (ii) in any location identified in, or (iii) in the custody of any agreed upon custodian" in 1100's possession, custody, or control as required under Section B(5)(a) of the ESI Protocol.

Bill, When will you provide us the "hit results" from the search terms we provided on January 11th? We would like an opportunity to amend and supplement those search terms based on the hit report. Your refusal to provide that information is unreasonably delaying the discovery process.

**Paul Muniz, Esq.**
*Partner*
Donovan Hatem LLP
53 State Street | 8th Floor | Boston, MA | 02109
Tel (617) 406-4610 / Mobile (978) 729-5052 / Fax (617) 406-4501
www.donovanhatem.com

DONOVAN HATEM LLP
counselors at law

Confidentiality Notice: This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail and delete this message.

**From:** Rogers, William S., Jr. <wsrogers@princelobel.com>
**Sent:** Thursday, February 17, 2022 7:31 PM
**To:** Paul Muniz <pmuniz@donovanhatem.com>

5

**Cc:** Thomas D. Duquette <tduquette@donovanhatem.com>; Barry Rothschild <brothschild@donovanhatem.com>; Christopher Redd <credd@donovanhatem.com>; Miller, Christopher C. <cmiller@princelobel.com>; Madden, Matthew <MMadden@princelobel.com>; Koslowsky, Lauren <lkoslowsky@princelobel.com>; jgrippo@goodwinlaw.com; Gayle-Luz, Keisha <kgayleluz@princelobel.com>
**Subject:** Berylson/1100 Meet and Confer under ESI Protocol; Questions for 1100 IT Dept.; Search Term issues with 1100's Search Terms

Paul: In follow-up to our email exchanges on January 31, February 1 and yesterday, here are the questions which you requested for the 1100 IT Dept. on January 31 during the last Meet and Confer call regarding the electronically stored information and company and/or employee data responsive to the Berylsons' discovery requests, which we maintain are searchable and discoverable under case discovery and under the ESI Protocol.

## Questions for 1100 IT Dept.:

1. How do you currently monitor employee devices that are firm owned?
2. How do you currently monitor employee devices that are personally owned?
3. Do you utilize any Mobile Device Management (MDM) software?
    i. When was it purchased and when was it implemented?
    ii. Have you used any others in the past?
       2. If so, please provide the dates the MDM software was utilized.
    iii. Are there different profiles for employee owned Vs Company owned devices?
       3. Can you provide the profile configurations for review?
4. Has there ever been a breach of the User Policy?
    a. Is this documented anywhere with dates and times, as well as the resolution?
5. The policy states that personal devices must be allowed to be tracked, with the ability to be wiped if lost.
    a. Depending on whether 1100 utilizes profiles for personnel and/or for personal devices, we'd need to see and review the configuration to see how it's set up by 1100.
6. Are any of these personal devices used to directly or indirectly support the business of 1100 Architect;
7. Have you ever used a non-corporate email system, instant messaging system, team messaging system or other non-corporate system to communicate with individuals related to 1100?
8. Were any of the communications systems identified in response to No. 7, used to directly or indirectly support the business of 1100?
9. Regarding Text/Chat Communications:
    i. Does 1100, including current or former employees, utilize text, SMS/MMS messaging, to communicate re: any work-related matters?

    ii. If you answer 9i in the affirmative, are the devices used for text, SMS/MMS messaging, company-owned or personally-owned devices? How are text messages stored and preserved as between company-owned devices and personally-owned devices?

    iii. Does 1100, including its current or former employees, utilize any "chat" platform outside of email to communicate re any work-related matters? Examples of "chat" platforms include, but are not limited to, Slack, Microsoft Teams, Google Chat, Google Hangouts, Twilio, etc.

    iv. If the answer to question 9iii. is yes, please answer the following questions:
       - Does 1100 maintain a firm account?
       - Do employees utilize 1100 credentials to log into the platform? i.e. do employees use their firm-issued email address?
       - With regards to each such platform for which you answered yes, is the data associated with the platform monitored, stored, collected or preserved by the firm in any way?
       - Has this data been reviewed or searched for information relating to Berylson Project as the subject of this litigation?

