THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| John G. Berylson and Amy Smith Berylson,<br>   Plaintiffs,<br><br>v.<br><br>1100 Architect, P.C. and David Piscuskas,<br>   Defendants. | Civil Action No.: 1:21-cv-10527-(RGS) |

### PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs/Defendants-in-Counterclaim, John G. Berylson and Amy Smith Berylson, hereby submit this Statement of Undisputed Material Facts in Support of Their Motion for Partial Summary Judgment, pursuant to Local Rule 56.1.

1. On July 6, 2016, the plaintiffs, John G. Berylson and Amy Smith Berylson (the "Berylsons"), entered into a modified AIA® Document B101™ - 2007, Standard Form of Agreement Between Owner and Architect (the "Agreement") with the defendant, 1100 Architect, P.C. ("1100"), whereby 1100 agreed to provide the Berylsons with certain architectural services for the new construction and renovation of a residential project located at 38 and 44 Highgate Road, Wellesley, Massachusetts (the "Project"). *See* **Exhibit 1**, Agreement, (Bates No. 1100APC0184640-69).

2. David Piscuskas is a founding principal of 1100 and was designated principal in charge for the Project ("Mr. Piscuskas"). *See* **Exhibit 2**, Excerpts from Transcript of David Piscuskas Deposition ("Piscuskas Tr.") at 242 ("I'm the principal in charge.")

3. Exhibit 1 hereto is a true, accurate and complete copy of the Agreement. **Exhibit 3**, Excerpts from 1100 30(b)(6) Deposition Transcript, Vol. I ("1100 Tr. Vol. I") at 109-110.

1

2

4. Based on a Cost of the Work in the amount of $21,000,000, 1100 asserted that it was owed $3,348,870 as a fee for Basic Services through March 31, 2020. **Exhibit 4**, April 29, 2020 Email attaching 1100 Invoice #20-60 (Bates No. 1100APC0189857-80) ("February/March Combined Invoice").

5. In calculating the alleged fee owed through March 31, 2020 for Basic Services, 1100 included within the Cost of the Work costs to the Berylsons to construct elements of the Project that were not designed or specified by 1100. *See* **Exhibit 5**, Excerpts from Expert Report of Deloitte Transactions and Business Analytics LLP, dated December 23, 2022 ("Deloitte Report"), § 5.3.1 at 43.

6. In calculating the alleged fee owed through March 31, 2020 for Basic Services, 1100 also included within the Cost of the Work amounts attributable to the profit earned by the Berylsons' contractors. Ex. 5, Deloitte Report, § 5.3.2 at 45-46. *See also* **Exhibit 6**, August 11, 2020 1100 Budget Spreadsheet (Bates No. 1100APC0219914-15) (Deloitte Report fn. 103), **Exhibit 7**, Excerpts from Richard K. Roberts Deposition Transcript, Vol. I ("Roberts Tr. Vol. I") at 76-77 (Deloitte Report fn. 131, 132).

7. By including elements of the Project that were not designed or specified by 1100 and contractors' profit within the Cost of the Work, 1100 increased its fee for Basic Services. Ex. 5, Deloitte Report, § 7.1.1 at 78-79; *Id*. at Table 7-5; *Id*. at Appendix B, Exhibits 7-1 and 7-2; *See also* **Exhibit 8**, MP0023380 (M. Newman Deposition Exhibit 19) (Deloitte Report fn. 200).

8. Mr. Piscuskas confirmed that Defendants did not design or specify various Project elements, including: (1) Concrete and related mix designs (Ex. 2, Piscuskas Tr. at 229); (2) Geothermal system and related equipment (*Id.* at 231-32); (3) Underpinning (*Id*. at 233); (4) Electrical systems, including power, utility systems, generator assemblies (*Id*. at 234-35); (5)

Mechanical systems and equipment, including air handlers, boilers, heat pumps, radiant heating, and snow melting system (*Id.* at 235-36); and (6) Structural steel (*Id.* at 236). *See* Ex. 5, Deloitte Report, § 5.3.1 at 44.

