# EXHIBIT 12

| | |
|---|---|
| **From:** | David Piscuskas |
| **Sent:** | Monday, August 24, 2020 3:57 PM |
| **To:** | Jonathan Grippo |
| **Cc:** | Rich Roberts |
| **Subject:** | 38 Highgate |
| **Attachments:** | 1100Goulston Letter 38 Highgate 08242020EP.pdf |

Jon,

Trust you had a good break.

Over the course of the past several weeks I've continued to be quite heavily involved in 38 Highgate, with Rich Roberts and I working through, and advancing to positive effect, a number of important project items.

This, combined with a bit of a setback relative to the storm a couple weeks ago, pulled me away from the task of completing the documentation relative to our conversation about fee considerations for 38 Highgate. I appreciate your patience.

I've kept Rich Roberts abreast of our discussions, and offer you, attached, a summary with proposed adjustments related to compensation.

Available to discuss further at your convenience.

Truly yours,
--
**DAVID PISCUSKAS** FAIA LEED AP
FOUNDING PRINCIPAL

**1100:** ARCHITECT

475 TENTH AVENUE **NEW YORK** NY 10018
T 212 645 1011 • F 212 645 4670 • M 917 847 5081
WWW.1100ARCHITECT.COM

2017 PRESIDENT - AIA NEW YORK

1100APC0024107

**1100: ARCHITECT • DAVID PISCUSKAS • JUERGEN RIEHM**
475 TENTH AVENUE NEW YORK NY 10018 USA
T 212 645 1011 • F 212 645 4670
INFO@1100ARCHITECT.COM • WWW.1100ARCHITECT.COM

24 August 2020

Mr. Jonathan Grippo
Goulston Storrs
855 Third Avenue
New York, New York 10022 / *via email*

RE:   The Addition to, and Reconstruction of, 38 Highgate Wellesley MA

Jon,

This letter shall document the substance of conversations over the past several weeks with you and Rich Roberts, who is representing John and Amy Berylson in the addition and re-construction project on their home at 38 Highgate, Wellesley MA.

Per previous exchanges between ourselves, as well as Mr. Rich Roberts, the Berylsons representative on the project, I have proposed several courtesy considerations to Mr. and Mrs. Berylson related to various components of the basic services and selected additional services we are performing per agreement the 14th of April, 2016.

I.   Courtesy Consideration I: Sea-Dar Construction / defective Work-in-Place

We believe it is affirmatively documented that Sea-Dar Construction performed and installed work-in-place that was not compliant with the project documents and/or otherwise defective in some capacity. During the period of June 2018 to January 2019 Sea-Dar Construction [SDC] invoiced Mr. and Mrs. Berylson for construction work valued by SDC at $1,858,429.

I.   History:
From July 2018 – Oct 2018 SDC primarily conducted sitework, drilled wells for a geothermal heat dispersion system, and procured selected contracts for the project. The value of this work, including sub-contract deposits and the usable portions of work-in-place [determined many months later pursuant to comprehensive dimensional investigation] was $1,278,696.

During the period of time – Oct 2018 to Jan 2019 – that encompasses the height of SDC's attention to the construction of the house portion of the project, (e.g. laying out, forming, and pouring concrete footings and columns for the addition), it became apparent through routine construction observation that the work for which SDC was contracted was probably non-conforming with the contract documents – plans and specifications. Indeed, it was later determined that multiple aspects of the work SDC performed were incorrectly dimensioned: either located incorrectly on the site, or bored to an insufficient depth, or incorrectly coordinated and conjoined (e.g. concrete columns not resting on incorrectly-located concrete footings that lacked the proper installation of steel reinforcement or concrete mix).

1

**1100:** ARCHITECT • DAVID PISCUSKAS • JUERGEN RIEHM
475 TENTH AVENUE NEW YORK NY 10018 USA
T 212 645 1011 • F 212 645 4670
INFO@1100ARCHITECT.COM • WWW.1100ARCHITECT.COM

The value of work-in-place deemed later to be deficient/non-conforming with the contract documents through extensive investigation was $282,000. This construction cost (e.g. drilling and capping geothermal wells too low for proper use) which originally appeared to be acceptable, was requisitioned and approved long prior to later learning that the wells were incorrectly capped. Notwithstanding the fact that 1100 Architect provided SDC with accurate site information regarding the dimensional requirements of the heat dispersion wells, as well as for concrete footings and concrete structure, and that construction services were provided and compensated, 1100 Architect has waived percentage-based fees associated with this non-conforming work.

