# EXHIBIT 2

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| John G. Berylson and Amy Smith Berylson,<br>        Plaintiffs,<br><br>       v.<br><br>1100 Architect, P.C. and David Piscuskas,<br>        Defendants. | )<br>)<br>)<br>)<br>)   Civil Action No.: 1:21-cv-10527-(RGS)<br>)<br>)<br>)<br>)<br>) |

## <u>PLAINTIFFS, JOHN G. BERYLSON AND AMY SMITH BERYLSON'S, ANSWERS TO DEFENFDANTS', 1100 ARCHITECT, P.C. AND DAVID PISCUSKAS' FIRST SET OF INTERROGATORIES</u>

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiffs, John G. Berylson ("J. Berylson") and Amy Smith Berylson ("A. Berylson") (collectively "Plaintiffs" and/or "the Berylsons"), hereby respond to the First Set of Interrogatories propounded by Defendants, 1100 Architect, P.C. ("1100") and David Piscuskas ("Piscuskas"). The following Answers and objections are based upon information now known to the Berylsons.

### <u>Preliminary Statement</u>

The Berylsons have not yet completed their preparation for trial. The Berylsons reserve the right to rely on any facts, documents or other evidence that may develop or come to their attention subsequent to responding to these Interrogatories. The Berylsons also reserve the right to rely, at the time of trial, upon documents, answers, and evidence in addition to those provided or referred to in their Answers to Interrogatories regardless of whether, among other things, any such documents, answers, and evidence are newly discovered or are currently in existence. John G. Berylson and Amy S. Berylson are individual parties, each with their own personal

knowledge, but these interrogatories have been served upon them collectively as though they are

a single entity, so on this basis, and subject to objection, the Berylsons have not answered each

interrogatory separately and independently.  The Berylsons reserve their right to identify their

personal, separate and individual responses to each interrogatory. Finally, the Berylsons also

reserve the right to amend, modify, or supplement this set of Answers to the Interrogatories.

The Berylsons willingness to answer the Interrogatories is not a concession that the

subject matter of the particular Interrogatory is relevant to this action or that it is responsive to a

particular issue in this case.

## INTERROGATORIES

### INTERROGATORY NO. 1

Identify all of the person(s) who have supplied information or otherwise participated in preparing
the answers to these interrogatories, and as to each such person, which interrogatory or
interrogatories they helped in preparing.

### ANSWER NO.1

The Berylsons object to this Interrogatory, as it seeks information protected by the Attorney-Client
privilege and the Attorney Work Product doctrine.

Subject to and without waiving these objections, the Berylsons state: These Answers were
prepared by the Berylsons with the assistance of undersigned counsel. No person or entity other
than our attorneys assisted in the answering of these interrogatories.

### INTERROGATORY NO. 2

Identify each person whom You expect to call as an expert witness at trial, and for each such
expert witness, provide the subject matter regarding which the expert is expected to testify, the
substance of the facts and opinions to which the expert is expected to testify and a summary of
the grounds for each opinion.

### ANSWER NO.2

The Berylsons object to this interrogatory as seeking information, in part, which is premature and
subject to expert discovery in accordance with the September 30, 2021 Scheduling Order issued
by the Court (Stearns, D.J.).

2

Subject to and without waiving this objection, the Berylsons state that no determination regarding trial experts has been made at this time.

The Berylsons reserve their right to supplement and/or amend this Answer prior to trial and in accordance with the September 30, 2021 Scheduling Order issued by the Court (Stearns, D.J.).

## INTERROGATORY NO. 3

For each item of damage You contend You have suffered as a result of the conduct, actions and/or inactions of the Defendants, identify the item and dollar amount of damage followed by the conduct giving rise to such damage, the methodology used to calculate such item of damage and the set forth in detail the basis for Your contention that the Defendants caused such damage.

