**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JOHN G. BERYLSON and AMY SMITH BERYLSON,<br><br>Plaintiffs,<br><br>v.<br><br>1100 ARCHITECT, P.C. and DAVID PISCUSKAS,<br><br>Defendants. | **NO. 21-CV-10527-RGS** |

**DEFENDANTS, 1100 ARCHITECT, P.C. AND DAVID PISCUSKAS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO STRIKE CERTAIN EXHIBIT AND PORTIONS OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendants, 1100 Architect, P.C. and David Piscuskas (collectively, the "Defendants"), hereby submit this memorandum in support of their Motion to Strike a Certain Exhibit and Portions of Plaintiffs' Motion For Partial Summary Judgment. The Defendants move to strike Exhibit 5 (*Dkt. No. 111-5*) submitted with *Plaintiffs' Memorandum of Law in Support of Their Motion For Partial Summary Judgment* (*Dkt. No. 110*) and all references to it in the Berylsons' moving papers, as inadmissible hearsay in contradiction with Fed. R. Civ. P. 56(c) and because the Exhibit 5 opines on questions of contract interpretation, validity, and enforceability which are questions of law for the Court.

The Plaintiffs, John Berylson and Amy Smith Berylson (collectively, the "Berylsons"), submitted and rely on certain excerpts from an unsworn expert report in support of their *Motion for Partial Summary Judgment* (*Dkt. No. 109*). The unsworn excerpts from the experts' report consist of a 1-page Executive Summary, followed by a 3-page Summary of Expert Opinions, all

of which constitute inadmissible hearsay that may not be considered on a motion for summary judgment.

Additional Report excerpts also opine on the so-called expert witnesses' legal opinion/interpretation of the meaning of the Agreement's defined term -- "Cost of Work" in a manner inconsistent with the parties' understanding and prior interpretation of that term, which issue should be reserved for the Court. *Greenspun v. Boghossian*, 95 Mass. App. Ct. 335, 341, (2019) ("questions of contract interpretation, validity, and enforceability are questions of law for a judge. . . Because they are legal questions, expert testimony not only is not required; it is not admissible.")(citations omitted). Moreover, the Berylsons' expert witnesses, Steven Scott and Anthony Coccarelli, who co-authored the subject expert report are not qualified to testify as expert witnesses in this case and should be precluded from offering evidence or testimony.

Therefore, Exhibit 5 should be stricken along with all references thereto *in Plaintiffs' Memorandum of Law in Support of Their Motion for Partial Summary Judgment* and *Plaintiffs' Statement of Undisputed Material Facts* (*Dkt. No. 111*) and the *Affidavit of John Berylson in Support of Motion for Summary Judgment* (*Dkt. No. 113*).

**RELEVANT BACKGROUND**

On April 10, 2023, the Berylsons filed a *Motion for Partial Summary Judgment*. *See Dkt. No.109*. In support of their motion, the Berylsons submitted, *inter alia*, excerpts from an Expert Report by Steven Scott and Anthony Coccarelli of Deloitte Transactions and Business Analytics LLP dated December 23, 2022 (hereinafter, the "Deloitte Report"), excerpts from which are identified as Exhibit 5.[1] *See Dkt. No. 111-5* (excerpt of 26 pages from the Deloitte Report). The excerpts from the Deloitte Report are unsigned and unsworn constituting inadmissible hearsay,

[1] The excerpts of the Deloitte Report identified as Exhibit 5 is relied upon by the Berylsons in their *Memorandum of Law in Support of Their Motion for Partial Summary Judgment* and *Statement of Undisputed Material Facts*.

which cannot be relied upon as part of the summary judgment record.[2] Accordingly, the Deloitte Report and all references thereto in the Berylsons' summary judgment filings should be stricken.