    v.    Does 1100, including its current and former employees, utilize any project management software with or without integrated email management and/or other forms of communications or "chat" capabilities? Examples include, but are not limited to, Tonic DM, Fieldlens, Newforma, etc.

    vi.    If the answer to question 9v. is yes, please answer the following questions:
- Does 1100 maintain a firm account?
- Do employees utilize 1100 credentials to log into the platform? i.e. do employees use their firm-issued email address?
- With regards to each such platform for which you answered yes, is the data associated with the platform monitored, stored, collected or preserved by the firm in any way?
- Has this data been reviewed or searched for information relating to the project at the subject of this litigation?

    vii.    Please identify all the data sources from which 1100 collected and searched for information relating to the Project as the subject of this litigation.

### Search Term Issues Identified in Defendants' Search Terms and an Objection:

Below is an itemization of issues identified with 1100's current search terms that need to be corrected.

1. Revisions to wildcards: HaystackID identified six terms (nos. 1.u., 1.v., 1.w., 1.x., 1.y., and 1.z.) that contain an exclamation point. Relativity does not recognize exclamation points as wildcards. The wildcard options Relativity supports are:
   a. * = Matches any number of characters
      i. For example, "appl*" matches apple, application, etc.
   b. ~ = Matches words containing grammatical variations of a root word
      i. For example, "apply~" matches apply, applied, applies, etc.
   c. ? = Matches any single character
      i. For example, "appl?" matches apply and apple, but not apples

   We assume you intended to use the asterisk, as the function of the exclamation point is similar in LexisNexis searching, however we need you to confirm the actual syntax in writing.

2. Search term number two contains an error. The term that we received is ["24 Highgate Nominee Trust" OR Highgate /5 trust OR trustee]. The term is missing the "w" in what we assume is supposed to be a "w/5" proximity search, so the corrected search term would read ["24 Highgate Nominee Trust" OR Highgate w/5 trust OR trustee]. We would like your written confirmation.

Finally, while not a correction, we object again in writing to search term number 19, which is [EM - TO is jberylson@gmail.com or asberylson@aol.com or jberylson@gccinv.com AND Domains (Email To) is NOT @1100architect.com]. As we have discussed, these are not search terms but custodian addresses. In plain language, the search is asking for the total number of emails sent to any of the Berylsons' three email accounts that was *not also sent* to @1100architect.com, which is overbroad, unduly burdensome, seeks information which is irrelevant to this action, is not reasonably calculated to lead to the discovery of admissible evidence, and is not a good faith search term for these reasons as required by the ESI Protocol.

I will respond to the balance of your emails from 2/10 and 2/16 (including overlap from your 2/1 email) as I indicated yesterday. Thanks, Bill.

William S. Rogers Jr.

 

**PRINCE LOBEL**

Prince Lobel Tye LLP
One International Place, Suite 3700
Boston, Massachusetts 02110

617 456 8112 Direct
wsrogers@princelobel.com

William S. Rogers, Jr.

Best Lawyers
BEST LAW FIRMS
US News 2022

Best Lawyers
Lawyer of the Year
2020

Product Liability Litigation - Defendants
Boston, Massachusetts

This email is intended for the confidential use of the addressees only. Because the information is subject to the attorney-client privilege and may be attorney work product, you should not file copies of this email with publicly accessible records. If you are not an addressee on this email or an addressee's authorized agent, you have received this email in error; please notify us immediately at 617 456 8000 and do not further review, disseminate or copy this email. Thank you.

IRS Circular 230 Disclosure: Any federal tax advice or information included in this message or any attachment is not intended to be, and may not be, used to avoid tax penalties or to promote, market, or recommend any transaction, matter, entity, or investment plan discussed herein. Prince Lobel Tye LLP does not otherwise by this disclaimer limit you from disclosing the tax structure of any transaction addressed herein.