9. The Berylsons contracted directly with the following major design consultants, who engineered, in pertinent part, the designs for their own scope of work, including but not limited to the: concrete, geothermal system, electrical systems, mechanical systems, and structural steel, and not 1100:

- A.S. Elliott, SDC (Surveyor)
- Certified Energy (HERS Testing)
- D'Antonio Engineers (MEP Engineer)
- Doyle Engineering (Civil Engineer)
- Dudka Criterium Engineers (Peer Review of Surveyor)
- Frener & Reifer America Inc. (Facade Engineer)
- Gale Associates (Waterproofing)
- Houghton Group (Acoustical)
- James Meehan (Lighting Protection)
- Lee F. Mindel. Architect, DPC (Interior Designer)
- Reed Hilderbrand LLC (Landscape Architect)
- Sanborn Head & Associates Inc (Geotechnical Engineer)
- Sean O'Connor Lighting (Lighting Designer)
- Silman Associates (Structural Engineer)
- Steven Winter (Waterproofing)
- System 7 (AV/IT Consultant)
- TE2 Engineering, LLC (MEP Engineer)
- Thornton Tomasetti (Facade / Waterproofing Peer Reviewer)
- UTS of Massachusetts (Testing)
- Wald Studios (Lighting Design)

Ex. 5, Deloitte Report, § 5.3.1 at 43-44.

10. 1100 invoiced the Berylsons for Additional Services without providing notice and obtaining prior written authorization to perform such Additional Services and were aware that this was a condition precedent for so doing. *See* **Exhibit 9**, June 29, 2020 Emails between D. Piscuskas and R. Lipson (Bates No. 1100APC2021783-86) (Mr. Lipson: "We do not have written approval.

3

There have been verbal requests / approvals and we have been paid along the way."); **Exhibit 10**, August 2, 2016 Email from B. Gonzalez to D. Piscuskas et al. (Bates No. 1100APC0030935-36) (1100 acknowledging that all Additional Services require prior written authorization).

11. Defendants *retroactively* identified certain work performed throughout the Project as Additional Services and demanded additional payment from the Berylsons for the same. *See* **Exhibit 11**, Excerpts from Transcript of Robert Lipson Deposition ("Lipson Tr.") at 232 (A. […] There were -- what we discovered was, there were hours that were worked that were not -- that should have been add services that were not properly billed. What I was requested to do was to go through and figure out how would you potentially request that additional amount. As it turned out, that was not the approach that David wanted.); *Id.* at 236 (Q. […] you mentioned something about there was a discovery or a realization that 1100 was -- had billed -- had performed additional services, but not yet billed them. Is that fair? Is that what you said? A. Yes.); **Exhibit 12**, August 24, 2020 Email from D. Piscuskas to J. Grippo et al. attaching Letter (Bates No. 1100APC0024107-14) (the "August 24, 2020 Letter").

12. 1100 submitted its invoices for the services it provided on the Project to Celeste O'Neill, Manager of Fiduciary & Family Office Services at the law firm of Goulston & Storrs PC. **Exhibit 13**, Excerpts from Transcript of John Berylson Deposition ("J. Berylson Tr.") at 361.

13. At all relevant times, Goulston & Storrs served as the Berylsons' family office and as the Berylsons' attorneys. *Id*.

14. At all relevant times, Goulston & Storrs administered and held amounts in commercial bank accounts on behalf of the Berylsons sufficient to pay each invoice submitted by 1100 in connection with the Project. *Id.* at 212-215, 360-362; *See also* **Exhibit 14**, Affidavit of John G. Berylson, dated April 9, 2023 ("J. Berylson Aff.") at ¶ 14.