Note I.1:
Fee Consideration:
Per the terms of the Agreement between Owner and Architect, dated 14th of April 2016, the value of the waived fee is $52,170.

Note I.2:
The final payment requisition – sub-totaling $312,537 – of the figure [$1,858,429] noted above at the beginning of this sub-section, was neither approved nor paid. No fees are claimed on these payment requisitions; in any case, per our review, they were invalid.

II. Courtesy Consideration II: Performing On-Going and Extended Services at Percentage Fee Basis on construction costs of $21,000,000.00 when the complexity and scope of the project were actually significantly greater.

1100 has, for nearly the past year, used a construction cost of $21,000,000 billing as a construction-cost basis for percentage-of-construction-cost fee for Basic Services rendered.

With receipt of the comprehensive appraisal of – and subsequent revisions to – Berkshire Wilton Partner's construction cost estimated budget of 28,507,655 (Inclusive of Landscape and Remediation work) received in December 2019, the actual and forecasted construction costs of the project based upon owner directions and the employment of more quality sub-contractors (that as previously noted, would not work with or under Sea-Dar Construction) the anticipated and incurred construction costs are as follows:

| | |
|---|---|
| •Berkshire Wilton Partners – under-roof construction - | $24,250,000.* |
| •Berkshire Wilton Partners – site work | $    846,596. |
| •Sea-Dar Construction – usable project elements | $  1,278,696. |
| •Total Estimated Construction Costs for billing purposes | $ 26,375,292. |

* This figure incorporates approximately $1million of adjustments that would result in lower costs not approved by the Owner.

2

**1100:** ARCHITECT • DAVID PISCUSKAS • JUERGEN RIEHM
475 TENTH AVENUE NEW YORK NY 10018 USA
T 212 645 1011 • F 212 645 4670
INFO@1100ARCHITECT.COM • WWW.1100ARCHITECT.COM

Indeed, the project has been tracking around this cost for some time. Two years ago, during Sea-Dar's activity, Jean Abouhamed, SDC President, spoke to me as an aside: "You know, this is really a 25 million dollar project." In the months ensuing from that conversation, based upon owner direction and expectation, SDC forecasted millions of dollars of costs above their quoted $19.4million figure. 1100 prepared extensive documentation that uncovered the likely costs SDC signaled that were referenced-but-undocumented (meaning not formally bid or priced). As you could perceive, then, 1100 has been engaged for multiple years in designing, drawing, documenting and servicing a building project notably above the billing basis of 21 million dollars. Because we had not aligned our invoices for services with the probable construction costs – due to the undocumented nature of Sea-Dar Construction's assertions, and Berkshire Wilton Partners delays in tendering a formal construction cost budget estimate of $28,507,655 ultimately received on February 13, 2020 – we have performed services for which we have not yet invoiced Mr. and Mrs. Berylson.

Contrary to the perception, or assertion, that 1100 Architect is 'ahead' of the Owner, the actuality is 1100 Architect has extended full services for more than a year on a project of greater scope and complexity than reflected in the $21 million billing basis, prior to re-setting the billing to a more accurate cost as a reflection of the scope and complexity of the project.

Also, for your information, 1100 Architect has not invoiced Mr. and Mrs. Berylson for services in over four (4) months. Further, there are two (2) outstanding invoices for services and two (2) outstanding invoices for reimbursable expenses that are more than ninety (90) days past due.

These invoices are as follows:

| | | |
|---|---|---|
| #20-61DOI: 02/29/20 | | Status: Unpaid |
| | $23,310.00 | Basic Services |
| | $5,380.02 | Reimbursable Expenses |
| | | |
| #20-62DOI: 03/31/20 | | Status:Unpaid |
| | $23,310.00 | Basic Services |
| | $1,347.50 | Reimbursable Expenses |

III.     <u>Courtesy Consideration III: Reduction of Percentage Fee Basis on construction costs above $21,000,000.00.</u>

Further to conversations between you and me – at the behest of Mr. Berylson and Rich Roberts, respectively, if my understanding is correct – in the context of the Berylsons' stated desire to lower costs on the project, and Rich Roberts' interest in affirming and/or stabilizing the contractual relationship between the Owner and the Architect, we spoke about 1100 Architect possibly offering fee concessions to the Owner.