## ANSWER NO. 3

The Berylsons object to this Interrogatory, as it seeks information protected by the Attorney-Client privilege and the Attorney Work Product doctrine. The Berylsons further object to this Interrogatory on the grounds that it seeks legal opinions and/or conclusions. The Berylsons also object to this interrogatory as seeking information, in part, which is premature and subject to expert discovery in accordance with the September 30, 2021 Scheduling Order issued by the Court (Stearns, D.J.). The Berylsons object further to this Interrogatory on the grounds that fact discovery is ongoing and, therefore, any damages calculation would be premature at this time. The Berylsons explicitly reserve their right to supplement and/or amend the Answer to this Interrogatory and to prove their damages to a jury at trial.

Subject to and without waiving these objections, the Berylsons state that the basis for their claims against 1100 and Piscuskas, and the resultant damages that the Berylsons have suffered as presently known and/or determined at this time are set forth in detail in the Amended Complaint.

## INTERROGATORY NO. 4

Describe in detail each statement, promise or representation made by the Defendants, or their agents or employees, that You contend to be untrue or an intentional misrepresentation of any kind, including, the identity of the person or persons who made each statement, promise or representation; the date and time the statement, promise or representation was made; the person or persons to whom the each statement, promise or representation was made; the identity of any person or persons who witnesses each statement, promise or representation; the substance of each statement, promise or representation; identify any documentation supporting the making of the statement, promise or representation; and identify any and all evidence or documentation supporting the knowledge, intent or malice of the person making the statement, promise or representation.

## ANSWER NO.4

The Berylsons object to this Interrogatory, as it seeks information protected by the Attorney-Client privilege and the Attorney Work Product doctrine. The Berylsons further object to this Interrogatory on the grounds that it seeks legal opinions and/or conclusions. The Berylsons

object further to this Interrogatory to the extent that it is overly broad, unduly vague, and unlimited as to time and scope. Finally, the Berylsons object to this Interrogatory because the terms "statement, promise or representation" are not each sufficiently and separately defined in relation to the separate terms "untrue" and/or "intentional misrepresentation" in order to enable the Berylsons to make an appropriate response.

Subject to and without waiving these objections, the Berylsons state that the basis for their claims against 1100 and Piscuskas including the false statements, breached promises and material misrepresentations and/or intentional misrepresentations, made by 1100 and Piscuskas, and/or their agents or employees, are set forth in detail in the Amended Complaint, and which are summarized here as follows:

¶ 21 (containing factual allegations related to 1100 and Piscuskas' representations to the Berylsons that 1100 had the unique talents to handle the demands of the Project and could create the unique concept and design the Berylsons were seeking);

¶ 23 (containing factual allegations related to Piscuskas' representation and agreement that he would act as the lead architect and designer for the Project);

¶ 25(containing factual allegations related to 1100 and Piscuskas' intentional misrepresentation in April 2016 that the construction cost for the Project (the "Cost of the Work") would be between $10,575,000 and $12,740,000 for an approximate 12,200 square foot Project), when Piscuskas knew that was not possible even then;

¶ 44 (containing factual allegations related to 1100 and Piscuskas' representation and agreement that they would complete the Construction Documents in a timely manner);

¶ 46 (containing factual allegations related to 1100 and Piscuskas' representation and agreement that they would complete the Schematic Design Documents in a timely manner);

¶ 49 (containing factual allegations related to 1100 and Piscuskas' representation and agreement that they would complete the Design Development Documents in a timely manner);

¶¶ 52-54 (containing factual allegations related to 1100 and Piscuskas' representation and agreement that they would complete Construction Documents for the entirety of the Project);

¶¶ 59-66 (containing factual allegations related to 1100 and Piscuskas' intentional failure to disclose to the Berylsons and/or obtain and receive proper authorization from the Berylsons under their agreement, regarding the increased size and scope of the Project);

¶¶ 67-106 (containing factual allegations related to 1100 and Piscuskas' representation that they knew and understood the zoning requirements for the Project imposed by the Town of Wellesley);