## ARGUMENT

### I. The Berylsons May Not Rely on Inadmissible Hearsay To Support Their Summary Judgment Request.

"Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment." *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990); *Vazquez v. Lopez-Rosario,* 134 F.3d 28, 33 (1st Cir. 1998) ("[e]vidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment"); *see also* Fed. R. Civ. P. 56(c)(2) (requiring that material relied on to support or dispute a fact in connection with a motion for summary judgment be admissible in evidence); Fed. R. Evid. 802 (prohibiting the admission of hearsay, except when otherwise made admissible by federal statute, another rule of evidence, or other rules prescribed by the Supreme Court). An "expert report … meets the literal definition of hearsay, *e.g.*, an out-of-court statement offered for its truth." *Foley v. Town of Lee*, 871 F. Supp. 2d 39, 46 (D. N.H. 2012) (citing Fed. R. Evid. 801(a)). The Plaintiffs, as the proponent of the hearsay evidence in question, "bear[] the burden" of establishing admissibility. *United States v. Bartelho,* 129 F.3d 663, 670 (1st Cir.1997).

The selected Deloitte Report excerpts as offered by the Berylsons are unsworn. Thus, the Deloitte Report is an inadmissible hearsay document that cannot be considered as part of the summary judgment record. *See Garside*, 895 F.2d at 50 ("[h]earsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment"); *Ramirez-Ortiz v. Corporación del Centro Cardiovascular de Puerto Rico y del Caribe*, 32 F. Supp. 3d 83, 88 (D.P.R. 2014) (unsworn expert report constituted inadmissible hearsay that could not be considered as part of the summary

[2] The excerpts of the Deloitte Report are not signed by either author.

judgment record) (internal citations omitted); *Rios Colón v. United States*, 928 F. Supp. 2d 388, 391-92 (D.P.R. 2012) (plaintiffs' expert report was unsworn and therefore, at best, an inadmissible hearsay document of the purported expert's opinion); *Casillas v. Vida*, No. 16-2564 (PAD), 2018 WL 4057733, at *1 (D.P.R. Aug. 23, 2018) (plaintiff's expert report lacked proper authentication constituting inadmissible hearsay that cannot be relied upon in support of a motion for summary judgment); *Capobianco v. City of N.Y.*, 422 F.3d 47, 55 (2d Cir. 2005) (unsworn physician's letters "generally are inadmissible hearsay that are an insufficient basis for opposing a motion for summary judgment).

Here, the Berylsons mere inclusion and citation to pages of the Deloitte Report does not suffice for summary judgment. The Berylsons conveniently overlook that documents do not automatically become part of the record simply because they were products of discovery. *Hoffman v. Applicators Sales And Service, Inc.*, 439 F.3d 9, 15 (1st Cir. 2006). To be considered at the summary judgment stage, the opinions of the Deloitte Report must be elicited through testimony of the expert witness himself, not through the Deloitte Report. The Berylsons make no attempt to verify the contents of the Deloitte Report through the use of an affidavit in the proper form.

Because the Deloitte Report is hearsay, and thus inadmissible, this Court should strike the Deloitte Report (*Dkt. No. 111-5*) and all references thereto in Plaintiffs' supporting *Memorandum of Law in Support of Their Motion for Summary Judgment* (*Dkt. No. 110*)[3] and *Statement of Undisputed Material Facts* (*Dkt. No. 111*).[4]

---

[3] *Plaintiffs' Memorandum of Law in Support of Their Motion for Partial Summary Judgment* (Section A(i)) at 12-13 cites to the Deloitte Report five times.
[4] *Plaintiffs' Statement of Undisputed Material Facts* at ¶¶ 5, 6, 7, 8 and 9 cites to the Deloitte Report.

## II. <u>The Berylsons Expert Witnesses That Co-Authored The Deloitte Report Also Lack Proper Qualifications</u>.

"'The party seeking to introduce the evidence has the burden of establishing both its reliability and its relevance.'" *López-Ramírez v. Toledo-González*, 32 F.4th 87, 94 (1st Cir. 2022) (quoting *Milward v. Rust-Oleum Corp.*, 820 F.3d 469, 473 (1st Cir. 2016)). In its gatekeeping role assigned by *Daubert*, this Court must ensure that expert testimony is both reliable and relevant. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). Rule 702 of the Federal Rule of Evidence provides:

> A witness who is *qualified as an expert by knowledge, skill, experience, training, or education* may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702 (emphasis added).