15. In or around mid-2020, a dispute arose between Defendants and the Berylsons concerning amounts that 1100's represented it was owed as part of its contractual fee. *See* **Exhibit 15**, Defendant David Piscuskas, FAIA's Responses to Plaintiff, John G. Berylson's First Set of Interrogatories to David Piscuskas, dated January 7, 2022; **Ex. 2**, Piscuskas Tr. at 274; Ex. 13, J. Berylson Tr. at 353, 358.

16. 1100 failed to submit any invoice to the Berylsons in the months of February 2020 and March 2020. **Exhibit 16**, April 3, 2020 Email from S. Milne to D. Piscuskas with Attachment (Bates No. 1100APC0179445-53).

17. On April 29, 2020, 1100 submitted to the Berylsons and Ms. O'Neill Invoice No. 20-60, which sought payment for services provided in both February and March 2020. Ex. 4, February/March Combined Invoice.

18. The February/March Combined Invoice demonstrated that 1100 had already invoiced for 85% of its total expected fee based on the Cost of the Work that was represented to the Berylsons. *Id*.

19. Upon receipt of the February/March Combined Invoice, Mr. Berylson was confused as to whether he had missed an invoice from January 2020 and whether the amount paid to 1100 for Basic Services was consistent with the status of the actual construction of the Project. Ex. 13, J. Berylson Tr. at 283, 354; *See also* Ex. 14, J. Berylson Aff. at ¶ 3.

20. Given Mr. Berylson's concerns, Ms. O'Neill wrote to 1100 advising it that Mr. Berylson requested that it go over the invoice with her together within days of receipt. **Exhibit 17**, June 1, 2020 Email String (Bates No. 1100APC0327385-88) at 1100APC0327387; *see also* Ex. 14, J. Berylson Aff. at ¶ 3.

21. Ms. O'Neill informed 1100 that Mr. Berylson was concerned that he was being overcharged and needed to ensure that 1100 was billing accurately owed amounts. Ex. 17 at 1100APC0327385-86 ("Celeste contacted me on behalf of John Berylson to review the invoice I sent them. She told me that she wants to make sure that the invoice is correct and we aren't charging them too much money…" and Ms. Seeley: "I spoke with Celeste - she said John is just concerned he is being charged higher than the 18.5% of construction.").

22. When 1100 did not immediately respond to Ms. O'Neill's inquiry, Mr. Berylson advised Ms. O'Neill to continue pursuing 1100 so as not to be accused of failing to pay the invoice. **Exhibit 18**, May 11, 2020 Email String (Bates No. BERYLSON0002507) ("Stay on them. Don't want them to accuse me of ignoring bills."); *See also* Ex. 14, J. Berylson Aff. at ¶ 4.

23. Mr. Berylson informed Mr. Piscuskas that the parties have differing opinions as to the appropriate fee owed to 1100 under the Agreement and that the billing issue must be resolved. **Exhibit 19**, May 20, 2020 Email (Bates No. 1100APC0179263-64).

24. 1100 advised Ms. O'Neill that the principals of 1100 would address the invoice directly with Mr. Berylson. **Exhibit 20**, June 8, 2020 Email String (Bates No. 1100APC0190209-11).

25. Mr. Piscuskas did not speak directly with Mr. Berylson about the February/March Invoice on or around June 8, 2020. *See* Ex. 14, J. Berylson Aff. at ¶ 5.

26. No other principal of 1100 sought to speak directly with Mr. Berylson about the February/March Invoice on or around June 8, 2020. Ex. 14, J. Berylson Aff. at ¶ 5.

27. 1100 did not submit any invoice to the Berylsons in the months of February, March, May, June, July, or August of 2020. *See* **Exhibit 21**, July 8, 2020 Email String (Bates No. 1100APC0319990); Ex. 13, J. Berylson Tr. at 355.

6

28. In early 2020, Defendants began internally preparing an "Additional Services Proposal" and/or a "Fee Request" for the Project. Ex. 11 Lipson Tr. at 232-233; *see also* **Exhibit 22**, April 16, 2020 Email (Bates No. 1100APC0220622); **Exhibit 23**, May 20, 2020 Email with Attachments (Bates No. 1100APC0212253-57); **Exhibit 24**, May 7, 2020 Email (Bates No. 1100APC0307612).