3

**1100:** ARCHITECT • DAVID PISCUSKAS • JUERGEN RIEHM
475 TENTH AVENUE NEW YORK NY 10018 USA
T 212 645 1011 • F 212 645 4670
INFO@1100ARCHITECT.COM • WWW.1100ARCHITECT.COM

During our conversations I noted the prevailing contract provides that services performed past the date of November 6, 2019 are to be compensated on an hourly basis. Without quoting you directly and verbatim, you expressed an interest in arriving at greater 'definition' than across-the-board hourly compensation. Notwithstanding the referenced contract terms that provided for all services after November 6, 2019 to be compensated on an hourly basis, 1100 tracked and documented time related to the underlying definition of Basic and Additional Services in the original agreement.

Note III.1:

For reference, the services 1100 Architect performed on behalf of the Owners and the project at 38 Highgate for the period of November 7, 2019 through June 30, 2020 encompassed the following activities:

4,216 total hours at an hourly total value of $570,353.50.

Of these total hours during the referenced period, effort and time on Basic Services consisted of 2,242.25 hours valued at $315,624.

Of this subtotal, $97,902 has been compensated through invoices #2019-1107 [DOI: 11/30/19]; #2019-1202 [DOI: 12/31/19]; #2020-0114 [DOI: 01/24/20].

Note III.2:

Fee Consideration:
Lower Percentage Fee of Total Construction Costs above 21 million dollars [$21,000,000.00] from 18.5% to 16% of Total Construction Costs above 21 million dollars [$21,000,000.00].

(Note: the percentage fee of 18.5% on Total Construction Costs from $0 – $21,000,000 per original contract remains unaltered.

Referencing present value figures of Total Construction Costs, this courtesy reduction has a value of $134,382.

Note III.3:

Effort and time in Basic Services $217,722, approximate hourly value of $140.76, from January – June 2020 is presently, as of this writing, uncompensated.

Note III.4:

The Fee Consideration offered in Note III.2 above contemplates Basic Services compensation and Substantial Completion be December 2023 (slightly more than 28 months from the date of this letter). Any services performed after January 1, 2024 shall be compensated on an hourly basis.

4

**1100:** ARCHITECT • DAVID PISCUSKAS • JUERGEN RIEHM
475 TENTH AVENUE NEW YORK NY 10018 USA
T 212 645 1011 • F 212 645 4670
INFO@1100ARCHITECT.COM • WWW.1100ARCHITECT.COM

IV. Courtesy Consideration IV: Waiver of Fees for selected Additional Services

During the course of the project, selected additional services have been performed, per terms of the contract. These services have been performed largely in the following categories:

- Services performed pursuant to Contractor Change [§ 3.6.5.2];
- Services performed at the direction of the Owner's Rep which effect a change to previously tendered directives [§ 4.1];
- Services performed pursuant to Pending Claim [§ 4.1];
- Services performed pursuant to Project Phasing [§ 4.1];
- Services performed pursuant to VE/Budget Reconciliation in excess of one VE/Budget Reconciliation per contract [§ 4.1.3];
- Services performed in preparation of Design Books for Client [§ 4.1.7];
- Services performed in preparation of Design Books for Decorator [§ 4.1.7];
- Services performed in the documentation and coordination of AV/ Security systems [§ 4.1.8];
- Selected services related to coordination of landscape design with site planning and site work [§ 4.1.12];
- House Survey [§ 4.1.13];
- Services related to regulatory approvals in excess of 50 hours [§ 4.1.14];
- Services performed at the direction of the Owner which effect a change to previously tendered directives [§ 6.7].

IV.     History:

Since the inception of the project in April 2016, Additional Services have been performed as directed or necessitated pursuant to its delivery. At the onset of the work, these included:

- House Survey [§ 4.1.13]
- Services related to regulatory approvals in excess of 50 hours [§ 4.1.14]
- Selected services related to coordination of landscape design with site planning and site work [§ 4.1.12]
- Services performed pursuant to Project Phasing [§ 4.1]

Services related to the primary part of regulatory approvals – Large House Review – proceeded with greater efficiency and less opposition than anticipated, to the benefit of the Berylsons. We accomplished approval in the first hearing. A mandatory 30-day waiting period prior to procuring a building was then activated during which time any new oppositions could come forward. During this 4-week period, the Town of Wellesley passed an Historic Preservation regulation which proscribes that any building constructed prior to 1950 requires a one-year waiting period pursuant to new construction unless special approval to demolish the building is gained through public hearing. 1100 viewed all readily available documentation to affirm that the building was constructed and completed in 1950/51.