4

¶¶ 132-134 (containing factual allegations related to Piscuskas' intentional misrepresentation to the Berylsons that there would be no further increases to the Cost of the Work for the Project, as well as 1100 and Piscuskas' intentional misrepresentation of the Project's actual anticipated costs, in order to induce the Berylsons to agree to proceed with Sea-Dar and the Project);

¶¶ 138-140 (containing factual allegations related to 1100's intentional concealment of information related to, and instructions to the Berylsons regarding the need for execution of, various change event documents from Sea-Dar representing subcontractor awards and some "Proposed Budget Adjustments" as presented to J. Berylson; and/or unilaterally executing same on J. Berylson's behalf);

¶¶ 151-169 (containing factual allegations related to 1100 and Piscuskas' failure to disclose to the Berylsons that Sea-Dar advised 1100 and Piscuskas on numerous occasions that its Project estimates and risk-logs provided that the Project cost exceeded $20 Million, as required by the Agreement);

¶¶ 170-185 (containing factual allegations related to 1100 and Piscuskas' intentional concealment of documents, and/or non-disclosure of information that they were provided by Sea-Dar, which identified certain increases to the Cost of the Work that Sea-Dar had identified over time and which were not provided to the Berylsons, as required by the Agreement);

¶¶ 213-239 (containing factual allegations related to 1100 and Piscuskas' intentional misrepresentation of the initial estimated Cost of the Work was $10,575,000 to $12,740,000, when 1100 and Piscuskas knew that that the estimate provided, and upon which the Berylsons detrimentally and reasonably relied, was inadequate to capture the true costs of the Project, and 1100 and Piscuskas' financial incentives for doing so);

¶¶ 289- 294 (containing factual allegations related to 1100 and Piscuskas' purposefully unrealistic expected construction cost between $10,575,000 to $12,740,000, to fraudulently induce the Berylsons into entering into the Agreement, when Piscuskas and 1100 knew that market pricing based on square footage and average cost per square foot estimates given the quality, design and finish specified on the Project, and market factors as they existed in April of 2016, compelled a significantly higher projected Cost of the Work well in excess of $18 Million);

¶¶ 327-339 (containing factual allegations related to 1100 and Piscuskas' intentional misrepresentation that A. Berylson provided verbal consent and authorization to proceed with the Smith Project, when written authorization and consent was required by the Agreement);

¶¶ 347-351 (containing factual allegations related to the Berylsons' Breach of Implied Covenant of Good Faith and Fair Dealing claim against 1100);

¶¶ 352-358 (containing factual allegations related to the Berylsons' Fraud in the Inducement claim against 1100 and Piscuskas);

5

¶¶ 359-365 (containing factual allegations related to the Berylsons' Fraud claim against 1100 and Piscuskas); &,

¶¶ 375-382 (containing factual allegations related to the Berylsons' G.L. c. 93A, §11, against 1100 and Piscuskas).

The Berylsons reserve their right to supplement and/or amend this Answer prior to trial and in accordance with the September 30, 2021 Scheduling Order issued by the Court (Stearns, D.J.).

### INTERROGATORY NO. 5

Identify all persons who did work or performed services in connection with the Project, including all persons who completed architectural or design services on the Project, all contractors, subcontractors, consultants, subconsultants, representatives, agents, and employees, and what work they completed or for which they were responsible.

### ANSWER NO.5

The Berylsons object to this interrogatory on grounds that it seeks information which is irrelevant to this action and which is not reasonably calculated to lead to the discovery of admissible evidence. The Berylsons further object to this Interrogatory to the extent that it is overly broad, unduly vague, and unlimited as to time and scope.

Subject to and without waiving these objections, the Berylsons state: The Project is on-going, and therefore, it is premature to identify a definitive and complete list of all persons who did work or performed services in connection with the Project. The principal architectural firms and their employee witnesses who completed, or who are providing, architectural or design services on the Project are listed in the Berylsons' Initial Disclosures dated November 9, 2021, which are hereby incorporated by reference. The principal general contractors and their employee witnesses who completed, or who are providing, construction services on the Project are also listed in the Berylsons' Initial Disclosures dated November 9, 2021, which are hereby further incorporated by reference.