If expert testimony meets these requirements, the normal requirements for admission are thus relaxed, and an expert is permitted to give testimony which a layperson would otherwise be precluded from giving, but only because the witness has attained a sufficient level of expertise relevant to the case. *Portland Pipe Line Corp. v. City of South Portland*, 288 F. Supp. 3d 321, 394 n.220 (D. Me. 2017) ("The relaxation of the 'usual requirement of firsthand knowledge or observation' is premised on 'an assumption that the expert's opinion will have a reliable basis in knowledge and experience of his discipline'") (quoting *Daubert*, 509 U.S. at 592). The Court's gatekeeping role governing expert testimony is thus crucial, both because the normal safeguards do not apply to expert witnesses, and because of the risk that a jury may be swayed by unreliable or irrelevant testimony simply because it is offered by a self-proclaimed expert. *Koninklijke Philips N.V. v. Zoll Med. Corp.*, 256 F. Supp. 3d 50, 52 (D. Mass. 2017) ("The Court must be

vigilant in exercising its gatekeeper role because of the latitude given to expert witnesses to express their opinions on matters about which they have no firsthand knowledge and because an expert's testimony may be given substantial weight by the jury due to the expert's status").

Although Rule 702 "has been interpreted liberally in favor of the admission of expert testimony," courts will routinely exclude testimony for failing to meet the thresholds the rule establishes. *López-Ramírez*, 32 F.4th at 96 (excluding neurologist's testimony that a neurosurgeon deviated from the standard of care for failing to "provide[] sufficient support for the standard of care that he identified as being applicable to the surgery in question" and "describe the principles or methods by which he reached that opinion").

**A. <u>Anthony Coccarelli Lacks Qualification To Provide Expert Testimony</u>.**

The Berylsons' expert witness Anthony Coccarelli lacks the qualifications to serve as an expert witness in this matter because the facts and issues giving rise to the Berylsons' lawsuit lie well outside his expertise.

> Among other requirements, Fed. R. Evid. 702 mandates that a putative expert be qualified to testify by knowledge, skill, experience, training or education. Under this rule, a testifying expert should have achieved a meaningful threshold of expertise in the given area. That a witness qualifies as an expert with respect to certain matters or areas of knowledge, does not mean that he or she is qualified to express expert opinions as to other fields.

*Levin v. Dalva Bros., Inc.*, 459 F.3d 68, 78 (1st Cir. 2006) (internal citations and quotations omitted).

The Berylsons' expert witness Anthony Coccarelli lacks the knowledge, skill, experience, training, or education as demanded by Fed. R. Evid. 702. Although Mr. Coccarelli has proffered education in the field of architecture, Mr. Coccarelli is not an architect. *See* Exhibit 1, Anthony Coccarelli Dep. 39:19-20, Mar. 7, 2023 (Mr. Coccarelli admitted that he has not practiced as an architect because he is not a licensed architect), 39:1-6 (testifying that Mr. Coccarelli has never

had an architectural license), 39:7-9 (testifying that Mr. Coccarelli has never received any certifications in the architectural field), 39:10-20 (testifying that Mr. Coccarelli has never worked as a practicing architect), 40:14-24 (admitting that Mr. Coccarelli is not qualified to testify regarding the architectural standard of care), and 41:6-42:15 (testifying that Mr. Coccarelli failed the architectural board examination). Furthermore, Mr. Coccarelli has no education in engineering finance, accounting, or project management. *See* Exhibit 1, Anthony Coccarelli Dep. 42:21-43:5. Moreover, Mr. Coccarelli has no certificates in engineering, finance, accounting, or project management. *See* Exhibit 1, Anthony Coccarelli Dep. 43:6-14. In addition, Mr. Coccarelli is not an engineer. *See* Exhibit 1, Anthony Coccarelli Dep. 43:24-44:4.