29. Defendants reviewed their previously performed and paid-for work to determine what services or hours could retroactively be re-classified as change orders or Additional Services. *See e.g.,* **Exhibit 25**, April 10, 2020 1100 Email String (Bates No. 1100APC2021702-04); *see* Paragraph 11, *supra*.

30. Defendants reviewed timesheets "as far back as 18 months" to identify services which could classified "retroactively as an add service." **Exhibit 26**, February 6, 2020 1100 Email String (Bates No. 1100APC0207858-59); *see also* **Exhibit 27**, February 3, 2020 1100 Email String (Bates No. 1100APC0291625-26).

31. In or about June 2020, 1100 first informed the Berylsons that 1100 was entitled to bill on an hourly basis starting retroactively to on or about November 7, 2019. Ex. 14, J. Berylson Aff. at ¶ 6.

32. On June 3, 2020, Mr. Lipson emailed Mr. Roberts a copy of the Agreement, noting that Section 4.3.3 "is the relevant paragraph related to the [Agreement] converting to compensation as an hourly Add Service." **Exhibit 28**, June 3, 2020 Email from R. Lipson to R. Roberts with Attachments (Bates No. 1100APC0311924-58).

33. Defendants, the Berylsons, and the Berylsons' attorney engaged in discussions beginning in or around June 2020 as to how 1100 would calculate its fees going forward. *See e.g.* Ex. 9 at 1100APC2021785 (Piscuskas would "like to go ahead and settle the fee discussions"); Ex.

21 (1100's invoicing is still on hold until Additional Service issues are resolved); **Exhibit 29**, July 14, 2020 Email from R. Roberts to J. Grippo (Bates No. 1100APC0024063) (Mr. Roberts to Berylsons' attorney: "Just to brief you for our call […] David [Piscuskas] is steadfast in his position saying he'll walk away and/or doesn't care if John [Berylson] sues him. His contract shifted to [hourly] after Nov 2019 and he's owed $393k."); **Exhibit 30**, July 30, 2020 1100 Email String (Bates No. 1100APC0212760-64) (1100 preparing documentation for billing discussion with Berylsons' attorney); Ex. 14, J. Berylson Aff. at ¶¶ 6-13.

34. Mr. Piscuskas acknowledged that there was a billing dispute with the Berylsons in July 2020. Ex. 2, Piscuskas Tr. at 274 ("There was a billing dispute and I offered a concession to Mr. Berylson in early July.").

35. Mr. Piscuskas sent a letter to Attorney Grippo on August 24, 2020, acknowledging the discussions about the fee dispute that they had been engaging in "over the past two months" and explaining in detail Defendants' request for additional fee amounts, and fee concessions that 1100 was willing to make in light of the dispute. Ex. 12, August 24, 2020 Letter.

36. The August 24, 2020 Letter stated that 1100 was owed for over 2,000 hours of Additional Services that had not been billed over the previous 50 months, and hundreds of thousands of dollars for hourly-rate Basic Services from January through June 2020. Ex. 12, August 24, 2020 Letter at 1100APC0024111, 1100APC0024114.

37. The August 24, 2020 Letter included Additional Services for which 1100 had not obtained prior written authorization. *See* Paragraph 10, *supra*; *see also* Ex. 9 at 1100APC2021783 and Ex. 12 at 1100APC0024108.

38. On September 4, 2020, Mr. Piscuskas informed Mr. Roberts that Defendants were rescinding their offer of fee considerations ("Prepare yourself." "Rescinding our offer.") **Exhibit**

**31**, September 24, 2020 Text Messages between D. Piscuskas (917-847-5081) and R. Roberts (339-298-12170) (Bates No. 1100APC0203737-38).