5

**1100:** ARCHITECT • DAVID PISCUSKAS • JUERGEN RIEHM
475 TENTH AVENUE NEW YORK NY 10018 USA
T 212 645 1011 • F 212 645 4670
INFO@1100ARCHITECT.COM • WWW.1100ARCHITECT.COM

The Town of Wellesley claimed that a permit application to commence construction dated Oct 31, 1949 constituted 'construction prior to 1950'.

1100 led the research and aggregation of documentation to appeal this verdict, including (a) newspaper accounts of police activity in the neighborhood impeding construction; (b) procuring physical evidence of the sub-grade conditions on the subject property that would have impeded expeditious sub-grade construction activity; and (c) presentation of comprehensive weather records for the 4th quarter months of 1949 to demonstrate a pattern of environmental conditions not conducive to regular construction activity.

The ruling of 'Preferable Preservation' of the house at 44 Highgate (requiring a one-year waiting period to commence the project) was overturned on appeal.

The process of engaging with Sea-Dar Construction to construct the project moved forward, per the Owner's direction. Additional Services that did occur were primarily in the following categories:

- Services performed pursuant to Project Phasing [§ 4.1]
- Services performed pursuant to VE/Budget Reconciliation in excess of one VE/Budget Reconciliation per contract [§ 4.1.3]
- Services performed in preparation of Design Books for Client [§ 4.1.7]
- Selected services related to coordination of landscape design with site planning and site work [§ 4.1.12]

During the period of time when Sea-Dar was involved, prior to commencement of any work in place, a Value Engineering (VE) action was performed at the Owners' request, from January to March 2018, yielding recommendations for cost reductions of approximately 1.048 million dollars, equivalent to approximately Six percent [6%] of Sea-Dar's stated value of the work. 1100 performed services pursuant to the referenced agreement, as part of Basic Services, with no additional cost to the Owner.

In June 2017, 1100 prepared a 'Design Book' for the Owner to provide a convenient reference to review and reflect upon the design progress of the project while on summer break. This 'Design Book' was prepared as a courtesy to illustrate the progress of development of the design and facilitate the Owner's thought process relative to her needs and intentions, at her convenience. The Design Books contained current plans and highly realistic (photo-quality) renderings of the exterior and interior of the building. (Note: the contract does not provide for photo-quality renderings as a Basic Service.)

Over the course of the next three years, thirteen updated and expanded editions of three different versions of the Design Book have been requested, illustrating the Owner's directives for changes and alternatives in multiple parts of the home, as well as versions for prospective Interior Decorators and Art Consultants.

1100APC0024113

**1100:** ARCHITECT • DAVID PISCUSKAS • JUERGEN RIEHM
475 TENTH AVENUE NEW YORK NY 10018 USA
T 212 645 1011 • F 212 645 4670
INFO@1100ARCHITECT.COM • WWW.1100ARCHITECT.COM

IV.  Summary:

Over the past 50 months, through June 30, 2020, 5,805 hours of Additional Services have been performed in the twelve categories noted above, totaling a value of $836,733.

Compensation for 3,192 hours of Additional Services totaling $461,419 has been paid and received. A total of 2,647 hours of Additional Services efforts – time valued at $375,314 – is unbilled, and uncompensated.

Note IV.1:

Fee Consideration:
Of the uncompensated time referenced above – 2,647 hours valued at $375,314 – a Courtesy No Cost amount is offered to the Owner for 635 hours of Additional Services time in the amount of $90,000.

Note IV.2:

The balance of uncompensated Additional Services through June 30, 2020 of 2,122 hours valued at $285,314 will be invoiced to the Owners.

V.  Conclusion

V.1:  Three quantifiable fee considerations outlined in this memorandum–an aggregated combined present value on the order of $276,552 – are herewith offered to the Owners.
V.2:  Compensation for design professional services tendered per the characterizations of Basic Services and Additional Service articles of the 16 April 2016 agreement shall be maintained through 31 December 2023.
V.3:  A fee reduction for Basic Architectural Services on Total Construction Costs <u>above 21 million dollars from 18.5% of construction costs to 16% of construction costs</u> shall be implemented.
V.4:  Compensation for design professional services tendered from 1 January 2024 forward will be performed on an hourly basis.
V.5:  Compensation for unbilled or uncompensated Architectural Services as described in the foregoing sections of this memorandum shall be remitted.
V.6:  Unless otherwise expressly referenced or amended in this memorandum, all other contract terms and provision of the 16 April 2016 agreement shall remain in force.

Respectfully tendered,

David Piscuskas FAIA LEED AP
Founding Principal

CC: Rich Roberts

7