The Berylsons reserve their right to supplement and/or amend this Answer prior to trial and in accordance with the September 30, 2021 Scheduling Order issued by the Court (Stearns, D.J.).

### INTERROGATORY NO. 6

Identify all delays on the Project, including the length of each delay, all persons you contend were responsible for each delay, what you contend caused the delay, and how the delay was resolved.

## ANSWER NO. 6

The Berylsons object to this interrogatory on grounds that it seeks information which is irrelevant to this action and which is not reasonably calculated to lead to the discovery of admissible evidence. The Berylsons further object to this Interrogatory, as it seeks information protected by the Attorney-Client privilege and the Attorney Work Product doctrine. The Berylsons object further to this Interrogatory on the grounds that it seeks legal opinions and/or conclusions. The Berylsons also object to this interrogatory as seeking information, in part, which is premature and subject to expert discovery in accordance with the September 30, 2021 Scheduling Order issued by the Court (Stearns, D.J.). The Berylsons object further to this Interrogatory to the extent that it is overly broad, unduly vague, unlimited as to time and scope.

Subject to and without waiving these objections, the Berylsons state that the basis for their claims against 1100 and Piscuskas including the Project delays attributable to 1100 and Piscuskas, and/or their agents or employees, are set forth in detail in the Amended Complaint, and which are summarized here as follows:

> ¶¶ 31-66 (containing factual allegations related to delays caused by 1100's failure to timely perform its Design Services);

> ¶¶ 67-106 (containing factual allegations related to delays caused by 1100's failure to timely secure necessary zoning approvals from the Town of Wellesley);

> ¶¶ 107-198 (containing factual allegations related to delays caused by 1100 and Piscuskas' recommendation to the Berylsons that they retain Sea-Dar as the Project's Contractor); and

> ¶¶ 295-314 (containing factual allegations related to delays caused by deficiencies in 1100's design, drawings, plans, specifications and services).

The Berylsons reserve their right to supplement and/or amend this Answer prior to trial and in accordance with the September 30, 2021 Scheduling Order issued by the Court (Stearns, D.J.).

## INTERROGATORY NO. 7

Have you searched or caused others to search all files, both in your own possession and in the possession of all current and former consultants, agents, employees and others from whom you could reasonably expect would return documents to you if asked them to do so (for example, contractors, consultants, accountants, and attorneys), in order to assemble documents and other tangible things responsive to the Defendants' Document Request, and included in your search all computer files, discs, e-mail records, and other sources of electronically stored data? If you have not done so, state what sources or information referenced have not been searched and why you have not searched them.

**ANSWER NO.7**

The Berylsons object to this Interrogatory, as it seeks information protected by the Attorney-Client privilege and the Attorney Work Product doctrine. The Berylsons object further to this Interrogatory on the grounds that it seeks legal opinions and/or conclusions. The Berylsons further object to this Interrogatory to the extent that it exceeds the scope of permissible discovery under Rules 26, 33 and 34 of the Federal Rules of Civil Procedure. The Berylsons also object to this Interrogatory to the extent that it is unjustifiably and excessively overly broad, unduly burdensome, not properly limited in time or scope, and is overly vague in seeking the information regarding files "both in [the Berylsons'] possession and in the possession of all current and former consultants, agents, employees and others" over the course of an undefined period of time, or to otherwise speculate as to "whom [the Berylsons] could reasonably expect would return documents to [them] if asked [sic] them to do so (for example, contractors, consultants, accountants, and attorneys)". The Berylsons object further to this Interrogatory to the extent that as individuals, and as the sole Plaintiffs in this action, they are not required to search, or to cause to be searched, the files of "all current and former consultants, agents, employees and others" of their "contractors, consultants, accountants, and attorneys" all former consultants, agents, employees and other third-parties" who worked on the Project.