Despite Mr. Coccarelli's lack of qualifications, the Deloitte Report opines on 1100's purported mismanagement of the project in relation to 1100's architectural services.[5] Mr. Coccarelli's foray in this case into offering opinions on 1100's purported mismanagement of the project, represents a significant departure from his experience. Courts have routinely barred experienced and credentialed experts from testifying because of their insufficient expertise in a specific field, even despite apparently broad similarities between the expert's field and the related field on which the expert sought to testify. *See, e.g.*, *Muñiz Negrón v. Worthington Cylinder Corp.*, No. 17-1985 (RAM), 2021 WL 1199014, at *11 (D.P.R. Mar. 30, 2021) (mechanical engineer with

---

[5] The Deloitte Report contains sections opining on 1100's Late and Incomplete Release of Drawings and Specifications (Section 5.1.1), 1100's Disengagement from the Project and Insufficient Project Team (Section 5.1.2), 1100's Failure to Complete the Basic Services and Replacement Architect (Section 5.1.3), Failure to Provide Complete Construction Documents Related to the Dining Pavilion Glass Facade and Connection with the Dining Pavilion Superstructure (Section 5.2.1), Failure to Provide Complete Construction Documents Related to the Dining Pavilion Roof and Interior (Section 5.2.2), Failure to Provide Complete Construction Documents Related to the GEM Building Façade (Section 5.2.3), Failure to Provide Complete Construction Documents Related to the Servery Door Detail (Section 5.2.4), Failure to Provide Complete Construction Documents Related to the GEM Building Dome (Section 5.2.5), 1100's Misapplication of the Agreement's Definition of Cost of the Work (Section 5.3.1), 1100's Improper Application of the Agreement by Modifying Billing Structure to Solely Additional Services (5.3.2), Accelerated Basic Services Billing Despite 1100's Incomplete Drawings (Section 5.3.3), 1100's Failure to Obtain Written Approval as Required for Additional Services (Section 5.3.4), Schedule Delay Analysis (Section 6.0), Damage Quantification and Summary (Section 7.0), Response to 1100's Claim (Section 8.0), and Breach of Contract and Pecuniary Damages (Section 9.0).

Ph.D. and knowledge of the manufacturing process of valves for medical devices not qualified to opine on alleged defects in propane valve); *Bogosian v. Mercedes-Benz of North America, Inc.*, 104 F.3d 472, 477 (1st Cir. 1997) (certified master mechanic and forensic automotive mechanic consultant not qualified to opine on alleged transmission defect). By his own admission, Mr. Coccarelli has never passed the architectural board exam and is not a practicing architect. Exhibit 1, Anthony Coccarelli Dep. 39:19-20 and 41:6-42:15. The Berylsons have failed to demonstrate that their proposed expert, Anthony Coccarelli, has "a meaningful threshold of expertise" in the areas in which he seeks to testify. *Levin*, 459 F.3d at 78 (internal citations and quotations omitted). Therefore, Mr. Coccarelli is unqualified to testify concerning the architectural services furnished by 1100 in this matter.

**B. Steven Scott Lacks Qualification to Provide Expert Testimony.**

The Berylsons' expert witness Steven Scott lacks the qualifications to serve as an expert witness in this matter. Mr. Scott misrepresented and embellished his experience as a project engineer on his Curriculum Vitae. Mr. Scott's Curriculum Vitae identifies his prior experience stating, in relevant part:

> Prior Experience
> His prior experience has included engineering design & construction of the following: heavy highway, airports, power plant site work, commercial developments, and cityscape infrastructure. While at Kiewit Construction Company, Steven served as project engineer of a $32 million coffer dam repair project; responsibilities included schedule and cost management, contract drafting, subcontractor management, and site supervision. In his role at Parsons Brinckerhoff, Steven held progressively responsible positions ranging from design engineer, project engineer, to construction manager; responsibilities included engineering design, specification drafting construction management, schedule analyses, cost control, procurement, claims support and analysis, and construction cost analyses.