39. On September 19, 2020, Mr. Berylson wrote Mr. Piscuskas, again questioning 1100's billing as it relates to the Agreement and affirmed that he intended to pay what was truly owed. **Exhibit 32**, September 19, 2020 Text Message from J. Berylson (617-733-9808) to D. Piscuskas (917-847-5081) (Bates No. 1100APC0205418) ("I thought we had agreed on deal. 18.5[%] to 21 [million]. 16[%] above. That is not what you expect? Celeste [O'Neill] is checking bills but at time u were a multiple of [BWP's] bill. That shouldn't be. I know I'll meet my obligations.").

40. On September 21, 2020, Mr. Piscuskas responded to Mr. Berylson with an email describing the fee dispute as he perceived it and elaborating on the amounts that he represented 1100 was owed. **Exhibit 33**, September 21, 2020 Email from D. Piscuskas to J. Berylson (Bates No. 1100APC0024346-48).

41. The next day, Mr. Berylson again notified Mr. Piscuskas, in writing, that he believed 1100's billing was not in line with the Agreement, and affirmed that he would pay the appropriate amount once that amount was accurately determined. **Exhibit 34**, September 22, 2020 Email from J. Berylson to D. Piscuskas (Bates No. 1100APC0024357) ("I am struggling to understand how your bill relates to our contract. Especially as it might lead to your next invoice which will clearly lead to an overall charge that exceeds my expectations of contract cost as it relates to your contract. Go through this with [Attorney Grippo]. If you are accurate and I am convinced I will pay the appropriate amount.")

9

42. On September 28, 2020, Mr. Piscuskas sent two invoices to the Berylsons and Attorney Grippo. **Exhibit 35**, September 28, 2020 Email from D. Piscuskas to J. Grippo et al. with Attachments (Bates No. 1100APC0024400-514) ("Sept. 28 Email and Invoices").

43. The first invoice, dated September 25, 2020, requested a fee of $232,890.16 (the "Revised Percentage-Based Invoice"). The Revised Percentage-Based Invoice seeks the differential between the fee 1100 had represented it earned (and been paid) in November 2019, and what Defendants now believe 1100 is entitled to for work performed prior to November 6, 2019 based on a subsequently increased Cost of the Work. Ex. 35, Sept. 28 Email and Invoices at 1100APC0024401.

44. Mr. Piscuskas represented that the Revised Percentage-Based Invoice reflects proposed fee considerations based on the ongoing discussions between the parties, which Attorney Grippo had apparently requested to see in an invoice. Ex. 35, Sept. 28 Email and Invoices at 1100APC0024400 ("Further to our conversation last Monday, attached is the invoice you requested. A few points – This invoice reflects the considerations John Berylson and I discussed several weeks ago").

45. The second invoice, dated August 31, 2020, requested a fee of $566,383.86 for hourly-rate Additional Services charges dating back retroactively from November 7, 2019 through August 31, 2020 (the "Retroactive Hourly Invoice"). The Retroactive Hourly Invoice noted that the Berylsons had previously paid Basic Services invoices for several months, and that those payments had already been subtracted from the invoice total. Ex. 35, Sept. 28 Email and Invoices at 1100APC0024402-514.

46. After submission of the Revised Percentage-Based Invoice and Retroactive Hourly Invoice, attorneys for the Berylsons and Defendants continued engaging in discussions via email,

10

letter, and oral communication to resolve the ongoing fee dispute. *See e.g.* **Exhibit 36**, October 14, 2020 Emails between Counsel (Bates No. 1100APC0209244-45)[1]; *see also* Ex. 14, J. Berylson Aff. at ¶ 12.