Subject to and without waiving these objections, the Berylsons state that they have retained documentary files, physical and electronic, in their individual capacity in order to identify and make available relevant, non-privileged documents, information and other tangible things responsive to the Defendants' Document Requests which shall be addressed separately in their written Responses to Defendants' Document Requests. The Berylsons state further that they agree to make available such relevant, non-privileged documents, information and other tangible things in accord with their written Responses to Defendant's Document Requests which are identified pursuant to the parties agreed upon Stipulation and Order Regarding Protocol for the Production of Documents and Electronically Stored Information ("ESI Protocol").

**INTERROGATORY NO. 8**

Set forth in detail the basis of Your allegations that the Defendants committed fraud, including but not limited to Your allegation that "1100 and Piscuskas knowingly under-represented the estimated costs of the Project" as referenced in Paragraphs 356 and 363 of the Amended Complaint.

**ANSWER NO. 8**

The Berylsons object to this Interrogatory, as it seeks information protected by the Attorney-Client privilege and the Attorney Work Product doctrine. The Berylsons object further to this Interrogatory on the grounds that it seeks legal opinions and/or conclusions. The Berylsons object further to this Interrogatory to the extent that it is overly broad, unduly vague, unlimited as to time and scope.

iManageDB1\109089\000005\4010982.v1-12/8/21

Subject to and without waiving these objections, the Berylsons state that the basis for their fraud claims against 1100 and Piscuskas, including the allegations that the 1100, Piscuskas, and/or their agents or employees committed fraud, are set forth in detail in the Amended Complaint, which are summarized in response to Interrogatory No. 4, above, and also summarized here as follows:

¶ 21 (containing factual allegations related to 1100 and Piscuskas' representations to the Berylsons that 1100 had the unique talents to handle the demands of the Project and could create the unique concept and design the Berylsons were seeking);

¶ 23 (containing factual allegations related to Piscuskas' representation and agreement that he would act as the lead architect and designer for the Project);

¶ 25 (containing factual allegations related to 1100 and Piscuskas' intentional misrepresentation in April 2016 that the construction cost for the Project (the "Cost of the Work") would be between $10,575,000 and $12,740,000 for an approximate 12,200 square foot Project), when Piscuskas knew that was not possible even then;

¶ 44 (containing factual allegations related to 1100 and Piscuskas' representation and agreement that they would complete the Construction Documents in a timely manner);

¶ 46 (containing factual allegations related to 1100 and Piscuskas' representation and agreement that they would complete the Schematic Design Documents in a timely manner);

¶ 49 (containing factual allegations related to 1100 and Piscuskas' representation and agreement that they would complete the Design Development Documents in a timely manner);

¶¶ 52-54 (containing factual allegations related to 1100 and Piscuskas' representation and agreement that they would complete Construction Documents for the entirety of the Project);

¶¶ 59-66 (containing factual allegations related to 1100 and Piscuskas' intentional failure to disclose to the Berylsons and/or obtain and receive proper authorization from the Berylsons under their agreement, regarding the increased size and scope of the Project);

¶¶ 67-106 (containing factual allegations related to 1100 and Piscuskas' representation that they knew and understood the zoning requirements for the Project imposed by the Town of Wellesley);

¶¶ 132-134 (containing factual allegations related to Piscuskas' intentional misrepresentation to the Berylsons that there would be no further increases to the Cost of the Work for the Project, as well as 1100 and Piscuskas' intentional misrepresentation of the Project's actual anticipated costs, in order to induce the Berylsons to agree to proceed with Sea-Dar and the Project);

¶¶ 138-140 (containing factual allegations related to 1100's intentional concealment of information related to, and instructions to the Berylsons regarding the need for execution of, various change event documents from Sea-Dar representing subcontractor awards and some "Proposed Budget Adjustments" as presented to J. Berylson; and/or unilaterally executing same on J. Berylson's behalf);