*See* Exhibit 2, Deloitte Report Pgs. 101 – 103 (Steven Scott Curriculum Vitae)

At his deposition, Mr. Scott testified that he did not perform any actual engineering services at Kiewit Construction Company ("Kiewit"). *See* Exhibit 3, Steven Scott Dep. 28:22-24 and 33:6-8, Feb. 23, 2023. In fact, Mr. Scott was not even a licensed engineer during his time at Kiewit. *See* Exhibit 3, Steven Scott Dep. 27:18-23. Instead, Mr. Scott was an intern with Kiewit and only walked the project site with the lead foreman. *See* Exhibit 3, Steven Scott Dep. 27:7-12, 30:11-17 and 31:12-15.

Mr. Scott embellished his Curriculum Vitae and did not perform the duties as represented while employed with Kiewit. The deposition testimony for Mr. Scott's credentials do not match the credentials as identified in his Curriculum Vitae. Mr. Scott's internship completed nearly two decades ago does not qualify him to testify regarding an architect's contractual responsibilities. *Hasted v. United States*, No. 19-cv-12049-ADB, 2022 WL 17404918, at *3 (D. Mass. Dec. 2, 2022) (internship completed more than two decades in the past was not sufficient to qualify expert witness in the field of inpatient psychiatric). Mr. Scott also stated that he believed his role to be that of an advocate for the Berylsons as opposed to an unbiased expert. *See* Exhibit 3, Steven Scott Dep. 102:22-103:1. As a result, Mr. Scott lacks the requisite qualifications under Fed. R. Evid. 702 to testify regarding 1100's scope of architectural services, contractual responsibilities and the meaning of "Cost of the Work" and the unsigned, unsworn, portions of his co-authored report submitted by the Berylsons should be stricken.

## CONCLUSION

The excerpts from the Deloitte Report (*Dkt. No. 111-5*) are irrelevant, inadmissible hearsay that cannot be relied upon as part of the summary judgment record. As a result, this Court should strike the Deloitte Report excerpts and all references thereto in the Berylsons' summary judgment filings. Furthermore, the Berylsons' expert witnesses Anthony Coccarelli and Steven Scott lack

the proper qualifications to serve as an expert witness in this matter. As part of this Court's gatekeeping role, Messrs. Coccarelli and Scott should be precluded from offering evidence or testifying in this matter. In addition, to the extent the excerpted portions of the report address questions of contract interpretation, validity, and enforceability are questions of law for a judge, expert testimony not only is not required; it is not admissible.

WHEREFORE, Defendants respectfully request that this Motion to Strike be ALLOWED and the Court grant such other relief as the Court deems appropriate.

Respectfully Submitted,

The Defendants,
1100 ARCHITECT, P.C. and
DAVID PISCUSKAS,

*/s/ Paul T. Muniz*

Paul T. Muniz, Esq. (BBO # 564786)
pmuniz@donovanhatem.com
Barry S. Rothschild, Esq. (BBO # 689058)
brothschild@donovanhatem.com
Thomas D. Duquette, Jr., Esq. (BBO # 694846)
tduquette@donovanhatem.com
Steven Shane Smith, Esq. (BBO # 630713)
ssmith@donovanhatem.com
DONOVAN HATEM LLP
53 State Street, 8th Floor
Boston, MA 02109
Tel: 617-406-4500
Fax: 617-406-4501

Dated: May 1, 2023

**CERTIFICATE OF SERVICE**

I, Paul T. Muniz, hereby certify that, on this 1st day of May, 2023, I caused a true and correct copy of the foregoing document to be served upon counsel of record herein via the Court's electronic filing system in accordance with the applicable rules of the Court.

*/s/ Paul T. Muniz*
Paul T. Muniz

**CERTIFICATE OF COMPIANCE WITH L.R. 7.1(a)(2)**

I, Paul T. Muniz, hereby certify that, on the 28th day of April, 2023, I held a telephone conference with counsel for the Plaintiffs to meet and confer via in accordance with the applicable rules of the Court in an attempt to narrow or resolve the issue presented herein.

*/s/ Paul T. Muniz*
Paul T. Muniz