47.     During this time, Defendants continued to search for performed services dating back to November 7, 2019 which could be retroactively designated as hourly-rate Additional Services. *See* **Exhibit 37**, September 30, 2020 1100 Email String (Bates No. 1100APC2022320-21) (Lipson indicates that "46.6% of Basic Service hours [ ] may be considered potential Add Services"); **Exhibit 38**, October 1, 2020 1100 Email String with Attachment (Bates No. 1100APC2025586-88) (1100 "found" $35,986 more in Additional Services, Ms. Milne asks "Can we really bill all of that???" with respect to the "huge amount of hours" for certain task).

48.     1100 submitted subsequent invoices on October 14, 2020, December 8, 2020, and January 7, 2021. Each invoice consisted solely of hourly-rate services. **Exhibit 39**, 1100 Invoice #2020-0900 and Cover Email (Bates No. 1100APC0168188-206), **Exhibit 40**, 1100 Invoice #2020-1100 and Cover Email (Bates No. 1100APC2027053-65), and **Exhibit 41**, 1100 Invoice #2020-1200 and Cover Email (Bates No. 1100APC2028467-71).

49.     The Berylsons, Defendants, and the parties' respective attorneys engaged in dispute discussions and attempted to resolve the dispute from at least May 2020 through February 2021. *See* Paragraphs 22-24, 31-46 *supra*.

50.     On February 17, 2021, Defendants, through their attorney, submitted a Notice of Suspension of Services and Termination of Agreement to the Berylsons, citing Section 9.1 of the

---

[1] Many communications between counsel from October 2020 through February 2021 are subject to settlement communication privilege, and the content of such designated documents are presumptively inadmissible in this proceeding.

11

Agreement ("Notice of Suspension and Termination"). **Exhibit 42**, February 17, 2021 Email with Notice of Suspension and Termination (Bates No. 1100APC2027732-71).

51. Simultaneously with the Notice of Suspension and Termination, Defendants filed a Demand for Arbitration with the American Arbitration Association ("AAA"), citing Sections 7.2 and 8.1.4 of the Contract. Ex. 42, Defendants' Demand for Arbitration, dated February 17, 2021, at 1100APC2027735.

52. Defendants' AAA Arbitration Demand states that the expedited arbitration provision of Section 7.2 applies to the dispute at issue. Ex. 42, Demand for Arbitration ("Anticipating precisely this type of situation, the parties' agreement provides for expedited arbitration of this dispute pursuant to [A]rticle 7.2 of the Agreement").

53. Defendants suspended services and subsequently terminated the Agreement on March 4, 2021. *See* Defendants' Amended Counterclaim, Dkt. 46 at ¶¶ 5, 191.

54. On or about March 15, 2021, Defendants' attorney transmitted a "Notice of Termination/Withdrawal of Services and Instruments of Service" to the Project Participants. *See* **Exhibit 43**, March 15, 2021 Email from J. Peloquin to R. Roberts with Attachment (Bates No. TRUEST_0023788-90); **Exhibit 44**, March 15, 2021 Email (Bates No. TRUEST_0023795).

55. The Notice of Termination/Withdrawal of Services and Instruments of Service caused Project Participants concern about the future of the Project, and risked delay to the Project. *See* **Exhibit 45**, April 25, 2021 Email String (Bates No. TRUEST_0034403-04); **Exhibit 46**, March 21, 2021 Email String (Bates No. TRUEST_0023901-02).

Respectfully Submitted,

John G. Berylson and Amy Smith Berylson,

By their Attorneys,

*/s/ William S. Rogers, Jr.*
William S. Rogers, Jr., BBO No.549487
wsrogers@princelobel.com
Christopher Miller, BBO No. 685219
cmiller@princelobel.com
Kenneth A. Sherman, BBO No. 569293
ksherman@princelobel.com
Lauren Koslowsky, BBO No. 705541
lkoslowsky@princelobel.com
Prince Lobel Tye LLP
One International Place
Boston, MA 02110
617-456-8000

Dated: April 10, 2023

## CERTIFICATE OF SERVICE

I, William S. Rogers, Jr., hereby certify that this document has been filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ William S. Rogers, Jr.*
William S. Rogers, Jr.

13