¶¶ 151-169 (containing factual allegations related to 1100 and Piscuskas' failure to disclose to the Berylsons that Sea-Dar advised 1100 and Piscuskas on numerous occasions that its Project estimates and risk-logs provided that the Project cost exceeded $20 Million, as required by the Agreement);

¶¶ 170-185 (containing factual allegations related to 1100 and Piscuskas' intentional concealment of documents, and/or non-disclosure of information that they were provided by Sea-Dar, which identified certain increases to the Cost of the Work that Sea-Dar had identified over time and which were not provided to the Berylsons, as required by the Agreement);

¶¶ 213-239 (containing factual allegations related to 1100 and Piscuskas' intentional misrepresentation of the initial estimated Cost of the Work was $10,575,000 to $12,740,000, when 1100 and Piscuskas knew that that the estimate provided, and upon which the Berylsons detrimentally and reasonably relied, was inadequate to capture the true costs of the Project, and 1100 and Piscuskas' financial incentives for doing so);

¶¶ 289- 294 (containing factual allegations related to 1100 and Piscuskas' purposefully unrealistic expected construction cost between $10,575,000 to $12,740,000, to fraudulently induce the Berylsons into entering into the Agreement, when Piscuskas and 1100 knew that market pricing based on square footage and average cost per square foot estimates given the quality, design and finish specified on the Project, and market factors as they existed in April of 2016, compelled a significantly higher projected Cost of the Work well in excess of $18 Million);

¶¶ 327-339 (containing factual allegations related to 1100 and Piscuskas' intentional misrepresentation that A. Berylson provided verbal consent and authorization to proceed with the Smith Project, when written authorization and consent was required by the Agreement);

¶¶ 347-351 (containing factual allegations related to the Berylsons' Breach of Implied Covenant of Good Faith and Fair Dealing claim against 1100);

¶¶ 352-358 (containing factual allegations related to the Berylsons' Fraud in the Inducement claim against 1100 and Piscuskas);

¶¶ 359-365 (containing factual allegations related to the Berylsons' Fraud claim against 1100 and Piscuskas); &,

¶¶ 375-382 (containing factual allegations related to the Berylsons' G.L. c. 93A, §11, against 1100 and Piscuskas).

iManageDB1\109089\000005\4010982.v1-12/8/21

The Berylsons reserve their right to supplement and/or amend this Answer prior to trial and in accordance with the September 30, 2021 Scheduling Order issued by the Court (Stearns, D.J.).

## INTERROGATORY NO. 9

Set forth in detail the basis of Your allegations that the Defendants breached the agreement, including each and all alleged "statements, conduct, acts, and omissions," You contend to be a breach, as referenced in the Amended Complaint and when they occurred.

## ANSWER NO.9

The Berylsons object to this Interrogatory, as it seeks information protected by the Attorney-Client privilege and the Work Product doctrine. The Berylsons object further to this Interrogatory on the grounds that it seeks legal opinions and/or conclusions. The Berylsons object further to this Interrogatory to the extent that it is overly broad, unduly vague, unlimited as to time and scope.

Subject to and without waiving these objections, the Berylsons state that the basis for their breach of contract claims against 1100 and Piscuskas, including the allegations that the 1100, Piscuskas, and/or their agents or employees breached the parties' Agreement are set forth in detail in the Amended Complaint, which are summarized here as follows:

¶ 23 (containing factual allegations related to Piscuskas' representation that he would act as the lead architect and designer for the Project when he did not);

¶ 28-38 (containing factual allegations related to specific provisions of the Agreement obligating 1100 and Piscuskas' to keep the Berylsons notified, informed and educated at all times about the Project, to comply with its Design Schedule, to obtain prior written authorizations for Additional Services, for Audit rights, and the terms for prior authorization of hourly rate fees payable as Additional Services only in no-fault circumstances after 39 months);

¶ 39-66 (containing factual allegations related to specific provisions of the Agreement obligating 1100 and Piscuskas' to completely perform their design services on schedule and within budget; and failure to disclose to the Berylsons, or to receive proper authorization from the Berylsons regarding the increased size and scope of the Project, all of which were breached);

¶ 67-106 (containing factual allegations related to 1100's failure to know and understand the zoning requirements for the Project imposed by the Town of Wellesley, and to timely secure zoning approval from the Town of Wellesley as required by the Agreement);

¶ 107-127 (containing factual allegations related to 1100's failure to properly conduct the bid process, find a suitable list of contractors, and recommend a duly qualified contractor for the Project as required by the Agreement);

11

¶¶ 138-140 (containing factual allegations related to 1100's intentional concealment of information related various change event documents representing subcontractor awards and some "Proposed Budget Adjustments" presented to J. Berylson in breach of the Agreement);

¶¶ 151-169 (containing factual allegations related to 1100 and Piscuskas' failure to disclose to the Berylsons that Sea-Dar advised 1100 and Piscuskas on numerous occasions that its Project estimates exceeded $20 Million as required by the Agreement);

¶¶ 170-185 (containing factual allegations related to 1100's intention concealment of documents that they provided by Sea-Dar which identified certain increases to the Cost of the Work that Sea-Dar had identified over time and which were not provided to the Berylsons as required by the Agreement);

¶¶ 199-212; ¶¶ 320-326 (containing factual allegations concerning improper expiration of the Agreement, improper billing for hourly services without notice and prior written authorization for hourly-rate services as Additional Services, failure to bill the Berylsons monthly each month, as required by the Agreement; and Deloitte's audit findings of unauthorized, excessive and improper billings for incomplete drawings in breach of the Agreement);

¶¶ 213-239 (containing factual allegations related to 1100's intentional misrepresentation of the initial estimated Cost of the Work was $10,575,000 to $12,740,000, and then failed to manage the Cost of the Work while the Project cost skyrocketed to over $28 Million);

¶¶ 240-253 (containing factual allegations related to 1100's misconduct in the improper billing of the Berylsons on an hourly-rate basis as Additional Services and 1100 and Piscuskas' scheme to trigger the expedited fee dispute provisions of the Agreement);

¶¶ 254-263 (containing factual allegations related to 1100's misconduct and improper attempt to commence an expedited fee arbitration in the face of the Berylsons' non-payment of disputed invoices in breach of the Agreement);

¶¶ 264-288 (containing factual allegations related to 1100's misconduct in suspending performance under the Agreement, commencing expedited fee arbitration without continuing work on the Project in good faith to avoid delay, and then unilaterally terminating the Agreement, all while failing to first mediate the parties' dispute as a condition precedent to binding dispute resolution in the agreed forum of litigation as provided under the Agreement),

¶¶ 289-294 (containing factual allegations related to 1100's purposefully unrealistic expected construction cost between $10,575,000 to $12,740,000, to fraudulently induce the Berylsons into entering into the Agreement, when Piscuskas and 1100 knew that market pricing based on square footage and average cost per square foot estimates given the quality, design and finish specified on the Project, and market factors as they existed in April of 2016, compelled a significantly higher projected Cost of the Work well in excess of $18 Million);

12

¶¶ 327-339 (containing factual allegations related to 1100's improper and unauthorized work on the Robert Smith Project, without written consent and authorization prior to the design phase to proceed with the Smith Project, as was required pursuant to the Agreement before 1100 commenced the Smith Project);

¶¶ 343-346 (containing factual allegations related to the Berylsons' Breach of Contract claim against 1100 and Piscuskas);

¶¶ 347-351 (containing factual allegations related to the Berylsons' Breach of Contract claim against 1100 and Piscuskas).

The Berylsons reserve their right to supplement and/or amend this Answer prior to trial and in accordance with the September 30, 2021 Scheduling Order issued by the Court (Stearns, D.J.).

## INTERROGATORY NO. 10

Set forth in detail the basis of each of Your allegations that the Defendants committed acts of negligence or architectural malpractice, and describe in detail each and every alleged design error or omission, negligent conduct, negligent acts and when they occurred.

## ANSWER NO.10

The Berylsons object to this Interrogatory, as it seeks information protected by the Attorney-Client privilege and the Attorney Work Product doctrine. The Berylsons object further to this Interrogatory on the grounds that it seeks legal opinions and/or conclusions. The Berylsons also object to this interrogatory as seeking information, in part, which is premature and subject to expert discovery in accordance with the September 30, 2021 Scheduling Order issued by the Court (Stearns, D.J.). The Berylsons object further to this Interrogatory to the extent that it is overly broad, unduly vague, unlimited as to time and scope.

Subject to and without waiving these objections, the Berylsons state that the basis for their professional liability and negligence claims against 1100 and Piscuskas, including the allegations that the 1100, Piscuskas, and/or their agents or employees were negligent and committed architectural malpractice on the Project are set forth in detail in the Amended Complaint, which are summarized here as follows:

¶¶ 31-66 (containing factual allegations related to 1100's negligence in failing to timely perform its Design Services);

¶¶ 67-106 (containing factual allegations related to 1100's negligence in failing to timely secure zoning approval from the Town of Wellesley);

¶¶ 107-198 (containing factual allegations related to 1100 and Piscuskas' negligent recommendation to the Berylsons that they retain Sea-Dar as the Project's Contractor);

¶¶ 295-314 (containing factual allegations related to negligence in 1100's design and services which have caused and continue to cause delay and damages to the Berylsons); and

13

iManageDB1\109089\000005\4010982.v1-12/8/21

¶¶ 366-369 (containing factual allegations related to the Berylsons' G.L. c. 93A, § 11, against 1100 and Piscuskas).

The Berylsons reserve their right to supplement and/or amend this Answer prior to trial and in accordance with the September 30, 2021 Scheduling Order issued by the Court (Stearns, D.J.).

## INTERROGATORY NO. 11

Identify each and every engineer, architect or other design professional involved in any conditions described in the Amended Complaint.

## ANSWER NO.11

The Berylsons object further to this Interrogatory to the extent that it is overly broad, unduly vague, unlimited as to time and scope. The Berylsons object to this Interrogatory because the terms "involved in any conditions" are not sufficiently and separately defined in relation to any engineer, architect or other design professional" in order to enable the Berylsons to make an appropriate response.

Subject to and without waiving these objections, the Berylsons state: The Project is on-going, and therefore, it is premature to identify a definitive and complete list of all persons who did work or performed services in connection with the Project.  The principal architectural firms and their employee witnesses who completed, or who are providing, architectural or design services on the Project are listed in the Berylsons' Initial Disclosures dated November 9, 2021, which are hereby incorporated by reference.

The Berylsons reserve their right to supplement and/or amend this Answer prior to trial and in accordance with the September 30, 2021 Scheduling Order issued by the Court (Stearns, D.J.).

## VERIFICATION

Signed under the pains of perjury subject to the terms and reservations specified in the Preliminary Statement above, this 9th day of December, 2021.


_____
John G. Berylson


_____
Amy Smith Berylson

14

As to Objections and Reservations:


/s/ William S. Rogers, Jr.
William S. Rogers, Jr., BBO No.549487
wsrogers@princelobel.com
Christopher Miller, BBO No. 685219
cmiller@princelobel.com
Matthew Madden, BBO No. 685738
mmadden@princelobel.com
Lauren Koslowsky, BBO No. 705541
lkoslowsky@princelobel.com
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, MA 02110

Dated: December 9, 2021

15

## CERTIFICATE OF SERVICE

I, William S. Rogers, Jr., hereby certify that a true and correct copy of the foregoing document was served this 9th day of December, 2021, electronically upon counsel of record, via email, as follows:

Paul T. Muniz
pmuniz@donovanhatem.com
Thomas D. Duquette, Jr.
tduquette@donovanhatem.com
DONOVAN HATEM, LLP
53 State Street, 8th Floor
Boston, MA 02109


/s/ William S. Rogers, Jr.
William S. Rogers, Jr.